1
2
3
4
5
6

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **JEFFREY SMITH**, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**VALVE CORPORATION**,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**CASE NO.**<br><br>**JURY DEMAND** |

### CLASS ACTION COMPLAINT

1. Plaintiff, Jeffrey Smith, brings this Class Action Complaint individually on behalf of himself and on behalf of all other similarly situated online P.C. gamers who purchased any online P.C. video games and game-related content from Valve Corporation ("Valve" or "Defendant") between January 28, 2021 and September 25, 2025 (the "Relevant Purchase Period") and who filed antitrust arbitration claims with the American Arbitration Association ("AAA") against Valve prior to September 26, 2024, for breach of contract for Valve's refusing to arbitrate, including by its willful refusal to pay arbitration fees invoiced to Valve by AAA that are required to paid in order for the arbitrations to proceed.

CLASS ACTION COMPLAINT

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

2. Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all other matters, including by and through the investigation conducted by his attorneys.

## NATURE OF THE ACTION

3. Plaintiff Smith brings this Class Action Complaint seeking relief from Valve Corporation's breach of contract and violation of its duty of good faith and fair dealing arising from Valve's refusal to arbitrate the antitrust claims of Plaintiff Smith and the Class—including by refusing to pay AAA-required arbitration fees for the arbitration claims brought by Plaintiff Jeffrey Smith and similarly situated Valve subscribers.

4. Valve required all its subscribers to accept Valve's Arbitration Agreement when they opened their Steam accounts or when they made a purchase on Valve's online P.C. video gaming website Steam during the Relevant Purchase Period.

5. On April 25, 2023, Valve required its subscribers to agree to Valve's revised Arbitration Agreement, which like its prior arbitration agreements, required Valve and its subscribers to arbitrate all unresolved disputes between them with limited exceptions not relevant here.

6. Plaintiff Smith and the Class Members filed their arbitration claims against Valve in December of 2023 in accordance with the April 25, 2023, Arbitration Agreement entered into with Valve.

7. Valve subsequently refused to arbitrate Plaintiff Smith's and the other Class Members' claims, including by Valve's willful refusal to pay arbitration fees, which was not due to any financial hardship.

8. Valve has never claimed in any proceeding that it cannot pay the arbitration fees, nor can it, given Valve's estimated value is in the billions of dollars.

9. Instead, Valve's refusal to arbitrate, including through its willful non-payment of arbitration fees, was not only an anticipatory breach of the April 25, 2023, Arbitration Agreement between the parties, but part of Valve's deliberate strategy

to prevent Plaintiff and the Class Members from proceeding to the merits of their claims in arbitration.

10. As a result of Valve's anticipatory breach and refusal to arbitrate, including its refusal to pay arbitration fees, Plaintiff Smith, on behalf of himself individually, and for the Class, seeks all available remedies under law and equity—including damages, specific performance (including payment of AAA fees), declaratory relief, attorneys' fees, and costs.

## THE PARTIES

11. Defendant Valve Corporation is a Washington corporation headquartered at 10400 NE 4th St., Bellevue, WA 98004-5174. Valve operates the Steam store and platform, which dominates the U.S. online PC video game sales market.

12. Plaintiff Jeffrey Smith is a citizen of New York, a resident of Rochester, and a Steam account holder since approximately 2006, who made relevant online P.C. game and/or game-related purchases during the Relevant Purchase Period and who agreed to the April 25, 2023, revised Arbitration Agreement with Valve, which was a consumer contract of adhesion.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this entire action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy (*i.e.*, Valve's unpaid arbitration fees in excess of $20 million) exceeds $5,000,000.00 and at least one member of the Class is a citizen of a state other than Washington.

14. Venue is proper in this District because the Defendant is headquartered in this District.

## FACTUAL ALLEGATIONS

15. In order to use the Steam platform, consumers must become subscribers by creating a Steam Account.

16. From approximately July of 2012 through September 25, 2023 (the "Mandatory Arbitration Period"), Valve required all its subscribers to accept and enter an arbitration agreement

with Valve which required all parties to arbitrate all disputes (with certain limited exceptions not relevant here).

