The Honorable Theresa L. Fricke

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

JEFFREY SMITH, on behalf of himself and all persons similarly situated,

Plaintiff,

v.

VALVE CORPORATION,

Defendant.

No. 2:25-cv-01478

CLASS ACTION

DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS

NOTE ON MOTION CALENDAR:
November 12, 2025

ORAL ARGUMENT REQUESTED



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 7

II. FACTUAL BACKGROUND ..... 10

III. ARGUMENT ..... 12

- A. The Complaint Fails To State a Claim: This Court Lacks Authority To Grant Plaintiff's Requested Relief Because Fee Disputes Are Solely Within the Purview of the AAA ..... 12
  - 1. The FAA Forecloses Plaintiff's Claims ..... 12
  - 2. State Law Does Not Apply, Nor Does It Provide Any Basis for Relief ..... 15
- B. The Complaint Fails To State a Claim: Plaintiff Cannot Plead a Breach Because the Complaint Admits that Valve Has Arbitrated According to AAA Rules ..... 16
- C. Alternatively, the Court Should Grant Summary Judgment in Valve's Favor Because the Parties Have No Agreement To Arbitrate ..... 18
  - 1. Supreme Court Authority Requires That the Court Decide Which Agreement Is Controlling ..... 19
  - 2. The Current SSA Is Valid and Fully Enforceable ..... 19
    - (a) Valve Properly Provided Widespread and Repeated Notice of the Current SSA ..... 20
    - (b) Plaintiff Agreed to the Current SSA ..... 22
  - 3. Under the Current SSA, the Parties do not have an Agreement to Arbitrate ..... 23
- D. The Court Should Dismiss or Strike the Class Allegations from the Complaint ..... 24

IV. CONCLUSION ..... 25




**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
513 U.S. 265 (1995) .......... 16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 12

*Badgett v. Security State Bank*,
807 P.2d 356 (Wash. 1991) .......... 17, 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 12

*Briggs v. Service Corp. International*,
No. C22-1646JlR, 2023 WL 2075958
(W.D. Wash. Feb. 17, 2023) .......... 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 18

*Cogswell v. Cogswell*,
126 P. 431 (Wash. 1912) .......... 16

*Coinbase, Inc. v. Suski,*
602 U.S. 143 (2024) .......... 19

*Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*,
588 F.3d 884 (5th Cir. 2009) .......... 13, 15

*Frazier v. X Corp.*,
--- F.4th ---, No. 24-1948, 2025 WL 2502133
(2d Cir. Sept. 2, 2025) .......... 8, 13, 14, 15

*Grant v. T-Mobile USA, Inc.*,
No. 2:23-cv-01946-MJP, 2024 WL 3510937
(W.D. Wash. July 23, 2024) .......... 20



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Holman v. Bath & Body Works, LLC*,
No. 1:20-cv-01603-NONE-SAB, 2021 WL 5826468 (E.D. Cal. Dec. 8, 2021), *report and recommendation adopted*, No. 1:20-CV-1603 JLT SAB, 2022 WL 463298 (E.D. Cal. Feb. 15, 2022) ....... 10, 24, 25

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ....... 8, 13, 15

*Jeong v. Nexo Capital, Inc.*,
No. 21-cv-02392-BLF, 2023 WL 2717255 (N.D. Cal. Mar. 29, 2023) ....... 24

*Lacour v. Marshalls of CA, LLC*,
No. 20-cv-07641-WHO, 2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ....... 25

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
363 F.3d 1010 (9th Cir. 2004) ....... 8, 13, 17

*Mosley v. Wells Fargo & Co.*,
No.23-55478, 2024 WL 977674 (9th Cir. Mar. 7, 2024) ....... 13

*Neims v. Neovia Logistics Distribution, LP*,
No. EDCV 23-716, 2023 WL 6369780 (E.D. Ca. Aug. 10, 2023) ....... 24

*Open Book Theatre Co. v. Brown Paper Tickets, LLC*,
No.: 3:24-cv-0076-AGS-VET, 2024 WL 4230479 (S.D. Cal. Sept. 18, 2024) ....... 20, 22

*Pilon v. Discovery Communications, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025) ....... 19

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
388 U.S. 395 (1967) ....... 9, 15

*Prostek v. Lincare Inc.*,
662 F. Supp. 3d 1100 (E.D. Cal. 2023) ....... 10, 24

*Red Cross Line v. Atlantic Fruit Co.*,
264 U.S. 109 (1924) ....... 16

*Rubio v. Marriott Resorts Hospitality Corp.*,
No.: 8:23-cv-00773-FWS-ADS, 2023 WL 8153535 (C.D. Cal. Oct. 17, 2023) ....... 24



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Southern California Gas Co. v. City of Santa Ana*,
336 F.3d 885 (9th Cir. 2003) ....................................................................................18

*Sadlock v. Walt Disney Co*.,
No., 22-cv-09155-EMC, 2023 WL 4869245
(N.D. Cal. July 31, 2023)..........................................................................................20

*Silvey v. Numerica Credit Union*,
519 P.3d 920 (Wash. Ct. App. 2022).........................................................................17

*SmileCare Dental Group v. Delta Dental Plan of California, Inc.*,
88 F.3d 780 (9th Cir. 1996) ......................................................................................12

*Southland Corp. v. Keating*,
465 U.S. 1 (1984).......................................................................................................16

*Suchite v. ABM Aviation, Inc.*,
741 F. Supp. 3d 888 (S.D. Cal. 2024)........................................................................24

*Tatsuuma Kisen Kaisha v. Prescott*,
4 F.2d 670 (9th Cir. 1925) ....................................................................................9, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................................................................................................12

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ......................................................................24

