THE HON. JAMAL N. WHITEHEAD

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| **JEFFREY SMITH**, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**VALVE CORPORATION**,<br><br>Defendant. | **PLAINTIFF JEFFREY SMITH'S OPPOSITION TO VALVE'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>CASE NO. 2:25-cv-01478-JNW<br><br>NOTE ON MOTION CALENDAR:<br>November 12, 2025 |



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

# TABLE OF CONTENTS

**SECTION**


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 3

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 6

A. The Motion to Dismiss Should Be Denied. ........ 6

1. Plaintiff's Claims for Breach of Contract and Duty of Good Faith and Fair Dealing Satisfy All Pleading Requirements. ........ 8

2. The FAA Does Not Foreclose Plaintiff's Contract Claims. ........ 9

3. Valve's Pre-FAA Cases Do Not Bar Plaintiff's Contract Claims. ........ 15

B. Valve's Alternative Motions Must Be Denied. ........ 16

1. Valve's Motion for Summary Judgment Is Premature. ........ 16

2. The Motion to Strike Class Allegations Should Be Denied. ........ 18

a. Judicial Estoppel Bars Valve's Arguments. ........ 19

b. The Class Claims Accrued After Waiver Was Removed. ........ 19

c. Valve's Unilateral Modification Is Unconscionable. ........ 20

d. No Basis Exists for Rule 12(f) Striking at the Pleading Stage. ........ 20

C. Leave to Amend ........ 20

V. CONCLUSION ........ 21




**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

## TABLE OF AUTHORITIES

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). ........ 17
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ........ 5, 8
*Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 807 P.2d 356 (1991). ........ 6, 9
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). ........ 5, 8
*Billie v. Coverall N. Am., Inc.*, No. 22-718-cv, 2023 WL 2531396 (S.D.N.Y. Mar. 15, 2023). ..... 12
*Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005). ........ 2
*Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *2 (2d Cir. Dec. 20, 2023). ........ 11
Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes, 323 F.3d 767 (9th Cir. 2003). . 17
*Chelan Cnty. v. Bank of Am. Corp.*, No. 2:14–CV–0044–TOR, 2014 WL 3101935 (E.D. Wash. July 7, 2014). ........ 6, 8
*Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884 (5th Cir. 2009). ........ 12, 13
Dr.'s Assocs., Inc. v. Casarotto, 517 U.S. 681 (1996). ........ 15
*Frazier v. X Corp.*, No. 24-1948, 2025 WL 2502133 (2d Cir. Sept. 2, 2025). ........ 14
Friedman v. Live Nation Merch., Inc., 833 F.3d 1180 (9th Cir. 2016). ........ 18
*G.G. v. Valve Corp.*, No. 2:16-cv-01941 (W.D. Wash.). ........ 1, 11
*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001). ........ 19
*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). ........ 14
*In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW (W.D. Wash.). ........ 2
*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004). ........ 12, 13
*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008). ........ 5
*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008). ........ 5
*Mosley v. Wells Fargo & Co.*, No. 23-55478, 2024 WL 977674 (9th Cir. Mar. 7, 2024). ........ 14



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

Red Cross Line v. Atl. Fruit Co., 264 U.S. 109 (1924). .... 15

*Rekhter* v. *State, Dep't of Soc. & Health Servs.*, 180 Wash. 2d 102, 323 P.3d 1036 (2014). .... 6

*Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003). .... 2

*Smartwings v. Boeing Co.*, No. C21-918 RSM, 2022 WL 579342 (W.D. Wash. Feb. 25, 2022). . 6, 9

*Valve Corp. v. Bucher L. PLLC*, 571 P.3d 312 (Wash. Ct. App. 2025). .... 16

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989). .... 8, 11, 15

*Wallrich v. Samsung Elecs. Am., Inc.,* 106 F.4th 609 (7th Cir. 2024). .... 13, 14

**STATUTES**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, *et seq.* .... passim

**RULES**

Fed. R. Civ. P. 12(f). .... 20, 22

Fed. R. Civ. P. 15(a)(2). .... 22

Fed. R. Civ. P. 56(d). .... 19, 20

Fed. R. Civ. P. 56(f). .... 20

Fed. R. Civ. P. 8(a). .... 5, 10



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

## I. <u>INTRODUCTION</u>

This straightforward breach of contract class action arises from Defendant Valve Corporation's ("Valve") willful refusal to pay standard AAA administrative fees totaling $20,875,400 ($1,400 per case for 14,911 cases) that AAA invoiced directly to Valve on behalf of Plaintiff Jeffrey Smith ("Smith") and the putative class members. These mandatory arbitration fees are required by AAA before assigning Plaintiff's and class members' antitrust claims to individual arbitrators and proceeding to the merits. Valve's deliberate nonpayment has halted the very arbitrations that Valve itself successfully compelled when it moved this Court in 2021 to send its subscribers' antitrust claims to arbitration.