17. On July 31, 2012, Valve publicly explained that it was requiring mandatory arbitration of any disputes with its subscribers because Valve believed that class action lawsuits generally (1) "don't provide any real benefit to users;" (2) "impose unnecessary expense and delay;" (3) "are often designed to benefit the class action lawyers who craft and litigate these claims" and 4) "do not benefit [Valve] or [Valve's] communities."[1]

18. Valve further explained that "We think this new dispute resolution process [arbitration] is faster and better for you and Valve while avoiding unnecessary costs, and that it will therefore benefit the community as a whole" and reiterated that "Valve will reimburse your costs of the arbitration for claims under a certain amount [i.e., $10,000][...] regardless of the arbitrator's decision."[2]

---

[1] *See* Valve's July 31, 2012, online message to its subscribers, https://store.steampowered.com/oldnews/8523, stating:

> We're also introducing a new dispute resolution process that will benefit you and Valve. Recently, a number of companies have created similar provisions which have generated lots of discussion from customers and communities, and we've been following these discussions closely. On Steam, whenever a customer is unhappy with any transaction, our first goal is to resolve things as quickly as possible through the normal customer support process. However in those instances in which we can't resolve a dispute, we've outlined a new required process whereby we agree to use arbitration or small claims court to resolve the dispute. In the arbitration process, Valve will reimburse your costs of the arbitration for claims under a certain amount. Reimbursement by Valve is provided regardless of the arbitrator's decision, provided that the arbitrator does not determine the claim to be frivolous or the costs unreasonable.
>
> Most significant to the new dispute resolution terms is that customers may now only bring individual claims, not class action claims. We considered this change very carefully. It's clear to us that in some situations, class actions have real benefits to customers. In far too many cases however, class actions don't provide any real benefit to users and instead impose unnecessary expense and delay, and are often designed to benefit the class action lawyers who craft and litigate these claims. Class actions like these do not benefit us or our communities. We think this new dispute resolution process is faster and better for you and Valve while avoiding unnecessary costs, and that it will therefore benefit the community as a whole.
>
> Thanks for reading through our thoughts on these updates and for your continued use of Steam.

(last visited July 15, 2025).
[2] *Id.*

19. Valve's co-founder Gabe Newell also stated that in his opinion class actions are "a shakedown" and Valve wanted to preclude legal actions from being brought against Valve in the courts, which he believed interfered with Valve's business and its relationship with its customers.[3]

20. Thus, during Mandatory Arbitration Period, Valve required all subscribers to accept Valve's arbitration agreement when they opened their account and every time they made a purchase on Valve's online gaming platform, Steam, at all relevant times including the Relevant Purchase Period.

21. While Valve slightly revised it arbitration agreement from time to time, all of Valve's arbitration agreements with subscribers between July 2012 and September 25, 2024, were materially similar, all contained a class action waiver and all required individual arbitration of all disputes between Valve and its subscribers, with certain limited exceptions not relevant here.

22. Nonetheless, on January 28, 2021, several Steam subscribers filed a consumer antitrust class action against Valve, alleging Valve's unlawful use of a Platform Most Favored Nations ("PMFN") agreement or policy that Valve forced on game developers and unlawfully inflated the game prices charged to consumers on Valve's Steam gaming platform. *See Colvin v. Valve Corp.*, No. 2:21-cv-00650-JCC (W.D. Wash.), ECF No. 1 (the "Colvin" or "Consumer Class Action").

23. On June 23, 2021, Valve responded by moving to compel arbitration in the Consumer Class Action and to stay it pending arbitration. *See* Valve's Mot. to Compel Arbitration, *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW (W.D. Wash.), ECF No. 35.

24. On October 25, 2021, the District Court granted Valve's motion to compel arbitration and stayed the Consumer Class Action case "pending arbitration." *Id.*, Order, ECF No. 66.

---

[3] *See* Jeremy Peel, *Gabe Newell explains Steam clause forbidding class action lawsuits: It's "really not about users", but avoiding "shakedowns" from lawyers*, PCGamesN.com (Nov. 13, 2012), https://www.pcgamesn.com/gabe-newell-explains-steam-clause-forbidding-class-action-lawsuits-it-s-really-not-about-users-avoiding-shakedowns-lawyers (last visited July 11, 2025).