*United Financial Casualty Co. v. Coleman*,
173 Wash. App. 463 (2012)........................................................................................20

*Wallrich v. Samsung Electronics America, Inc.*,
106 F.4th 609 (7th Cir. 2024) ......................................................................9, 13, 15, 17

*Williams v. Experian Information Solutions Inc.*,
No. CV-23-01076-PHX-DWL, 2024 WL 3876171
(D. Ariz. Aug. 20, 2024)............................................................................................19

*Wolfire Games, LLC v. Valve Corp.*,
No. C21-0563-JCC, 2021 WL 4952220
(W.D. Wash. Oct. 25, 2021) ......................................................................................10

**Statutes**

9 U.S.C. §§ 1, 2...........................................................................................................15

Cal. Civ. Proc. Code §§ 1281.97-1281.99 .....................................................................11



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................8, 9, 10, 12, 24, 25

Fed. R. Civ. P. 12(f) ....................10, 24

Fed. R. Civ. P. 23(d)(1)(D) ....................10, 24

Fed. R. Civ. P. 56(a) ....................18, 25



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I. PRELIMINARY STATEMENT[1]

This action arises out of thousands of individual arbitrations that Plaintiff's counsel, Mason LLP ("Mason"), brought before the American Arbitration Association ("AAA") against Valve Corporation ("Valve"), alleging that Valve's video gaming platform Steam violates antitrust law. (*See* Compl. ¶¶ 22, 26, 33.) As Valve has informed Plaintiff, his counsel, and the AAA, Plaintiff and Valve are no longer parties to an arbitration agreement. (*See* Compl. ¶ 21; Part III.C, *infra*.) In September 2024, Plaintiff agreed to Valve's current Steam Subscriber Agreement ("Current SSA"), which provides that Plaintiff may pursue his claims only in courts located in Washington. In fact, there is a consolidated putative class action pending in this District asserting these same antitrust claims, where Plaintiff is a putative class member.

But this action is not about the vindication of Plaintiff's substantive claims, or for that matter the claims of any putative class members. The true purpose of this action is to further Mason's scheme to force Valve into a position where it must pay $20.8 million in arbitration fees for thousands of individuals who have no arbitration rights so that Mason may try to extract a windfall settlement of those individuals' claims—a settlement Mason likely will be forced to seek to satisfy the expectations of third-party litigation funders.[2] Mason seeks to conscript this Court in that improper scheme. Remarkably, this is the third proceeding Mason has initiated seeking exactly this relief on behalf of overlapping groups of consumers. (*See* Ex. 6 - Plaintiff Ryan Lally's Motion for Sanctions, *In re Valve Antitrust Litigation*, No. 21-cv-00563-JNW (W.D. Wash. filed June 11, 2025) (Dkt. 467); Ex. 4 - *Welty v. Valve Corporation*, No. 25-cv-00696-KES-SAB (E.D. Cal. filed June 9, 2025).) This most recent action adds nothing to those other than multiplying legal proceedings and increasing costs.

---

[1] All references to "Ex." followed by a numbered exhibit refer to exhibits to the Declaration of Blake Marks-Dias, dated October 14, 2025. "Ex. A" refers to the Current SSA attached as an exhibit to the Declaration of Scott Lynch, dated October 14, 2025 ("Lynch Decl."). "Compl. Ex. A" refers to the Superseded SSA attached as an exhibit to the Complaint. All emphases are added and internal citations, quotations, and alterations are omitted unless otherwise stated.

[2] (*See* Exs. 1-2.)



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiff alleges Valve failed to pay an invoice for case management fees totaling $20,875,400—*i.e.*, $1,400 per arbitration claimant—that the AAA issued to continue arbitrations commenced on behalf of Plaintiff and members of the putative class. (Compl. ¶¶ 47, 52.) On his own behalf and as a representative of that putative class, Plaintiff brings claims for breach of contract and breach of the duty of good faith and fair dealing. Plaintiff seeks "specific performance of the contract including and [sic] order compelling Valve to pay all arbitration fees already invoiced or that are subsequently invoiced to Valve by AAA," "monetary and non-monetary relief," punitive damages, attorneys' fees, and "an order compelling arbitration." (*Id.* ¶¶ 77, 88-89.) Plaintiff also seeks an "[o]rder of default against Valve on the underlying arbitration claims," which he simultaneously asserts that Valve must pay $20.8 million to continue arbitrating. (*Id.* ¶ 89(e).)

But Plaintiff is entitled to no relief. His Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. In the alternative, the Court should either (i) grant summary judgment in Valve's favor because the parties have no agreement to arbitrate or (ii) dismiss or strike Plaintiff's class allegations.

***First***, even assuming the parties had an agreement to arbitrate, the Complaint should be dismissed under Rule 12(b)(6) because this Court lacks authority to grant the relief Plaintiff seeks. This action raises a dispute concerning payment of AAA arbitral fees. "'[P]rocedural' questions which grow out of the dispute [in arbitration] and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (emphasis in original). Courts consistently hold that arbitral fee disputes constitute just such procedural questions. *See, e.g.*, *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1013 (9th Cir. 2004); *see also Frazier v. X Corp.*, --- F.4th ---, 2025 WL 2502133, at *9 (2d Cir. Sept. 2, 2025) (district court "lacked authority" to order party to pay arbitral fees). Therefore, courts are without power to decide them.