Valve's Subscriber Agreement, which contains the parties' arbitration agreement at Section 11, unequivocally modifies the AAA's rules, is binding on the arbitrator and explicitly requires Valve to pay <u>all</u> arbitration fees and costs for individual arbitration cases seeking $10,000 or less.[1] Valve openly acknowledged this obligation when it moved to compel arbitration, touting its "consumer-friendly" arbitration provision and specifically admitting that under Section 11 of the Subscriber Agreement, "Valve will pay all arbitration costs of claims under $10,000[...]."[2] Plaintiff

---

[1] *See* Compl. ¶ 29 and Ex. A to Compl., Steam Subscriber Agreement § 11 ("SSA") which expressly "**modif[ies]**" the AAA Consumer Arbitration Rules and states that "**the arbitrator is bound by the terms of this Agreement.**" The Agreement further provides: "If you seek $10,000 or less, **Valve agrees to promptly reimburse your filing fee and your share, if any, of AAA's arbitration costs, including arbitrator compensation,** unless the arbitrator determines your claims are frivolous or were filed for harassment." Compl. ¶ 29 & Ex. A § 11. (emphasis added). These terms have remained materially the same since introduced in 2012 (Compl. ¶ 21)

[2] *See* Valve's Mot. to Compel Arbitration, *G.G. v. Valve Corp.*, No. 2:16-cv-01941 (W.D. Wash.), ECF No. 10, at 6. (Valve admitting that Section 11 of its SSA contains "consumer-friendly provisions," including by specifically "[a]greeing Valve will pay all arbitration costs of claims under $10,000, and not seek attorney fees or costs on such claims, unless the arbitrator determines they are frivolous."); *see also* Valve's Reply in Supp. of Mot. to Compel Arbitration, *G.G. v. Valve Corp.*, ECF No. 29, at 10–11 (" . . . Valve agrees to reimburse all costs of certain arbitrations" … "Valve's agreement to pay arbitration fees renders the provision not substantively unconscionable under Washington law.").



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

and each class member seeks less than $10,000 in damages individually,[3] and their claims are not frivolous.[4] Moreover, Valve's refusal to pay AAA's fees is willful and cannot be attributed to financial inability.[5] In its Motion to Dismiss, Valve ignores this material requirement of the arbitration agreement, which allocates all arbitration fees and costs to Valve, and remarkably denies that it is required to pay any fees or costs.

A respondent's refusal to pay required arbitral fees constitutes a material breach of the arbitration agreement. *See Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) (holding refusal to pay fees "constitutes a material breach"); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (holding party who compelled arbitration and then refused to participate "materially breached the arbitration agreement"). Courts possess authority to compel parties who willfully refuse to pay arbitration fees to arbitrate and may even enter default against such parties. Having compelled arbitration and now refusing to honor its admitted contractual obligations to pay all costs and fees for these arbitrations, Valve cannot escape liability through its Motion to Dismiss.

Plaintiff Smith has pleaded ample facts to plausibly establish that Valve breached the parties' arbitration agreement and violated its duty of good faith and fair dealing by willfully refusing to pay the AAA arbitration fees necessary for Plaintiff Smith and the putative class members to proceed with their antitrust arbitration claims on the merits.

Valve advances two arguments for dismissal, both of which ignore the explicit terms of the arbitration agreement. First, Valve contends that resolution of this case raises complex procedural fee issues presumptively within AAA's purview rather than the Court's. Br. 12–16. This argument fails because the parties explicitly agreed to override AAA's rules and discretion and allocate all

---

[3] Compl. ¶¶ 34, 66.

[4] *See,* Lally's Mot. for Sanctions, *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW (W.D. Wash.), ECF No. 467 *passim* (describing Valve's multi-prong scheme to thwart its subscribers' antitrust arbitrations Valve from proceeding).

[5] Compl. ¶¶ 7–8, 49, 73.

arbitration fee responsibility to Valve.[6] When AAA bills fees to Valve, the Subscriber Agreement requires Valve to pay them. No other reasonable interpretation of the parties' contract exists. Second, Valve claims nonpayment does not constitute a breach. Br. 16–18. This argument fails for the same reason: the parties agreed to override AAA rules and allocated all arbitration fee responsibility to Valve. For these reasons and those discussed below, Valve's Motion to Dismiss must be denied.

Valve's alternative Motion for Summary Judgment must also be denied as premature. Resolution requires extensive discovery, including examination of Valve's motives and intent in removing the arbitration provision from its Subscriber Agreement and any other basis for its failure to pay AAA's invoice, both relevant to Plaintiff's breach of contract and good faith claims.

Similarly, Valve's alternative Motion to Strike Class Allegations should be denied as premature, particularly given that Valve's current Subscriber Agreement contains no class waiver. While Plaintiff avers that the forum selection clause in Valve's current Agreement cannot be applied retroactively to claims accrued before its enactment, Plaintiff does not contest that Valve's revised Agreement may apply prospectively to claims arising after its issuance.

## II. STATEMENT OF FACTS

From July 2012 until at least September 25, 2024, Valve required its subscribers to arbitrate all disputes with the company.[7] On July 31, 2012, Valve informed subscribers of this mandatory arbitration requirement, asserting that class action lawsuits: (1) "don't provide any real benefit to users;" (2) "impose unnecessary expense and delay;" (3) "are often designed to benefit the class action lawyers who craft and litigate these claims;" and (4) "do not benefit [Valve] or [Valve's] communities."[8]

[6] *See* Compl. ¶ 30 & Ex. A thereto, SSA § 11.
[7] *Id.* ¶ 21.
[8] *Id.* ¶ 17.