25. Following the Court's Order, thousands of Valve customers who purchased games from Valve during the Relevant Purchase Period retained counsel to pursue their individual arbitrations against Valve.

26. Plaintiff Smith and more than 70,000 Valve customers, including most, if not all, of the Class Members here, retained Mason LLP to represent them in their antitrust arbitration claims against Valve.

27. On April 25, 2023, Valve issued and required all its subscribers to enter into a revised Arbitration Agreement with Valve dated April 25, 2023, and effective that same date, which contained a class action waiver and continued to require the arbitration of all disputes between the parties, with certain limited exceptions which are not relevant here. A copy of Valve's April 25, 2023, Arbitration Agreement can be found at Section 11, of Valve's Steam Subscriber Agreement dated April 25, 2023, attached hereto at Exhibit A.

28. Valve and its subscribers, including Plaintiff Smith and each Member of the Class entered into the revised Arbitration Agreement with Valve effective April 25, 2023 ("Agreement").

29. Specifically, the parties April 25, 2023, Arbitration Agreement provides, as relevant here, that:

- "This [Arbitration Agreement] shall apply to the maximum extent permitted by applicable law."

- YOU AND VALVE AGREE TO RESOLVE ALL DISPUTES AND CLAIMS BETWEEN US IN INDIVIDUAL BINDING ARBITRATION. THAT INCLUDES, BUT IS NOT LIMITED TO, ANY CLAIMS ARISING OUT OF OR RELATING TO: (i) ANY ASPECT OF THE RELATIONSHIP BETWEEN US; (ii) THIS AGREEMENT; OR (iii) YOUR USE OF STEAM, YOUR ACCOUNT, HARDWARE OR THE CONTENT AND SERVICES. IT APPLIES REGARDLESS OF WHETHER SUCH CLAIMS ARE BASED IN CONTRACT, TORT, STATUTE, FRAUD, UNFAIR COMPETITION, MISREPRESENTATION OR ANY OTHER LEGAL THEORY, AND INCLUDES ALL CLAIMS BROUGHT ON BEHALF OF ANOTHER PARTY.

- An arbitration is a proceeding before a neutral arbitrator, instead of before a judge or jury. Arbitration is less formal than a lawsuit in court, and provides more limited discovery. It follows different rules than court proceedings, and is subject to very

CLASS ACTION COMPLAINT    6

MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

limited review by courts. The arbitrator will issue a written decision and provide a statement of reasons if requested by either party. YOU UNDERSTAND THAT YOU AND VALVE ARE GIVING UP THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BEFORE A JUDGE OR JURY.

- C.    Arbitration Rules and Fees

The U.S. Federal Arbitration Act applies to this Section 11 as far as your country's laws permit. The arbitration will be governed by the Consumer Arbitration Rules (or the Commercial Arbitration Rules, if the Consumer Arbitration rules are inapplicable) of the American Arbitration Association ("AAA") as modified by this Agreement. Rules are available at http://www.adr.org. The arbitrator is bound by the terms of this Agreement. The AAA will administer the arbitration.

If you seek $10,000 or less, Valve agrees to promptly reimburse your filing fee and your share if any of AAA's arbitration costs, including arbitrator compensation, unless the arbitrator determines your claims are frivolous or were filed for harassment.

- D.    Individual Binding Arbitration Only

YOU AND VALVE AGREE NOT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION, WHISTLE BLOWER ACTION, OR CLASS, COLLECTIVE, OR REPRESENTATIVE ARBITRATION, EVEN IF AAA's RULES WOULD OTHERWISE ALLOW ONE. THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT OF THAT PARTY'S INDIVIDUAL CLAIM. You and Valve also agree not to seek to combine any action or arbitration with any other action or arbitration without the consent of all parties to this Agreement and all other actions or arbitrations. This Agreement does not permit class, collective, or representative arbitration. A court has exclusive authority to rule on any assertion that it does.