Plaintiff purports to seek specific performance under state common law, but that relief is unavailable. The Federal Arbitration Act ("FAA"), not state law, governs this matter because the



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

alleged "April 25, 2023 Arbitration Agreement" (Compl. ¶ 74) (hereinafter, "Superseded SSA") between the parties involves interstate commerce. Plaintiff is a resident of New York while Valve is a citizen of Washington (*id.* ¶ 11-12), and the Superseded SSA specifically incorporates the FAA. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967). But even if state law applied, it would bar Plaintiff's claims. It has long been settled that, at common law, arbitration agreements are not subject to specific performance. *See Tatsuuma Kisen Kaisha v. Prescott*, 4 F.2d 670, 672-73 (9th Cir. 1925). Thus, the principal relief that Plaintiff seeks—an order requiring payment of the $20.8 million invoice and compelling Valve to arbitrate—is unavailable under the law Plaintiff wrongly invokes.

***Second***, the Complaint should be dismissed under Rule 12(b)(6) because it does not plead a legally sufficient claim for breach of contract or breach of the duty of good faith and fair dealing. Nothing in the parties' Superseded SSA—again, assuming it were still a valid agreement—requires Valve to pay the AAA fees at issue. (*See generally* Compl. Ex. A, § 11.) That now-superseded agreement provides only that the arbitration take place in accordance with AAA Consumer Arbitration Rules and delegates any fee disputes to the AAA. (*Id.*) As explained below, nothing the Complaint alleges to have occurred here violated those Rules. *See Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 622 (7th Cir. 2024) (holding that court could not order payment of fees where "[t]he parties agreed to abide by the rules and the procedures of the AAA, and they proceeded through arbitration in accordance with those rules and their consequences").

***Third***, the Court should grant summary judgment because the undisputed facts show that the Superseded SSA no longer governs the parties' relationship. Plaintiff accepted the Current SSA, which is valid and fully enforceable. Plaintiff's claims, which rely on the existence of the Superseded SSA (and conspicuously fail to mention the Current SSA), are thus fatally flawed. Therefore, in the alternative, the Court should grant summary judgment in Valve's favor because the parties have no agreement to arbitrate.

***Finally***, if the Court neither dismisses the Complaint in its entirety nor grants summary judgment, then the Court should dismiss or strike the Complaint's class allegations. *See* Fed. R.

Civ. P. 12(b)(6), 12(f), 23(d)(1)(D). Plaintiff admits that the Superseded SSA on which he relies contains a class action waiver. (Compl. ¶ 29.) That waiver forecloses the class relief he seeks, making his class claims improper and his class action allegations immaterial. The Court should therefore dismiss or strike them. *See Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1122 (E.D. Cal. 2023) (dismissing class claims due to class action waiver); *Holman v. Bath & Body Works, LLC*, 2021 WL 5826468, at *26 (E.D. Cal. Dec. 8, 2021) (striking class allegations due to class action waiver), *report and recommendation adopted*, 2022 WL 463298 (E.D. Cal. Feb. 15, 2022). The Court need not reach that issue, however, if it dismisses the Complaint in its entirety or grants summary judgment, as Valve urges here.

## II. <u>FACTUAL BACKGROUND</u>

In 2021, several consumers brought a putative consumer class action against Valve in this District. (Compl. ¶ 22.) Valve filed a motion to compel those individuals to arbitrate their putative claims. (*Id.* ¶ 23.) The court granted Valve's motion to compel arbitration and stayed the consumer plaintiffs' federal class action pending arbitration. (*Id.* ¶ 24.) The court did not address the plaintiffs' contention that the arbitration agreement in the SSA was unconscionable and thus unenforceable. The court held that question must be resolved in arbitration. *See Wolfire Games, LLC v. Valve Corp.*, No. C21-0563-JCC, 2021 WL 4952220, at *2 (W.D. Wash. Oct. 25, 2021).

Two years later, Mason filed arbitration demands with the AAA purportedly on behalf of Plaintiff and 14,910 other individuals. (Compl. ¶¶ 33-34.) After Valve paid $1.86 million in non-refundable filing fees associated with the 14,911 arbitrations, the parties agreed to mediate and place the "cases on an administrative hold pending the conclusion of the outside mediation." (Compl. ¶¶ 37-38, 43.) The parties did not reach a resolution. Plaintiff and the other arbitration claimants thereafter requested that the AAA "lift[] the hold" on the arbitrations. (*Id.* ¶ 46.)

Valve requested that the AAA instead close the arbitrations. Plaintiff knows why Valve made that request, but omits the reason from his Complaint: in the interim, Valve's SSA had been amended to remove its arbitration provision in response to four arbitration rulings holding that the arbitration clause was unenforceable under California law. *See Valve Corp. v. Abbruzzese*,

No. 2:24-cv-1717 (W.D. Wash. filed Oct. 18, 2024), Dkts. 1-2; *see also* (Compl. ¶ 16 (referring to "Mandatory Arbitration Period" that ended September 25, 2023); *id.* ¶ 21 (referring to SSA requiring "individual arbitration of all disputes" until September 25, 2024).) Still, Valve reimbursed Plaintiff and the other arbitration claimants $1,143,325.00 for the initial filing fees they had paid to the AAA. (*Id.* ¶¶ 35, 44.)

The Current SSA now provides for resolution of disputes in court:

> You and Valve agree that **all disputes and claims** between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) **shall be commenced and maintained exclusively in any state or federal court located in King County, Washington**, having subject matter jurisdiction. You and Valve hereby consent to the exclusive jurisdiction of such courts and waive any objections as to personal jurisdiction or venue in such courts.

(Ex. A § 10 (emphasis added).) Valve provided notice of the change in the parties' SSA in multiple ways—by a direct email notice, by an in-app "pop-up" notification, and by a notice on Valve's website. (Lynch Decl. ¶¶ 8-13.) Plaintiff affirmatively agreed to the Current SSA on September 27, 2024, by checking the box next to "I Agree to the Updated Steam Subscriber Agreement" and then clicking "Accept Updated SSA" on the pop-up notice. (Lynch Decl. ¶ 22.) (The preceding facts about the Current SSA are relevant only to Valve's motion for summary judgment; the Court need not consider them to grant Valve's motion to dismiss.)