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

On January 28, 2021, several Steam subscribers filed a consumer antitrust class action against Valve.[9] Valve promptly moved to compel arbitration and stay the class action.[10] The Court granted Valve's motion and stayed the consumer class action pending arbitration.[11] Following the Court's order, thousands of Valve subscribers retained counsel to pursue individual arbitrations.[12] In December 2023, Plaintiff Smith and 14,910 other claimants filed individual arbitration claims against Valve, with each claimant seeking less than $10,000 in damages.[13]

The arbitration process initially proceeded as required. In February 2024, AAA invoiced claimants $1,143,325.00 for initial filing fees, which claimants promptly paid. Although Valve belatedly reimbursed these fees in October 2024, the eight-month delay was merely a set-up for its future noncompliance.[14] On February 22, 2024, AAA invoiced Valve its $1,866,100.00 share of filing fees, due March 25, 2024, which Valve timely paid.[15]

On May 14, 2024, AAA advised that selecting merits arbitrators constituted the next administrative step but required payment of administrative fees ($1,400 per case, totaling $20,875,400 for all 14,911 cases) before arbitrators could be assigned. AAA indicated an invoice would follow.[16] Shortly thereafter, Valve requested outside mediation, and the parties agreed to pause the arbitrations. Mediation occurred on February 4, 2025, proved unsuccessful, and AAA lifted its hold on the arbitrations two days later.[17]

On March 24, 2025, AAA issued Valve the anticipated $20,875,400 invoice for case management fees covering all 14,911 arbitration claims, with payment due upon receipt.[18] Despite

[9] Compl. ¶ 22.
[10] *Id.* ¶ 23.
[11] *Id.* ¶ 24.
[12] *Id.* ¶ 25.
[13] *Id.* ¶¶ 6, 33-34, 66.
[14] *Id.* ¶¶ 35, 44.
[15] *Id.* ¶ 40.
[16] *Id.* ¶ 40.
[17] *Id.* ¶¶ 42–43, 45–46.
[18] *Id.* ¶ 47.



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

having the financial ability, Valve refused to pay this invoice and continues to do so.[19] These fees are required by AAA before assigning the claims to merits arbitrators and proceeding with the arbitrations.[20] As a direct result of Valve's refusal, AAA has placed all 14,911 arbitrations in abeyance, authorizing claimants to seek relief through the courts.[21]

## III. LEGAL STANDARD

A claim for relief need only include "a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought . . ." Fed. R. Civ. P. 8(a). A short and plain statement need not include factual minutiae so long as the statement puts a party on fair notice of the claim and its grounds. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, a claim must be "plausible" in that the facts pled "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a claim cannot be purely speculative, it "may proceed even if . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556–57. Determining plausibility is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party" *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "When ruling on a motion to dismiss, [the court] may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Manzarek*, 519 F.3d at 1030–31.

---

[19] Compl. ¶¶ 7–8, 48, 49, 71–73, 83.
[20] *Id.* ¶¶ 9, 40, 48, 58, 71.
[21] *Id.* ¶¶ 51.



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

To state a claim for breach of contract in Washington, "a plaintiff must plausibly allege (1) the existence of a valid contract; (2) breach of a duty imposed by that contract; and (3) damages resulting from the breach." *Chelan Cnty. v. Bank of Am. Corp.*, No. 2:14–CV–0044–TOR, 2014 WL 3101935, at *3 (E.D. Wash. July 7, 2014) (citation omitted).

Under Washington law, a "duty of good faith and fair dealing" is implied in every contract. *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569, 807 P.2d 356, 360 (1991). A violation of the duty of good faith and fair dealing does not require a breach of the underlying contract. *Rekhter* v. *State, Dep't of Soc. & Health Servs.*, 180 Wash. 2d 102, 111–12, 323 P.3d 1036, 1041 (2014).

And while "there is no-one-size fits all definition" generally, a party may not "(1) evade the spirit of a bargain; (2) willfully render imperfect performance; (3) interfere with or fail to cooperate in the other party's performance; (4) abuse discretion granted under the contract; or (5) perform the contract without diligence." *Smartwings v. Boeing Co.*, No. C21-918 RSM, 2022 WL 579342, at *6 (W.D. Wash. Feb. 25, 2022) (citations omitted).

## IV. <u>ARGUMENT</u>

### A. The Motion to Dismiss Should Be Denied.

Valve's arguments for dismissal fail because they either misrepresent the central provision of its own arbitration agreement—which indisputably shifts all arbitration fees and costs to Valve—or rely on archaic pre-1925 case law that epitomizes the judicial hostility toward arbitration agreements that the FAA was enacted to eliminate. As demonstrated herein, Valve's SSA unequivocally shifts all responsibility for arbitration fees and costs to Valve. By agreeing to this provision, the parties elected to override AAA's fee allocation rules and instead agreed that Valve would pay all AAA fees and costs.

Valve's first argument, that this case raises complex procedural fee issues presumptively for AAA to decide rather than the courts, fundamentally mischaracterizes the dispute. The parties explicitly agreed to override AAA's fee allocation rules by contractually assigning all arbitration



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

fee responsibility to Valve. When Valve refused to pay AAA's arbitration fees, it breached this clear contractual obligation. Resolution therefore turns not on complex AAA procedures, but on the unambiguous terms of the arbitration agreement requiring Valve to pay all arbitral fees and costs—an obligation Valve has expressly admitted in prior court filings. When AAA bills fees to Valve, the arbitration agreement requires payment. No other reasonable interpretation exists.