30.    Moreover, Valve agreed with its subscribers, including Plaintiff Smith, that the arbitrations "will be governed by the Consumer Arbitration Rules [...] as modified by this Agreement." and that "The AAA will administer the arbitration."

31.    The AAA rules applicable to the Plaintiff's and the Class Members arbitration claims, which are incorporated by reference into Valve's arbitration agreement, provide that:

- "In cases before a single arbitrator where the consumer is the Claimant, a nonrefundable filing fee, capped in the amount of $200, is payable in full by the consumer when a case is filed unless the parties' agreement provides that the consumer pay less.  A partially refundable filing fee in the amount of $1,700 is payable in full by the business, unless the parties' agreement provides that the

CLASS ACTION COMPLAINT                             7

business pay more. This fee is due from the business once the consumer has met their filing requirement."

and,

- "The business shall pay the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation."

32. Several months later, on or about July 21, 2023, Plaintiff Smith, by and through his counsel, provided Valve with notice of his antitrust dispute with Valve and his intent to arbitrate if the dispute was not timely resolved pursuant to the terms of Valve's April 23, 2023, Arbitration Agreement. Plaintiff Smith's counsel provided Smith's arbitration notice to Valve simultaneously with the identical notice of dispute and intent to arbitrate for thousands of other Valve subscribers represented by Smith's counsel, including the Class Members here.

33. In December of 2023, after being unable to informally resolve their antitrust disputes against Valve in accordance with the terms of Valve's April 25, 2023, Arbitration Agreement, 14,911 claimants, including Plaintiff Smith, and all, or substantially all of the Class Members here, filed their respective individual arbitration claims against Valve with AAA.

34. On December 5, 2023, Plaintiff Smith filed his individual arbitration claim against Valve with AAA and paid his share of the AAA arbitration initiation fees required by AAA rules and fee schedule. Plaintiff Smith's arbitration claim was one of 14,911 arbitration claims filed against Valve on behalf of Valve subscribers by Plaintiff Smith's counsel in December of 2023. Each of these disputes sought recovery of less than $10,000 in other charges from Valve.

35. On February 2, 2024, AAA notified Plaintiff Smith and the rest of the 14,911 claimants that they owed a total of $1,143,325.00 for their initial filing fees, which claimants promptly paid.

36. On February 22, 2024, AAA determined that these 14,911 claims met the AAA's administrative filing requirements. AAA also determined that these cases met the AAA's criteria to be administered as a Mass Arbitration in accordance with AAA rules.

CLASS ACTION COMPLAINT                  8

37. On this same date, AAA also notified Valve that it was now responsible for payment of its share of filing fees for these 14,911 claims in the aggregate amount of $1,866,100.00, and that payment of these fees was due by March 25, 2024.

38. Valve timely paid these initial filing fees invoiced to Valve.

39. Thus, on March 26, 2024, AAA informed the parties that AAA's Initial Administrative Fees had been paid and that the parties had met the filing requirements for these 14,911 cases.

40. On May 14, 2024, AAA notified the parties that the next administrative step for the 14,911 cases would be the selection of Merits Arbitrators, but that administrative fees in the amount $1,400/case for each of the 14,911 cases (totaling $20,875,400) would have to be paid before Merits Arbitrators would be assigned to these respective cases by AAA, and that an invoice for the arbitration fees would be forthcoming.

41. By July of 2024, these 14,911 cases were ready for assignment to merits arbitrators, and AAA's invoice to Valve for $20,875,400 for additional case management fees was imminent.

42. But before AAA was able to invoice Valve for the additional required $20,875,400 in case management fees, Valve proposed that the parties attempt outside mediation, which the Plaintiff Smith and the rest of the 14,911 claimants agreed to.

43. At the mutual request of the parties, AAA placed these 14,911 cases on an administrative hold pending the conclusion of the outside mediation that the parties agreed to.

44. Moreover, on or about October 15, 2024, Valve, as required by the April 25, 2023, Arbitration Agreement reimbursed the 14,911 claimants, including Plaintiff Smith and the Class Members here, for their prior payment of their portion of AAA's initial filing fees as Valve was required to do pursuant to the terms of the April 25, 2023, Arbitration Agreement.