The AAA did not close the arbitrations. (Compl. ¶ 46.) The AAA instead sent Valve an invoice for $20,875,400 for case management fees ($1,400 per claimant for 14,911 claimants). (*Id.* ¶¶ 40, 47.) Valve declined to pay that invoice (*id.* ¶ 48)—again, because claimants, including this Plaintiff, are no longer parties to arbitration agreements with Valve. Mason requested that the AAA stay the arbitrations so that he could pursue an action under California Code of Civil Procedure § 1281.97-99, a request that the AAA accommodated. (Compl. ¶ 51; Ex. 3.)

On May 2, 2025, Mason, on behalf of plaintiff Pamela Welty, filed a putative class action complaint in California state court seeking relief under California Code of Civil Procedure §§ 1281.97-1281.99 based on Valve's refusal to pay the $20,875,400.00 invoice. (Ex. 4.) Those



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

are the very same fees that Plaintiff demands that Valve pay through this action. Valve removed *Welty* to federal court and moved to transfer the case to this Court under the terms of the Superseded SSA and Current SSA. (Ex. 5.) That motion to transfer is pending.

On June 11, 2025, Mason, on behalf of plaintiff and arbitration claimant Ryan Lally, filed a motion for sanctions in the action captioned *In re Valve Antitrust Litigation*, No. 21-cv-563, pending in this District. (Ex. 6.) Lally's motion seeks in that action the same relief as *Welty*: sanctions on behalf of a putative class of arbitration claimants, including Plaintiff, for Valve's alleged failure to pay $20,875,400.00 in AAA case management fees. (Ex. 4 at 3.) Those are the very same fees that Plaintiff demands that Valve pay through this action. Lally's motion is without merit for the reasons set forth in Valve's opposition filed on June 26, 2025. (Ex. 7.)

On August 5, 2025, Mason, on behalf of Plaintiff, filed this action.

## III. <u>ARGUMENT</u>

### A. <u>The Complaint Fails To State a Claim: This Court Lacks Authority To Grant Plaintiff's Requested Relief Because Fee Disputes Are Solely Within the Purview of the AAA</u>

The Court should dismiss the Complaint because it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure where a plaintiff fails to assert a cognizable legal theory or allege sufficient facts under a cognizable legal theory. *See, e.g.*, *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782-83, 786 (9th Cir. 1996). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on a motion to dismiss, a court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

#### 1. The FAA Forecloses Plaintiff's Claims

The Complaint should be dismissed because the Court lacks the authority to grant the



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

procedural relief in arbitration that Plaintiff is seeking. Under the FAA, "'procedural' questions which grow out of [a] dispute [in arbitration] and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam*, 537 U.S. at 84 (emphasis in original); *see also Mosley v. Wells Fargo & Co.*, 2024 WL 977674, at *1 (9th Cir. Mar. 7, 2024) ("It is well-settled that questions of procedure relating to arbitration are outside of the purview of the federal courts.").

Arbitration fee disputes raise procedural questions that are not reviewable by a court and are instead within the sole purview of the arbitrator or arbitration provider. *See Lifescan*, 363 F.3d at 1013 (reversing district court order compelling party "to pay its pro-rata share of the fees" because fees were governed by AAA rules and subject to AAA's discretion); *see also Frazier*, 2025 WL 2502133, at *9 (court "lacked authority" to order party "to pay . . . arbitral fees"); *Wallrich*, 106 F.4th at 620 ("the district court exceeded its authority and the scope of the arbitration agreement by ordering Samsung to pay the AAA filing fees"); *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009) ("Payment of fees is a procedural condition precedent that the trial court should not review.").

The recent decision in *Frazier*, illustrates the point. There, former employees of the defendant company initiated arbitrations against the company, submitting various employment-related claims to JAMS. However, "months into the proceedings, [the company] disagreed with JAMS about how the arbitral fees should be allocated between the parties," and contended that only an arbitrator—not JAMS—could resolve the fee dispute. *Frazier,* 2025 WL 2502133, at *1. The company declined to pay the JAMS fees as invoiced. "Because JAMS refused to appoint an arbitrator without the fees, the proceedings ground to a halt." *Id.* JAMS stayed the proceedings at the request of the parties, and the former employees brought an action in federal court seeking to compel the company to arbitrate and to pay the JAMS fees. *Id.*

The Second Circuit reversed an order of the trial court mandating payment of fees with instructions to deny the petition. The court held that "whether a party has failed to pay arbitration fees in an ongoing arbitral proceeding is a procedural issue entrusted to the arbitrator or arbitral



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

body—not the court—for resolution within that proceeding." *Frazier*, 2025 WL 2502133, at *1. JAMS had rules governing the payment of fees, and it was best positioned to interpret and apply its rules. *Id.* at *9-10. To conclude otherwise would "inevitably require the court to interpret the parties' agreement, the arbitrators' rules, or both—interpretations that would otherwise . . . presumptively be reserved for the arbitrator." *Id.* at *9. Accordingly, the court saw "no role for a court to involve itself in a dispute in an ongoing arbitral proceeding over a party's payment of fees or compliance with arbitral policies." *Id.* It left it "to JAMS to use the tools available to it to resolve the procedural [fee issue] as it [saw] fit—even if that ultimately means terminating the arbitrations." *Id.* at *10.

Here, Plaintiff asks the Court to resolve a dispute over AAA fees, with Plaintiff seeking an order compelling Valve to pay arbitral fees. (*See* Compl. ¶¶ 66-71, 77, 81-84, 88.) But just as in *Lifescan*, *Frazier*, *Wallrich*, and *Dealer Computer*, questions about the payment of fees and the consequences of non-payment are delegated to the AAA.