Valve's position becomes even more untenable when examined against its own contradictory arguments. The only rationale Valve has offered to any tribunal for refusing to pay AAA's $20.8 million invoice is its subjective belief that unilaterally removing the arbitration provision from its Steam Subscriber Agreement in September 2024 retroactively extinguishes AAA's jurisdiction over pending arbitrations. This purported defense implicates no complex AAA-exclusive procedures. Indeed, Valve has maintained before both the AAA and this Court that only the Court can resolve which Subscriber Agreement applies.[22] Valve cannot simultaneously argue to AAA that only courts can determine the applicable agreement, then tell this Court that resolution depends on AAA rules and procedures, which the parties expressly overruled in their agreement. Such transparent forum-shopping should be rejected.

Valve's second argument fares no better. Valve again ignores the arbitration agreement's key provision overriding AAA rules and allocating all fee payment responsibility to Valve, claiming instead that "Valve's refusal to pay the $20.8 million disputed AAA is not a breach of the parties' [] SSA as a matter of law" and that "nothing in the [] SSA requires Valve to pay every invoice that the AAA issues, or the $20.8 million invoice at issue here [...]." Br. 17. This argument willfully misreads the contract that Valve drafted and contradicts the well plead allegations of the complaint which must be taken as true. The parties agreed to override AAA's standard fee allocation and make Valve responsible for all arbitration fees and costs as Valve has admitted. By

[22] *See, e.g.*, Br. 19 (Valve arguing "whether the Current or Superseded SSA governs is a question exclusively for this Court—not the arbitrators—to decide.).



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

refusing to pay the fees necessary for arbitrations to proceed, Valve has unequivocally breached its contractual promise.

Finally, Valve's contention that plaintiff cannot enforce the arbitration agreement using state common law fundamentally misunderstands the FAA. The FAA does not preempt state laws that enforce arbitration agreements but only preempts state laws that discriminate against arbitration. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 (1989).[23] Valve's reliance on archaic case law predating the FAA's 1925 enactment—from an era when courts were openly hostile to arbitration—is particularly misguided. The FAA mandates that arbitration contracts be placed on equal footing with all other contracts and enforced according to their terms, just like any other agreement. *Id.* at 474 (Congress crafted the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate . . . and place such agreements upon the same footing as other contracts.") (internal marks and citations omitted). State law remedies that do not conflict with the purpose of the FAA remain fully available when used to enforce arbitration agreements, including this one.

1. *Plaintiff's Claims for Breach of Contract and Duty of Good Faith and Fair Dealing Satisfy All Pleading Requirements.*

"To state a claim for breach of contract under Washington law, a plaintiff must plausibly allege (1) the existence of a valid contract; (2) the defendant's breach; and (3) resulting damages." *Chelan Cnty.*, 2014 WL 3101935, at *3. The Complaint provides more than a "short and plain statement of the claim" and puts Valve on clear notice of the claims and grounds for relief as required by Rule 8(a), *Twombly*, and *Iqbal*.

[23] *See Volt*, 489 U.S. at 477 (explaining that "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.") (citations and internal marks omitted).



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

Plaintiff easily satisfies these requirements here. Plaintiff has plead:

- The existence of the agreement, and incorporation and contractual modification of AAA rules: Compl. Ex. A § 11; Compl. ¶¶ 4–5, 17, 21, 27–31, 62–63.
- Valve's breach: its refusal to pay required fees despite never claiming inability and in the face of AAA's explicit demand: Compl. ¶¶ 8–9, 40, 47–51, 69–74.
- Damages: stalled arbitrations, loss of the "speedy, informal" forum, and complete frustration of contractual expectations: Compl. ¶¶ 8–9, 17–19, 51, 76–77.

Further, Washington law unmistakably recognizes that breach of contract and breach of the duty of good faith and fair dealing arises when one party blocks or undermines the benefit of the bargain.[24] Here, Valve's refusal to pay the $20.8 million dollar AAA invoice undermines the underlying purpose of the agreement, expedient efficient arbitration of Plaintiff's claims, in the parties' agreed-to forum, with all fees and costs paid for or reimbursed by Valve. As such, Plaintiff has also adequately plead his Breach of Duty of Good Faith and Fair Dealing Claim.

2. *The FAA Does Not Foreclose Plaintiff's Contract Claims.*

Valve contends that resolution of Plaintiff's claims will raise AAA-exclusive procedural questions that are presumptively not for a judge to decide. Br. 12–14. This argument fails entirely because it rests on Valve's fundamental misreading of its own arbitration agreement—a misreading that, once corrected, defeats Valve's position.

Valve wrongly that the arbitration agreement is silent regarding payment of arbitration fees and that the parties therefore agreed to defer to AAA's fee allocation rules. This premise is false. As drafter of the Subscriber Agreement, Valve knows—or should know—that it contains explicit provisions allocating all arbitration fees to Valve. While Valve claims the agreement "provides the

[24] *See Badgett*, 116 Wash. 2d at 569; *see also Smartwings*, 2022 WL 579342, at *6, listing the following examples of prohibited conduct: (1) evad[ing] the spirit of a bargain; (2) willfully render[ing] imperfect performance; (3) interfere[ing] with or fail[ing] to cooperate in the other party's performance; (4) abus[ing] discretion granted under the contract; or (5) perform[ing] the contract without diligence.

arbitration will be governed by the Consumer Arbitration Rules of the AAA," it misleadingly implies that AAA's standard fee allocation rules control. In reality, the arbitration agreement explicitly overrides AAA's fee rules and allocates all fees to Valve. Nevertheless, Valve asserts: "Nothing in the parties Superseded SSA [...] requires Valve to pay the arbitration fees at issue. [...] That [...] agreement provides only that the arbitration take place in accordance with AAA Consumer Arbitration Rules and delegates any fee disputes to AAA." Br. 9. These statements are not merely misleading—they are false.