45. The outside mediation, which was administered by JAMS, was held on February 4, 2025, but was unsuccessful.

46. Thus, two days later, at the request of the 14,911 arbitration Claimants, AAA lifted the hold on the 14,911 arbitration claims on February 6,

2025, thereby allowing these claims to proceed, provided of course that Valve paid any addition fees required by AAA's Rules and Fee Structure once invoiced to it by AAA.

47. On March 24, 2025, AAA, in accordance with its rules, and fee schedules, issued a $20,875,400 invoice to Valve for required case management fees for the 14,911 arbitration claims of Plaintiff Smith and other Class Members which was due upon receipt.

48. However, Valve refused and continues to refuse to pay the March 24, 2025, AAA invoice for the case management fees that Valve is required to pay before the arbitration claims can be assigned to merits arbitrators and proceed on the merits.

49. Valve has never asserted any lack of ability to pay, nor could it given its market value in the billions of dollars.

50. Valve's refusal to pay necessary the AAA fees is an anticipatory, willful and deliberate breach of Valve's April 25, 2023, Arbitration Agreement that Valve forced Plaintiff Smith and the Class to accept and enter into with Valve, yet Valve refuses to comply with its own arbitration agreement.

51. As a result of Valve's non-payment of arbitration fees, AAA has placed Plaintiff Smith and the rest of the 14,911 arbitrations on hold abeyance to allow these arbitration claimants to seek relief from Valve's refusal to arbitrate and pay arbitration fees from the Courts.

## **CLASS ACTION ALLEGATIONS**

52. Plaintiff brings this action under Rules 23(a), (b)(2), and (b)(3), or in the alternative, Rule 23(c)(4), on behalf of:

> All Steam subscribers in the United States who filed an antitrust arbitration claim against Valve with AAA prior to September 26, 2024, relating to any purchases made during the Relevant Purchase Period (i.e., January 28, 2021, through September 25, 2024), and for which Valve has failed to pay arbitration fees invoiced to Valve by AAA as of the date of this filing.

53. Excluded from the Class are Defendant Valve's officers and directors, and any entity in which Defendant has a controlling interest, any affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant and any current or former employees of Defendant.

54. Numerosity. The Members of the Class are so numerous that joinder of all of them is impracticable. Here, there are thousands of known Class Members.

55. Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Valve agreed with its Subscribers that it would arbitrate any unresolved disputes they had with Valve;

    b. Whether Valve breached its arbitration agreement by refusing to pay arbitration fees invoiced to Valve by AAA for its subscribers' arbitration cases filed against Valve;

    c. Whether Valve's refusal to pay arbitration fees was a refusal by Valve to arbitrate;

    d. Whether Valve's refusal to pay arbitration fees was an anticipatory breach of contract by Valve;

    e. Whether Valve intended to enter into a binding Arbitration Agreement with its subscribers every time a subscriber made a purchase from Valve on the Steam platform during the Relevant Purchase Period;

    f. Whether Valve promised to reimburse its subscriber's payment of initial arbitration filing fees;

    g. Whether Valve's reimbursement of its subscribers filing fees paid to AAA constitutes partial performance of Valve's duties to its subscribers under Valve's arbitration agreement with its subscribers;

    h. Whether Valve's arbitration agreement with subscribers required Valve to pay arbitration fees billed to it by AAA;

    i. Whether Valve failure to pay arbitration fees was willful;

    j. Whether Valve's refusal to pay AAA arbitration fees is a breach of Valve's arbitration agreement with subscribers; and

    k. Whether Valve's refusal to pay AAA arbitration fees is a breach of Valve's duty of good faith and fair dealing arising from Valve's arbitration agreements and owed to its subscribers;

56. Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff was subject to the same Arbitration Agreement as other Class Members, notified Valve

of his intent to arbitrate at the same time as other Class Members, and faces the same material breach of the arbitration agreement by Valve as the other Class Members.

57. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's counsel is competent and experienced in litigating class actions and it has established attorney-client relationships with each Class Member.