The version of the Superseded SSA on which Plaintiff relies in his Complaint provides that the arbitration "will be governed by the Consumer Arbitration Rules" of the AAA. (Compl. ¶ 30.) Those rules, in turn, provide that the AAA's "role is to manage the administrative aspects of the arbitration," such as "handling the fees associated with the arbitration." (Ex. 8 at 6.) The AAA Mass Arbitration Supplementary Rules, which supplement the Consumer Arbitration Rules when the AAA determines they apply, include fees schedules as well as remedies in the event of non-payment. (Ex. 9 at MA-1; Compl. ¶ 36.)

Rule MA-10(d) provides that "[i]f administrative fees, arbitrator compensation, and/or expenses have not been paid in full, the AAA may notify the parties in order that one party may advance the required payment within the time specified." "If payments due are not made by the date specified in such notice to the parties" and "no arbitrator has yet been appointed," the AAA "may suspend or terminate those proceedings." (*Id.* at MA-10(e); *see also* Ex. 8 at R-54(a) ("If arbitrator compensation or administrative charges have not been paid in full, the AAA may inform the parties so that one of them may forward the required payment."); *id.* at R-54(c) (in the event

of nonpayment, "[i]f no arbitrator has yet been appointed, the AAA may suspend the proceedings" or ultimately terminate them).)

The AAA accordingly suspended Plaintiff's arbitration after Valve refused to pay the AAA's $20.8 million disputed invoice, and Plaintiff elected not to advance the required payment himself. (Compl. ¶ 51.) Nothing in the Superseded SSA "suggests that the parties agreed to invoke judicial oversight of those decisions or procedures," *Frazier*, 2025 WL 2502133, at *10, or to otherwise involve the Court in arbitral fee disputes. Consequently, if Plaintiff wishes to pursue his arbitration, his "remedy lies with [the AAA]," not with the Court. *Id.* Indeed, as the court in *Wallrich* explained, Plaintiff may "advance[] [the] fees and continue[] with the arbitration." 106 F.4th at 622. Alternatively, Plaintiff "can . . . pursue [his] claims on the merits in district court," including in the putative class action that is already pending. *Id.* But because this Court lacks the authority to resolve this dispute over AAA fees, the Complaint should be dismissed. *See Howsam*, 537 U.S. at 82 (affirming dismissal of action to enjoin arbitration because arbitrator, not court, should decide procedural question at issue); *Wallrich*, 106 F.4th at 622 ("the consumers cannot compel [defendant] to pay the AAA's administrative fees"); *Dealer Computer*, 588 F.3d at 888-89 (remanding to district court "to dismiss" action seeking an order compelling payment of fees).

**2. State Law Does Not Apply, Nor Does It Provide Any Basis for Relief**

Plaintiff cannot avoid this result by pleading claims for common law breach of contract and breach of the duty of good faith and fair dealing. To start, federal law applies to Plaintiff's claims regardless of how they are styled. Unless the parties agree otherwise, the FAA applies to arbitration agreements involving interstate commerce, and federal courts are bound to apply it. *See* 9 U.S.C. §§ 1, 2; *Prima Paint Corp.*, 388 U.S. at 406 (applying FAA in diversity case; explaining that "Federal courts are bound to apply rules enacted by Congress with respect to matters—here a contract involving commerce—over which it has legislative power"). Here, the Complaint acknowledges that the parties' Superseded SSA involves interstate commerce. (Compl. ¶ 29 (quoting agreement that provides FAA applies); *id.* ¶¶ 11-13 (describing interstate character of parties' relationship).) The Superseded SSA also expressly provides that the FAA "governs



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

arbitration." (Compl. Ex. A § 10.) Therefore, the FAA, not state law, applies.

Nor would common law provide any basis for relief here even if it applied (and it does not). At common law, "[o]utside a few States, predispute arbitration agreements either were wholly unenforceable or at least were not subject to specific performance." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 293 (1995) (Thomas, J., dissenting); *see also Red Cross Line v. Atl. Fruit Co.*, 264 U.S. 109, 118-19 (1924) ("[S]pecific performance of [a] promise [to arbitrate] would not be enforced" at common law). This is equally true under Washington law. *See, e.g.*, *Cogswell v. Cogswell*, 126 P. 431, 432 (Wash. 1912) ("[I]t is true that a mere executory agreement to submit to arbitration is generally revocable by either party, and hence will not be specifically enforced by the court."); *Tatsuuma*, 4 F.2d at 672-73 (reversing Western District of Washington and observing that federal courts decline to compel specific performance of arbitration agreements). Indeed, if arbitration agreements were specifically enforceable under common law, there would have been no need for Congress to enact the FAA in the first place. *See, e.g.*, *Southland Corp. v. Keating*, 465 U.S. 1, 13 (1984) (the FAA "sought to overcome the rule of equity [that] equity will not specifically enforce any arbitration agreement").

With respect to Plaintiff's common law claims for breach of contract and breach of the duty of good faith and fair dealing, Plaintiff seeks "specific performance of the contract including and [sic] order compelling Valve to pay all arbitration fees already invoiced or that are subsequently invoiced to Valve by AAA . . . and a[] [renewed] order compelling arbitration." (Compl. ¶¶ 77, 88.) The common law does not now, nor has it ever, permitted this relief. *See Tatsuuma*, 4 F.2d at 671 (discussing "well-settled rule of the common law" that arbitration agreements are "unenforceable"). As such, even if federal law did not foreclose the relief Plaintiff seeks here, Plaintiff could not obtain that relief under common law.