The arbitration agreement's actual language unambiguously overrides AAA's fee allocation rules and makes Valve responsible for all arbitration fees and costs. Section 11 provides as relevant here that:

> The U.S. Federal Arbitration Act applies to this Section 11 as far as your country's laws permit. The arbitration will be governed by the Consumer Arbitration Rules (or the Commercial Arbitration Rules, if the Consumer Arbitration rules are inapplicable) of the American Arbitration Association ('AAA') **as modified by this agreement**. Rules are available at http://www.adr.org. **The arbitrator is bound by the terms of this agreement**. The AAA will administer the arbitration.
>
> **If you seek $10,000 or less, Valve agrees to promptly reimburse your filing fee and your share if any of AAA's arbitration costs, including arbitrator compensation**, unless the arbitrator determines your claims are frivolous or were filed for harassment.

*See* Compl. ¶ 29 & Ex. A § 11 (emphasis added). This language explicitly modifies AAA's rules and procedures, by allocating responsibility for all arbitration fees and costs to Valve and binds both AAA and the arbitrator. For all claims seeking $10,000 or less—which includes all claims here—the parties agreed that Valve bears full responsibility for arbitration fees while subscribers, including Plaintiff and the class members here, pay nothing.

Valve's own prior admissions confirm this interpretation. When previously moving to compel arbitration before Judge Coughenour, Valve admitted that Section 11 of its SSA contains "consumer-friendly provisions," including specifically "Agreeing Valve will pay all arbitration



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

costs of claims under $10,000." Valve's Mot. to Compel Arbitration, *G.G. v. Valve Corp.*, No. 2:16-cv-01941 (W.D. Wash.), ECF No. 10, at 6. Valve doubled down in its reply brief again admitting "Valve agrees to reimburse all costs of certain arbitrations" (citing Sec. 11 of its SSA) and that "[] Valve's agreement to pay arbitration fees renders the provision not substantively unconscionable under Washington law.") Valve's Reply in Support of Mot. to Compel Arbitration, *G.G. v. Valve Corp.*, No. 2:16-cv-01941 (W.D. Wash.), ECF No. 29, at 11–12. Valve cannot now disavow its own contractual obligations and prior judicial admissions.

The contractual terms are clear and controlling: the arbitration agreement overrides any contrary AAA fee rules and requires Valve to pay all arbitration fees and costs. Resolution of this dispute therefore turns not on AAA's procedural rules but on the parties' explicit contractual agreement, which binds both the parties and AAA. When AAA billed Valve for required arbitration fees pursuant to this agreement, Valve's willful refusal to pay constituted a breach. AAA never reallocated fees from Valve to Plaintiffs; instead, it held the proceedings in abeyance to allow Plaintiffs to seek judicial relief for Valve's breach.[25]

This Court has full authority to enforce the fee structure the parties contractually adopted. *See Volt*, 489 U.S. at 476 ("There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate.") & 479 ("Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit"). The FAA mandates enforcement of arbitration agreements according to their terms—including fee allocation provisions that override default AAA rules. *See Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *2 (2d Cir. Dec. 20, 2023) (terms of arbitration agreement regarding allocation of fees and costs override AAA rules); *Billie v. Coverall N. Am., Inc.*, No. 22-

[25] Compl. ¶ 51.



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

718-cv, 2023 WL 2531396, at *3 (S.D.N.Y. Mar. 15, 2023) (AAA's administrative procedures cannot override clear contractual fee allocation term).

Valve's cited cases are readily distinguishable because none involved private fee allocation agreements that override AAA rules. The parties in the cases Valve relies upon specifically delegated fee allocation disputes to arbitrators precisely because the parties had not contracted otherwise.

***Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011–13 (9th Cir. 2004),** addressed AAA's discretion to reallocate fees under its rules when one of parties faces extreme financial hardship. Critically, the arbitration agreement in *Lifescan* incorporated the rules of the provider but was otherwise "silent about the apportionment of fees" and thus "[t]hey le[ft] it up to the arbitrators." *Id.* at 1013. When Premier became financially unable to pay its share, AAA reallocated all fees to the solvent party, Lifescan. Lifescan challenged this reallocation in the district court, which ordered Premier to pay its pro-rata share. The Ninth Circuit reversed, holding in that case, where there was no contrary fee allocation agreement unlike here, that AAA acted within its discretion to reallocate fees to the solvent party.

*Lifescan* has no application here. Unlike in *Lifescan*, the parties' arbitration agreement here explicitly allocates all arbitration fees to Valve, overrides any contrary AAA fee rules, binds AAA to these changes and removes AAA's discretion to reallocate fees contrary to the parties' agreement. Moreover, Valve faces no financial hardship preventing payment of the invoiced fees, and AAA neither reallocated fees from Valve to claimants, nor suspended proceedings for that reason. AAA placed the proceedings in abeyance solely because Valve refused to pay the fees to allow claimants to seek relief from the courts.[26]

***Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886–88 (5th Cir. 2009),** presents identical circumstances to *Lifescan* and is distinguishable for the same reasons.