58. Predominance. Valve has engaged in a common course of conduct toward Plaintiff and Class Members in that Valve required Plaintiff and other Class Members to enter the same mandatory arbitration agreement with Valve and then refused to arbitrate Plaintiff's and the Class Members' arbitration claims against Valve, including through the willful non-payment of arbitration fees that were required to be paid by Valve before the Plaintiff Smith's and the Class Members' arbitration cases could proceed to the merits. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

59. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

60. Ascertainability. All Members of the proposed Class are readily ascertainable through the records or Defendant Valve, the AAA and/or Plaintiff's counsel.

# CAUSES OF ACTION

## COUNT I

### (BREACH OF CONTRACT)

61. Plaintiff hereby incorporates all other paragraphs as if fully stated herein.

62. Valve and its subscribers, including Plaintiff Smith and each Member of the Class entered into a revised arbitration agreement with Valve effective April 25, 2023. As noted above, a copy of Valve's April 25, 2023, Arbitration Agreement is at Section 11, of Valve's Steam Subscriber Agreement dated April 25, 2023, attached hereto at Exhibit A.

63. The parties' April 25, 2023, Arbitration Agreement, which is the controlling arbitration agreement between the parties here, required both Valve and its subscribers to arbitrate all unresolved disputes between them, with certain limited exceptions not relevant here.

64. Plaintiff has fully complied with his obligations under the April 25, 2023, Arbitration Agreement.

65. After being unable to resolve their dispute with Valve informally during the 30-day pre-arbitration dispute resolution period, Plaintiff Smith, and the Class Members, filed their respective individual arbitration claims against Valve with AAA in December of 2023.

66. Plaintiff's and each Class Member's underlying arbitration claims against Valve all individually seek $10,000 or less than Valve.

67. Plaintiff Smith, along with thousands of other Class Members, paid their initially filing fees to AAA.

68. Valve, initially partially complied with the terms of the April 25, 2023, Arbitration Agreement, when it reimbursed Plaintiff Smith along with thousands of other Class Members for the initial arbitration fees they paid to AAA.

69. However, Valve has failed to otherwise fully comply with its April 2023 Agreement to arbitrate entered with Plaintiff Smith and the Class by willfully refusing to arbitrate, including through its willful refusal to pay its share of AAA arbitration fees invoiced to Valve by AAA for

1  Plaintiff Smith's, and the other Class Member's pending arbitration claims against Valve .

2      70.    Specifically, on March 24, 2025, AAA issued an invoice for $20,875,400 to Valve for payment of additional required case management fees for the 14,911 arbitration claims of Plaintiff Smith and other Class Members, which was due upon receipt.

71.    However, Valve has refused and continues to refuse to pay the March 24, 2025, AAA invoice for these case management fees that are required for the arbitration claims to proceed to the merits before merits arbitrators.

72.    Valve failure to pay AAA's March 24, 2025, invoice for required arbitration fees was willful and deliberate and has prevented Plaintiff Smith and the putative Class Members from proceeding in arbitration.

73.    Indeed, Valve has never asserted any lack of ability to pay because it has the financial resources to pay; Valve simply chooses not to.

74.    Valve's refusal to pay necessary AAA fees is anticipatory, willful and deliberate, and constitutes a breach of Valve's April 25, 2023, Arbitration Agreement it entered with Plaintiff Smith and the Class.

75.    AAA's response to Valve's non-payment has been to hold Plaintiff Smith's and the Class Members' arbitration cases in abeyance to allow Claimants to seek redress for Valve's refusal to pay arbitration fees through the Courts.

76.    As a result of Valve's breach of contract, Plaintiff and the Class Members have suffered damages in an amount to be determined at trial.

77.    WHEREFORE, Plaintiff and the Class seek all available remedies including specific performance of the contract including and order compelling Valve to pay all arbitration fees already invoiced or that are subsequently invoiced to Valve by AAA pertaining to the Plaintiff's and the Class Members' arbitrations against Valve and for all monetary and non-monetary relief allowed by law, including punitive damages, a reasonable attorney's fee, and an order compelling arbitration.