### B. <u>The Complaint Fails To State a Claim: Plaintiff Cannot Plead a Breach Because the Complaint Admits that Valve Has Arbitrated According to AAA Rules</u>

Plaintiff's Complaint also fails to plead a legally sufficient claim for breach of contract or breach of the covenant of good faith and fair dealing. To state a claim for a breach of contract or



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

breach of the duty of good faith and fair dealing, a plaintiff must allege, among other things, that the defendant breached the contract at issue. *See Silvey v. Numerica Credit Union*, 519 P.3d 920, 926 (Wash. Ct. App. 2022); *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) (duty of good faith and fair dealing "requires only that the parties perform in good faith the obligations imposed by their agreement"). Valve's refusal to pay the $20.8 million disputed AAA invoice is not a breach of the parties' Superseded SSA as a matter of law.

Plaintiff alleges that "Valve's refusal to pay necessary the [sic] AAA fees is an anticipatory, willful and deliberate breach of" the Superseded SSA. (Compl. ¶¶ 50, 74.) But nothing in the Superseded SSA requires Valve to pay every invoice that the AAA issues, or the particular $20.8 million invoice at issue here, and Plaintiff alleges nothing to the contrary. (*See* Compl. Ex. A, § 11.) Rather, as Plaintiff acknowledges, the Superseded SSA provides only that the "arbitration will be governed by the Consumer Arbitration Rules." (Compl. ¶¶ 29-30, 81.) As for those Consumer Arbitration Rules, Plaintiff alleges only that they required Valve to pay filing fees and arbitrator compensation. (*Id.* ¶¶ 31, 82.) Plaintiff acknowledges that Valve paid filing fees, and no arbitrator compensation is allegedly due because no arbitrators have yet been appointed. (*Id.* ¶¶ 37-38, 40-41.) Plaintiff has therefore not alleged a violation of the Consumer Arbitration Rules.

On the contrary, under the Consumer Arbitration Rules, if a party refuses to pay an invoice, the other party may advance those fees, and the AAA may suspend or terminate the arbitration in the event of nonpayment. (*See* Part III.A.1 *supra*.) Numerous courts have held that a refusal or failure to pay arbitral fees under the AAA framework does not constitute a "failure, neglect, or refusal" to arbitrate—*i.e.*, a breach of the arbitration agreement. *See Lifescan*, 363 F.3d at 1013 (party did not fail, neglect, or refuse to arbitrate when, despite failure to pay fees, "the arbitration has proceeded pursuant to the parties' agreement and the rules they incorporated"); *Wallrich*, 106 F.4th at 620 (plaintiffs' and defendant's arbitrations "proceeded in line with their agreement" when the AAA terminated arbitrations after defendant refused to pay fees).

Here, Valve declined to pay a disputed $20.8 million invoice for "case management fees" on the ground that there is no agreement to arbitrate between the parties and the AAA has followed



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

its procedures in light of that decision. (Compl. ¶¶ 70, 75.) Arbitration in compliance with the AAA Commercial Arbitration Rules complies with the Superseded SSA. Plaintiff has not alleged a breach of the Superseded SSA.[3]

**C. <u>Alternatively, the Court Should Grant Summary Judgment in Valve's Favor Because the Parties Have No Agreement To Arbitrate</u>**

The Complaint should be dismissed in its entirety for the reasons stated above. In the alternative, Valve requests that the Court grant summary judgment in its favor because the parties have entered into a new agreement that supersedes the agreement on which Plaintiff predicates his claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To obtain summary judgment, the defendant must either present evidence negating one or more elements of the plaintiff's claims, or demonstrate that the plaintiff lacks evidence sufficient to support its claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the defendant has met this burden, the plaintiff must "present affirmative evidence . . . from which a jury might return a verdict in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Courts "may grant summary judgment motions touching upon contract interpretation when the agreement is unambiguous . . . [and a]mbiguity is a question of law for the court." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003).

Here, Plaintiff asserts claims against Valve for breach of contract and breach of the duty of good faith and fair dealing, which are based on the arbitration provision in the Superseded SSA. However, the Current SSA, to which indisputably Plaintiff agreed, provides no basis for such claims. (Ex. A.) The Current SSA does not include an agreement to arbitrate, and Plaintiff's claims premised on such an agreement, which rely on the terms of the prior, Superseded SSA, therefore

---

[3] To the extent Plaintiff alleges that Valve breached a duty of good faith by failing to pay the fees, that allegation cannot support such a claim as a matter of law. The duty of good faith and fair dealing does not "inject substantive terms into the parties' contract" or create a "free-floating duty of good faith unattached to the underlying legal document." *Badgett*, 807 P.2d at 360. Plaintiff points to no provision of the Superseded SSA or AAA Consumer Arbitration Rules that Valve violated. Therefore, there is no contractual hook on which to hang Plaintiff's purported claim for breach of the duty of good faith and fair dealing.



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

have no merit.

### 1. Supreme Court Authority Requires That the Court Decide Which Agreement Is Controlling

As an initial matter, unlike fee disputes committed solely to arbitrators, whether the Current or Superseded SSA governs is a question exclusively for this Court—not the arbitrators—to decide. In *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), the parties disagreed as to which of two agreements applied to individuals' claims. The first agreement contained a clause delegating disputes as to arbitrability to an arbitrator. The second agreement contained a forum selection clause providing that all such disputes must be decided by a court. Because the parties disputed which agreement applied, they also disputed whether arbitrability was for an arbitrator or a court to decide. *Id.* at 145.

The unanimous Court held that "a court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second." *Coinbase*, 602 U.S. at 152. The Court explained:

> Arbitration is a matter of contract and consent, and we have long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes. Here, then, before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—*i.e.*, which contract controls.