[26] Compl. ¶ 51.



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

The parties incorporated AAA rules[27] without any contrary agreement regarding fee allocation.[28] When one party faced financial hardship, AAA shifted fee payment to the other party, who then petitioned the district court for relief. The Fifth Circuit, like the Ninth Circuit in *Lifescan*, upheld AAA's discretion to reallocate fees absent a contrary agreement between the parties.

*Dealer Comput. Servs.* also has no application here. Unlike in *Dealer Comput. Servs.*, the parties' arbitration agreement here explicitly allocates all arbitration fees to Valve, overrides any contrary AAA fee rules, binds AAA to these terms and removes AAA's discretion to reallocate fees contrary to the parties' agreement. Moreover, Valve faces no financial hardship preventing payment of the invoiced fees,[29] and AAA neither reallocated fees from Valve to Plaintiffs nor suspended proceedings for that reason.

***Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609 (7th Cir. 2024),** provides no support for Valve's position. The *Wallrich* court understood that the agreement there, unlike here, adopted AAA's rules wholesale, and thus the parties there delegated all fee-related decisions to the provider's discretion. The Seventh Circuit accordingly held that AAA's termination of the arbitrations after Samsung failed to pay the required fees was a procedural matter well within AAA's authority, fully consistent with the contract. *See id.* at 617, 622. The court explained, "The AAA considered the dispute and terminated the arbitration within its discretion. At that point, arbitration was complete, and the district court did not have the authority to flout the parties' agreement and disturb the AAA's judgment." *Id.*

This case is fundamentally different as the Subscriber Agreement at issue here does not delegate fee allocation to AAA's rules or discretion. Instead, it modifies AAA's fee procedures and

---

[27] *Dealer Comput. Servs.*, 588 F.3d at 888 ("Dealer Services agreed to be bound by the AAA Rules.).

[28] *Id.* at n.3 ("The contract to arbitrate makes no provision respecting arbitral costs [... .]"

[29] *Id.* ("Old Colony claims that it refused to put up its part of the arbitral fee because it is and was financially unable to do so."), *cf.* Compl. ¶ 49 ("Valve has never asserted any lack of ability to pay, nor could it have given its market value in the billions of dollars.").



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

unequivocally obligates Valve to pay all arbitration fees and costs for claims under $10,000. In addition, the AAA did not terminate the arbitrations after Valve refused to pay fees, as demanded by Valve here, instead, it put the arbitrations in abeyance to allow claimants to seek judicial relief. Thus, *Wallrich* is not on the same footing. But, even the *Wallrich* court acknowledged that "If the AAA believed Samsung was abusing the arbitration process, it could have stayed the case or threatened to decline administering future consumer arbitrations with Samsung, but it did not." *Wallrich*, 106 F.4th at 622.

***Frazier v. X Corp.*, No. 24-1948, 2025 WL 2502133 (2d Cir. Sept. 2, 2025),** is inapposite here. In *Frazier*, the arbitration agreements merely "incorporated by reference Judicial Arbitration and Mediation Services' ('JAMS') rules and policies," but was silent, unlike here, as to whether the contract terms would control over JAMS procedures. The Second Circuit emphasized that such disputes, "where the parties' agreement incorporates provider rules without clear modification, are matters of arbitral procedure and not a 'refusal to arbitrate' for purposes of FAA Section 4." *Id.* at *9. The court expressly explained that the contracts in *Frazier* "were silent as to whether JAMS's default rules or a pro-rata fee arrangement should control, and therefore JAMS resolved the fee dispute by administrative action consistent with its policies." *Id.* at *8. Thus, the *Frazier* ruling is limited to situations where the agreement does <u>not</u> override the arbitrator's rules. Here, by contrast, Valve's agreement allocates all arbitral fees to Valve and expressly modifies AAA rules.

Neither ***Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002),** nor ***Mosley v. Wells Fargo & Co.,* No. 23-55478, 2024 WL 977674 (9th Cir. Mar. 7, 2024),** are controlling here because neither addressed whether arbitration fee disputes—especially those resulting in a halt to proceedings—are procedural questions presumptively for arbitrators rather than courts. In *Howsam*, the Supreme Court held that routine procedural issues, like timing or eligibility under arbitral rules, are generally for the arbitrator to decide. *See Howsam*, 537 U.S. at 84–85. *Mosley* similarly dealt only with ordinary procedural matters.



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

Crucially, neither case considered what happens when arbitration has broken down and the arbitrator, in its discretion, places the arbitration in abeyance to allow the parties to seek judicial intervention. Here the parties contractually agreed on fees, removing the fee allocation issue from AAA's purview, and AAA has deferred the fee dispute to the courts. Compl. ¶ 51.

3. *Valve's Pre-FAA Cases Do Not Bar Plaintiff's Contract Claims.*

Valve's argument that arbitration agreements are unenforceable at common law relies on obsolete authority that predates the FAA's 1925 enactment reflecting the judicial hostility toward arbitration that Congress explicitly rejected. Congress enacted the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate . . . and place such agreements upon the same footing as other contracts." *Volt*, 489 U.S. at 474. Valve's reliance on cases like *Red Cross Line v. Atl. Fruit Co.*, 264 U.S. 109 (1924), decided before the FAA even existed, ignores that such precedents were abrogated by the FAA's command that arbitration agreements be specifically enforceable.