# COUNT II

## (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)

78. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

79. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

80. Here, Valve required its subscribers, including Plaintiff Smith, to enter into an arbitration agreement with Valve, whereby all parties, including Valve agreed that all unresolved disputes between the parties would be determined in arbitration.

81. Moreover, Valve agreed with its subscribers, including Plaintiff Smith, that the arbitrations "will be governed by the Consumer Arbitration Rules [...] as modified by this Agreement." and that "The AAA will administer the arbitration."

82. The AAA rules applicable to Plaintiff's and the Class Members' arbitration claims, which are incorporated by reference into Valve's arbitration agreement, provide that:

- "In cases before a single arbitrator where the consumer is the Claimant, a nonrefundable filing fee, capped in the amount of $200, is payable in full by the consumer when a case is filed unless the parties' agreement provides that the consumer pay less. A partially refundable filing fee in the amount of $1,700 is payable in full by the business, unless the parties' agreement provides that the business pay more. This fee is due from the business once the consumer has met their filing requirement."

and,

- "The business shall pay the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation."

83. Here, AAA has found that the 14,911 subscribers, including Plaintiff Smith, met the filing requirements and that Valve was required to pay arbitration fees in the amount of $20,875,400 that were due and payable upon receipt on February 2025 and Valve has willfully refused to pay the arbitration fees invoiced to it by AAA.

84. Simply stated, Valve cannot in good faith force consumers to agree to arbitrate their disputes against Valve and then refuse to arbitrate those claims by willfully refusing to pay the arbitration fees required by AAA in accordance with its rules and fee schedules.

85. Valve's willful refusal to pay arbitration fees is not only a breach of Valve's agreement to arbitrate, but clearly a breach of its duty of good faith and fair dealing inherent in every contractual undertaking and owed to Plaintiff Smith and the Class Members.

86. Valve's refusal to arbitrate and pay required arbitration fees injured Plaintiff and the Class, has needlessly delayed their arbitration claims, and increased their costs to arbitrate, including by increasing attorney fees. Justice delayed is justice denied.

87. As a result of Valve's breach of its duty of good faith and fair dealing, Plaintiff and the Class suffered damages.

88. WHEREFORE, Plaintiff and the Class seek all available remedies including specific performance of the contract including and order compelling Valve to pay all arbitration fees already invoiced or that are subsequently invoiced to Valve by AAA pertaining to the Plaintiff's and the Class Members' arbitrations against Valve and for all monetary and non-monetary relief allowed by law, including punitive damages, a reasonable attorney's fee, and a renewed order compelling arbitration.

## **PRAYER FOR RELIEF**

89. Plaintiff prays for judgement as follows:

   a) For an Order certifying this action as a class action and appointing Plaintiff and their counsel to represent the Class;

   b) For an Order requiring Valve to pay its outstanding arbitration fees;

   c) For an Order compelling Valve to proceed to arbitration under the terms of the April 25, 2023, Arbitration Agreement;

   d) For an award of damages to Plaintiff and the Class;

   e) For an Order of default against Valve on the underlying arbitration claims of Plaintiff and the Class Members;

      f)    For an award of reasonable expenses, including attorney's fees and costs, incurred by Plaintiff and other Class Members because of the breach; and

      g)    Such other and further relief as the Court may deem just and proper.

Dated: August 5, 2025

**FRANK FREED SUBIT & THOMAS LLP**

By: */s/ Michael C. Subit*
Michael C. Subit, WSBA No. 29189
Hoge Building 1 Manhattan West
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1729
Tel.: (206) 682-6711
Fax: (206) 682-0401
Email: msubit@frankfreed.com

**MASON LLP**

Gary E. Mason*
Danielle L. Perry*
Theodore B. Bell*
Jacob D. Eisenberg*
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel.: (202) 429-2290
Email: gmason@masonllp.com
Email: dperry@masonllp.com
Email: tbell@masonllp.com
Email: jeisenberg@masonllp.com

*Counsel for Plaintiff Jeffrey Smith and the proposed Class*

**Pro Hac Vice* application forthcoming.