*Id.* at 145; *see also Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 291 (S.D.N.Y. 2025) (applying *Coinbase* and holding that "a court must decide which contract governs" where superseded and an updated terms of use agreement "contain conflicting forum-selection clauses on the issue of arbitrability"); *Williams v. Experian Info. Sols. Inc.*, 2024 WL 3876171, at *16 (D. Ariz. Aug. 20, 2024) ("delegation clause in [prior] [a]rbitration [a]greement does not preclude the Court from determining whether that version of the arbitration agreement was later superseded by the [new] [a]rbitration [a]greement").

Here, as in *Coinbase*, only this Court may decide which agreement controls as between the Superseded SSA and the Current SSA.

### 2. The Current SSA Is Valid and Fully Enforceable

The Current SSA is valid and enforceable as to Plaintiff. Parties to existing contracts may



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

freely agree to new agreements that become binding "if the offeree's actions clearly evince acceptance of the offeror's modifications." *United Fin. Cas. Co. v. Coleman*, 173 Wash. App. 463, 473 (2012). For online transactions, "mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." *Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024). If "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at *4. "[E]mails followed by continued use is [also] sufficient to establish assent." *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023).

#### (a) Valve Properly Provided Widespread and Repeated Notice of the Current SSA

Valve provided conspicuous notice of the terms of the Current SSA to all users. For notice to be "reasonably conspicuous," it must be "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Grant*, 2024 WL 3510937, at *4. "The presence of a hyperlink must be readily apparent, customarily by using of a contrasting font color (typically blue)." *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 2024 WL 4230479, at *3 (S.D. Cal. Sept. 18, 2024). Updates to dispute resolution agreements are sufficiently conspicuous when they are specifically called out and not buried or difficult to discern. *Sadlock*, 2023 WL 4869245, at *12. Valve's notice more than met these requirements in several ways:

- **Electronic Mail**. Beginning on September 26, 2024, Valve provided email notice to all U.S. customers (including Plaintiff) of the change in Valve's SSA, sending the notice to the email address of record for their Steam accounts. The email, only two paragraphs long and hyperlinking in blue to the updated Steam Subscriber Agreement, specifically called out changes to the dispute resolution provision, providing: "[t]he updated dispute resolution provisions are in Section 10 and require all claims and disputes to proceed in court and not in arbitration." (Lynch Decl. ¶¶ 9-10.)



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- **In-Client Pop-Up.** Beginning on September 26, 2024, Valve provided notice of the update through a pop-up that appeared when users logged into the Steam client. The pop-up contained the same text and blue hyperlinks as the email. It enabled users to agree to the Current SSA by checking a box stating: "I agree to the Updated Steam Subscriber Agreement" and then clicking, "Accept Updated SSA." (*Id.* ¶¶ 11-13.) Users who chose not to accept the Current SSA could simply "X" out of the pop-up notice without agreeing to the Current SSA. (*Id.* ¶ 14.)
- **Blog Post.** Beginning on September 26, 2024, Valve published a blog post on Steam providing notice of the amended SSA. The blog post, again hyperlinking in blue to the Current SSA, stated: "We've eliminated the requirement that disputes be resolved by individual arbitration." Instead, if informal resolution did not work, "the updated SSA now provides that any disputes are to go forward in courts instead of arbitration." (*Id.* ¶¶ 15-16.)
- **Steam Website.** The Current SSA has been available online from September 26, 2024, to the present. (*Id.* ¶ 6.); *see* https://store.steampowered.com/subscriber _agreement/.

When users clicked on the hyperlinks in any of the various notices or visited the SSA page on the Steam website, they saw a banner at the top of the Current SSA, set apart in a box outlined in red, prominently announcing: "Valve has updated the Steam Subscriber Agreement. The updates affect your legal rights, including how disputes and claims between you and Valve are resolved. Among other things, the new dispute resolution provisions in Section 10 require that all disputes and claims proceed in court and not in arbitration. Please review carefully." (Lynch Decl. ¶ 7.)

The notices were consistent with the modification requirements set out in the Superseded SSA. The Superseded SSA provided: "This Agreement may at any time be mutually amended by your explicit consent to changes proposed by Valve." (Compl. Ex. A § 8(A).) The email notice and pop-up explained, in turn, "This updated Steam Subscriber Agreement will become effective immediately when you agree to it, including when you make most purchases, fund your Steam wallet, or otherwise accept it." (Lynch Decl. ¶¶ 9, 11.)



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

The Superseded SSA also provided for amendment through notice and continued use:

> Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least [thirty] (30) days before the effective date of the amendment. You can view the Agreement at any time at http://www.steampowered.com/. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms.

(Compl. Ex. A § 8(B).) It went on to explain that if the user did not agree to the amendment, he or she could cancel his or her Steam account or cease using the service. (*Id.*) Consistent with these terms, the email notice and pop-up also provided: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Lynch Decl. ¶¶ 9, 11.) Individually and collectively, the notices Valve provided Plaintiff were more than reasonably conspicuous and made it clear that the arbitration provision and class action waiver were being removed.

**(b) Plaintiff Agreed to the Current SSA**

Clicking a button to indicate acceptance of terms constitutes unambiguous assent where users are provided adequate notice that their click signifies assent. *See Open Book*, 2024 WL 4230479, at *4; *see also Briggs v. Serv. Corp. Int'l*, 2023 WL 2075958, at *4 (W.D. Wash. Feb. 17, 2023) ("Acceptance may be manifested expressly, such as by checking a box or clicking on a button."). Assent is unambiguous under such circumstances because it involves a "forced confrontation with the terms and forced decision to accept or reject them." *Open Book*, 2024 WL 4230479, at *4.