The FAA does not preempt all state contract law, only those laws that discriminate against arbitration agreements. As the Supreme Court explained in *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996):

> States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.' 9 U.S.C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress's intent.

Plaintiff's breach of contract and breach of good faith claims seek to enforce—not invalidate—the arbitration agreement using neutral principles of contract law that apply equally to all contracts. These common law claims align perfectly with the FAA's mandate to treat arbitration agreements like any other contract. Valve cannot invoke pre-FAA hostility toward arbitration to escape its



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

contractual obligations while simultaneously claiming the FAA's protections when compelling arbitration. The FAA requires enforcement of arbitration agreements according to their terms—including Valve's explicit promise to pay all arbitration fees.[30]

**B. Valve's Alternative Motions Must Be Denied.**

1. *Valve's Motion for Summary Judgment Is Premature.*

Valve's motion for summary judgment, in the alternative, and before any discovery, relies on its anticipated affirmative defense that its Revised SSA—imposed after the filing of thousands of arbitration claims—now precludes subscribers from pursuing even their pending arbitrations against Valve, because there is no longer any current arbitration agreement in place. Valve thus seeks to avoid resolution of these arbitration claims through a forced contractual change applied well after Plaintiff and class members filed their arbitration claims with AAA.

Critically, the resolution of Valve's premature summary judgment motion does not turn solely on the formation and assent to its Revised SSA. Equally important are whether the terms of the Revised SSA—particularly as Valve aims to enforce them retroactively—are procedurally and substantively unconscionable, and whether Valve violated its duty of good faith and fair dealing by unilaterally removing the arbitration provision. These questions require investigation into Valve's motive and intent and whether its actions were designed to strip its subscribers of arbitration rights after claims were vested. Plaintiff Smith and the class brought their claims before the AAA in reliance on the prior terms, which required arbitration.

---

[30] As for Valve's baseless claim that "this action is not about the vindication of Plaintiff's substantive claims[...]" but rather Counsel's "scheme to force Valve into a position where it must pay the $20.8 million in arbitration fees arbitration fees," the Washington Court of Appeals has already rejected any notion of any improper schemes against it finding that "[t]he conduct Valve complains of—the filing of thousands of individual arbitration requests—is a direct result of its own agreement barring class actions and prohibiting collective or representative arbitration" and "[o]n this particular issue, Valve is hoist by its own contractual petard." *Valve Corp. v. Bucher L. PLLC*, 571 P.3d 312, 321 & n.6 (Wash. Ct. App. 2025).

At this early stage of the case, summary judgment should not proceed because extensive discovery is needed on several key issues: Valve's purpose in forcing subscribers to accept the Revised SSA under threat of losing access to purchased content; whether the SSA revision was intended by Valve to apply retroactively to preclude accrued arbitration claims and proceedings; and whether its subsequent removal of the arbitration provision was intended to shield Valve from arbitration liability and the payment of arbitration fees and costs. These issues are material and intertwined with contract defenses, such as unconscionability and breach of good faith, and implicate conduct that may only be illuminated by evidence uniquely in Valve's possession.

In addition to contract formation and assent, discovery related to Valve's intent, motives, and processes surrounding the SSA revision is vital. Plaintiff must have the opportunity to obtain internal communications, business records, and factual information regarding the rationale and application of contractual changes. This includes whether Valve's explanation for removing arbitration was pretextual, and if Valve acted primarily to escape liability for a large number of pending and valid arbitration claims. Such information is not publicly available and can only be uncovered through discovery of Valve.

Courts routinely recognize that dispositive issues cannot be resolved at the summary judgment stage unless a party has first been allowed meaningful discovery—especially where the relevant evidence is exclusively held by the moving party. *See, e.g.*, Fed. R. Civ. P. 56(d); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (summary judgment should not be granted when discovery has not occurred). While the Ninth Circuit routinely defers summary judgment when discovery could reveal material facts, *see e.g.*, *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 773–74 (9th Cir. 2003), where "no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Id.* at 774.



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

Additionally, establishing the state of mind, or wrongful intent, typically requires circumstantial evidence and reasonable inference from the documents, communications, and context supplied in discovery. "Indeed, whenever state of mind is at issue, direct proof of one's specific wrongful intent is rarely available and so recourse to circumstantial evidence is most often necessary." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (citations and internal marks omitted).

Accordingly, Plaintiff should be granted leave to conduct discovery on Valve's actions and intent in amending the SSA, including the events and conditions present at the time of its decision. Plaintiff's attached Rule 56(d) declaration, submitted by Gary E. Mason, specifies examples of the types of documentation, testimony, and topics that should be explored before Plaintiff can fairly respond to or oppose Valve's summary judgment motion.

Because Valve's summary judgment motion raises deeply contested and fact-intensive defenses—such as intent, good faith, the effect of the SSA revision, unconscionability, and whether procedural methods were employed to defeat vested claims—granting judgment before discovery would be premature. Plaintiff requests the Court deny Valve's motion without prejudice to refiling after full discovery, allowing the parties, as is customary in these circumstances, to proceed to the merits.