Valve's pop-up notice included two separate "forced confrontation[s]" and "forced decision[s]"—one checkbox and one button that plainly indicated the user was agreeing to the Current SSA. (Lynch Decl. ¶ 13.) If the user did not agree, he or she could simply click "X" to exit from the pop-up. (*Id.* ¶ 14.) Plaintiff affirmatively accepted the Current SSA by checking the box in the pop-up on September 27, 2024. (*Id.* ¶ 22.)



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### 3. Under the Current SSA, the Parties do not have an Agreement to Arbitrate

Under the Current SSA, the parties no longer have any agreement to arbitrate. The Current SSA now provides for resolution of disputes in court:

> You and Valve agree that **all disputes and claims** between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) **shall be commenced and maintained exclusively in any state or federal court located in King County, Washington**, having subject matter jurisdiction. You and Valve hereby consent to the exclusive jurisdiction of such courts and waive any objections as to personal jurisdiction or venue in such courts.

(Ex. A § 10 (emphasis added).) The Current SSA "constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements." (*Id.* § 11.) It specifically states: "If you were a Subscriber before [September 24, 2024], [this Agreement] replaces and supersedes your existing agreement with Valve." (*Id.*) Therefore, the operative agreement between the parties does not contain any arbitration provision upon which Plaintiff's claims may be based.

Valve is entitled to summary judgment because Plaintiff's claims rely on, and assume the continued enforceability of, a superseded and no longer operative version of the SSA. Plaintiff agreed to the Current SSA, which expressly removed the arbitration provision and required that all claims be resolved in court. By agreeing to the Current SSA, Plaintiff accepted new terms that replaced the prior agreement in full. He can no longer insist on enforcing the Superseded SSA. Consequently, there is no longer any agreement to arbitrate, and Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing—which are based solely on the terms of the Superseded SSA—are fatally deficient as a matter of law.[4]

---

[4] Steam users had the option to keep their Steam accounts and continue arbitrating under the Superseded SSA. Ryan Lally, a Steam user represented by Mason, chose to do precisely that. Because Lally had not logged into his account and had not otherwise accepted the terms of the Current SSA, Valve agreed to proceed with arbitration with Lally under the Superseded SSA. (*See* Ex. 7 at 5.)



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**D. <u>The Court Should Dismiss or Strike the Class Allegations from the Complaint</u>**

If the Court does not dismiss the Complaint in its entirety or grant summary judgment on the foregoing grounds, it should nevertheless dismiss or strike Plaintiff's class allegations. Plaintiff cannot simultaneously allege that the parties are bound by the Superseded SSA and also seek class relief on the basis of that agreement because the Superseded SSA contains a class action waiver. Courts regularly dismiss class claims under Rule 12(b)(6) when the parties' agreement has a class action waiver. *E.g.*, *Prostek*, 662 F. Supp. 3d at 1122 (dismissing class claims due to class action waiver); *Rubio v. Marriott Resorts Hospitality Corp.*, 2023 WL 8153535, at *3 (C.D. Cal. Oct. 17, 2023) (same); *Neims v. Neovia Logistics Distrib., LP*, 2023 WL 6369780, at * (C.D. Cal. Aug. 10, 2023) (same).

Alternatively, the Court should strike the class claims pursuant to Rule 12(f) and/or 23(d)(1)(D) of the Federal Rule of Civil Procedure. Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 23(d)(1)(D) provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Hence, in cases where the unavailability of class relief is "plain enough" based on the pleadings, those rules grant courts the authority to strike class claims at the pleading stage. *See Jeong v. Nexo Capital, Inc.*, 2023 WL 2717255, at *3 (N.D. Cal. Mar. 29, 2023) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *see also Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (the "Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained").

Class claims must be stricken when the parties' agreement has a class action waiver. *See, e.g.*, *Suchite v. ABM Aviation, Inc.*, 741 F. Supp. 3d 878, 888-89 (S.D. Cal. 2024) (striking class claims when agreement had "clear language" waiving "class, collective, or representative actions"); *Jeong*, 2023 WL 2717255, at *3 (striking class claims when plaintiff "waived his right to bring a class action when he agreed to the Borrow Terms"); *Holman*, 2021 WL 5826468, at *26



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(striking class allegations when agreement "waived Plaintiff's ability to bring a class action"); *Lacour v. Marshalls of CA, LLC*, 2021 WL 1700204, at *7 (N.D. Cal. 2021) (striking class claims under Rule 12(f) when agreement contained a class action waiver).

The agreement on which Plaintiff relies for relief here—the Superseded SSA—has a class action waiver. It provides: "YOU AND VALVE AGREE NOT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION." (Compl. ¶ 29; *see also id.* ¶¶ 21, 27 (acknowledging class action waiver).) Although Valve denies that that agreement is of any further force or effect, if it were applicable, its plain language would bar Plaintiff's putative class action here. Plaintiff could seek only $1,400 on behalf of himself, and not $20.8 million on behalf of a putative class of consumers. (*Id.* ¶ 40.) Plaintiff cannot claim that the class action waiver was unenforceable at the same time that it was putatively part of the parties' Current SSA. Because the arbitration agreement that Plaintiff attempts to invoke bars class claims, his class claims should be dismissed or stricken.

## IV. CONCLUSION

For the foregoing reasons, Valve respectfully requests that the Court dismiss this action in its entirety pursuant to Rules 12(b)(6) and 56 and, if it does not dismiss the action in its entirety, dismiss or strike Plaintiff's class allegations.

//

//

//

//

//

//

//

//

//

//



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED: October 14, 2025

I certify that this memorandum contains 7,203 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

*s/ Blake Marks-Dias*

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Pro Hac Vice Forthcoming*
Meredith C. Slawe, *Pro Hac Vice Forthcoming*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Defendant Valve Corporation*