2. *The Motion to Strike Class Allegations Should Be Denied.*

Valve's motion to strike all class action allegations from Plaintiff Smith's complaint under Rule 12(f), based solely on a class action waiver Valve acknowledges was excised from its Steam Subscriber Agreement as of September 26, 2024, is fundamentally flawed and should be denied at this early stage.[31] Valve concedes Plaintiff accepted the revised SSA (lacking a class action waiver)

---

[31] *See* ECF 14, Decl. of Scotty Lynch, ¶ 6 ("On September 26, 2024, Valve removed the arbitration agreement *and class action waiver* from the SSA.")(emphasis added).



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

on September 27, 2024,[32] and does not dispute that the breach of contract claim stems from Valve's refusal to pay $20.8 million in arbitration fees invoiced by AAA in March 2025*, i.e.*, after the class waiver's removal.

*a. Judicial Estoppel Bars Valve's Arguments.*

Valve attempts to invoke the class action waiver from the now-superseded SSA to strike class allegations arising from claims that accrued months after the waiver was removed—while simultaneously arguing that the arbitration provision of that same SSA does not apply to arbitration claims initiated before September 26, 2024. Valve directly contradicts itself and runs afoul of the doctrine of judicial estoppel, which prevents a party from asserting "clearly inconsistent" positions in litigation, particularly where the party has benefitted from a prior position and where the new position would work an unfair advantage or detriment. The Ninth Circuit emphasizes that the integrity of judicial proceedings depends on protecting the process from such gamesmanship. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (noting judicial estoppel protects the "dignity of judicial proceedings and to protect against a litigant playing fast and loose with the courts.")

*b. The Class Claims Accrued After Waiver Was Removed.*

Plaintiff Smith's class-based breach of contract claims arise from Valve's recent refusal to pay arbitration fees for arbitration claims, and accrued in March and April 2025, well after the class action waiver was removed from the SSA and replaced with terms requiring claims to be brought to court. Valve's motion attempts retroactively to apply a class waiver that, by Valve's own admission, was not in effect when the claims at issue accrued. Plaintiff Smith, unlike Valve, does not take conflicting positions; his position is simply that no provision of the Revised SSA, even if enforceable, can retroactively abolish accrued arbitration rights or claims, and any such

[32] *Id.,* ¶ 22 (Scotty Lynch declaring, "Based on Valve's business records, on September 27, 2024, Plaintiff [Smith] accepted the current SSA ...").



**MASON LLP**
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

retroactive enforcement would be unconscionable and breach Valve's duty of good faith and fair dealing.

*c. Valve's Unilateral Modification Is Unconscionable.*

Smith properly highlights that Valve's unilateral removal of the SSA's arbitration and class waiver provisions, specifically after receiving mass arbitration claims and facing significant liability, is not a valid basis to extinguish those claims and fees. Such conduct may be found procedurally and substantively unconscionable, especially where it is designed to shield Valve from liability rather than reflect a bona fide alteration of mutual rights and obligations.

*d. No Basis Exists for Rule 12(f) Striking at the Pleading Stage.*

Rule 12(f) motions to strike class allegations are disfavored and rarely granted prior to discovery unless the pleadings demonstrate that a class action cannot be maintained as a matter of law. Here, it is premature for the Court to resolve such fact-intensive issues before adjudicating which agreement governs and whether the under lying arbitration claims survive under the relevant version of the SSA. Valve's motion is unsupported and an inappropriate attempt to dismiss meritorious class claims at the outset.

In sum, Valve cannot selectively enforce a superseded contractual class action waiver to bar class claims that both accrued and was filed after its own decision to remove the class action waiver from its Current SSA. Judicial estoppel precludes Valve from arguing contradictory positions in the same matter, and the facts do not warrant striking Plaintiff Smith's class allegations at this stage. The motion should be denied.

**C. Leave to Amend**

If the Court identifies any pleading deficiency, Plaintiff respectfully requests leave to amend which should be freely granted. *See* Fed. R. Civ. P. 15(a)(2).



MASON LLP
5335 WISCONSIN AVENUE NW
SUITE 640
WASHINGTON, DC 20015
TEL.: (202) 429-2290

**V. <u>CONCLUSION</u>**

Valve's willful refusal to pay the required AAA case management fees is a direct, material breach of the Subscriber Agreement and is a bad faith tactic designed to frustrate the contract's entire purpose of providing quick, informal, and cost-effective dispute resolution. Smith's Complaint, bolstered by Valve's own statements, arbitration agreement and judicial admissions, meets and exceeds all pleading requirements. Valve's breach cuts to the heart of both its express promise and public policy underlying the FAA, AAA rules, and Washington contract law. The Court should accordingly deny Valve's motion to dismiss and recognize that Plaintiff has stated robust and plausible claims for breach of contract and bad faith.

Dated: November 4, 2025.

Respectfully submitted,

**Mason LLP**

By: */s/ Gary E. Mason*
Gary E. Mason (*pro hac vice*)
Danielle L. Perry (*pro hac vice*)
Theodore B. Bell (*pro hac vice*)
Jacob D. Eisenberg (*pro hac vice*)
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel.: (202) 429-2290
Email: gmason@masonllp.com
Email: dperry@masonllp.com
Email: tbell@masonllp.com
Email: jeisenberg@masonllp.com

*Counsel for Plaintiff Jeffrey Smith and the proposed Class*

/s/ Michael C. Subit
**Frank Freed Subit & Thomas LLP**
Michael C. Subit, WSBA No. 29189
Hoge Building

1 Manhattan West
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1729
Tel.: (206) 682-6711
Email: msubit@frankfreed.com

*Local Counsel*