THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY SMITH, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | No. 2:25-CV-01478-JNW<br><br>**DEFENDANT VALVE CORPORATION'S NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS (DKT. 13)** |



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Pursuant to Local Civil Rule 7(n), and in connection with Defendant Valve Corporation's ("Valve") Motion to Dismiss Or, In The Alternative, For Summary Judgment Or, In The Alternative, To Strike Class Allegations (Dkt. 13), Valve respectfully submits as supplemental authority the decision of the U.S. Court of Appeals for the Seventh Circuit in *Bernal v. Kohl's Corporation*, 174 F.4th 573 (7th Cir. 2026), attached hereto as **Exhibit A**.

In *Bernal*, petitioners filed demands to arbitrate certain claims before the American Arbitration Association ("AAA") pursuant to an arbitration agreement with Kohl's Corporation. Kohl's had updated its arbitration agreement to specify a different arbitration provider, and its arbitration agreement was no longer registered with the AAA as the AAA rules require. The AAA therefore declined to administer the arbitrations and closed petitioners' cases. The petitioners then filed a petition to compel Kohl's to arbitrate before the AAA. The district court denied the petition and the Seventh Circuit affirmed that denial. The Seventh Circuit held that "Kohl's failure to register its agreement with the AAA was properly before the AAA to consider in line with its rules." *Bernal*, 174 F.4th at 582. The AAA's "exercise of discretion in closing the Petitioners' cases flowed directly from the parties' agreement granting AAA that power, leaving nothing for the district court to compel under the Federal Arbitration Act." *Id.*



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED: June 5, 2026

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Defendant Valve Corporation*

# EXHIBIT A

174 F.4th 573
United States Court of Appeals, Seventh Circuit.

Ana BERNAL, et al., Petitioners-Appellants,
v.
KOHL'S CORPORATION and
Kohl's, Inc., Respondents-Appellees.

No. 24-2806
|
Argued September 17, 2025
|
Decided May 1, 2026

**Synopsis**
**Background:** Consumers filed petition for order compelling retailer to submit to arbitration of their false and deceptive marketing practices claims before American Arbitration Association (AAA). After transfer, the United States District Court for the Eastern District of Wisconsin, Lynn Adelman, J., 749 F.Supp.3d 971, denied consumers' petition to compel arbitration, file its arbitration agreement with AAA, and pay corresponding fees. Consumers appealed.

**[Holding:]** The Court of Appeals, Pryor, Circuit Judge, held that retailer satisfied its obligation to arbitrate.

Affirmed.

Kolar, Circuit Judge, dissented and filed opinion.

**Procedural Posture(s):** Interlocutory Appeal; Motion to Compel Arbitration.

West Headnotes (10)

**[1]** **Alternative Dispute Resolution** 🔑 Scope and standards of review

Denial of motion to compel arbitration is reviewed de novo, and any findings of fact underlying decision are reviewed for clear error.

**[2]** **Alternative Dispute Resolution** 🔑 Contractual or consensual basis

Courts must place arbitration agreements on the same footing as other contracts and enforce them according to their terms.

**[3]** **Alternative Dispute Resolution** 🔑 Matters to Be Determined by Court

Because arbitration agreements are creatures of contract, it is up to parties to determine whether particular matter is primarily for arbitrators or for courts to decide.

**[4]** **Alternative Dispute Resolution** 🔑 Evidence

On motion to compel arbitration, if agreement is silent on matter of who primarily is to decide threshold questions about arbitration, courts determine parties' intent with help of presumptions.

**[5]** **Alternative Dispute Resolution** 🔑 Evidence

Parties are presumed to intend for courts to answer certain gateway questions of arbitrability, such as whether parties have agreed to arbitrate or whether their agreement covers particular controversy.

**[6]** **Alternative Dispute Resolution** 🔑 Arbitrability of dispute

Parties can delegate threshold arbitrability questions to arbitrator when their agreement does so by clear and unmistakable evidence.

**[7]** **Alternative Dispute Resolution** 🔑 Evidence

Unless otherwise stated in parties' agreement, court presumes parties intend arbitrators, not courts, to decide disputes about meaning and application of particular procedural preconditions for use of arbitration.

**[8]** **Alternative Dispute Resolution** 🔑 Remedies and Proceedings for Enforcement in General

Party can compel arbitration under Federal Arbitration Act (FAA) by showing (1) enforceable written arbitration agreement, (2) dispute falling within agreement's scope, and (3) refusal to arbitrate. 9 U.S.C.A. § 4.

**[9]** **Alternative Dispute Resolution** 🔑 Constitutional and statutory provisions and rules of court

Federal Arbitration Act (FAA) does not grant party unfettered right to arbitrate; rather, all that law requires is that parties arbitrate according to terms of their agreement. 9 U.S.C.A. § 1 et seq.

**[10]** **Alternative Dispute Resolution** 🔑 Conditions precedent

Retailer satisfied its obligation to arbitrate consumers' false and deceptive marketing practices claims before American Arbitration Association (AAA) by refusing to register its arbitration agreement with AAA, and thus could not be compelled to arbitrate claims, despite consumers' contention that retailer's refusal to register its agreement equated to refusing to arbitrate or not, in violation of Federal Arbitration Act (FAA); AAA's Consumer Arbitration Rules required retailer to register arbitration agreement, which would have enabled AAA to conduct due process review and include agreement on publicly accessible registry, and AAA properly exercised its discretion to dismiss claims based on retailer's failure to comply with its rules. 9 U.S.C.A. § 4.

More cases on this issue

Appeal from the United States District Court for the Eastern District of Wisconsin. No. 23-cv-1542 — **Lynn Adelman**, *Judge.*

**Attorneys and Law Firms**

Kiran Narayan Bhat, Attorney, Keller Postman LLC, Washington, DC, Martin Woodward, Attorney, Kitner Woodward PLLC, Dallas, TX, for Petitioners-Appellants.

Shay Dvoretzky, Attorney, Parker Andrew Rider-Longmaid, Attorney, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, Lauri A. Mazzuchetti, Attorney, Kelley Drye & Warren LLP, Madison, NJ, Kurt Hemr, Attorney, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, Michael Wayne McTigue, Jr., Attorney, Jeremy Patashnik, Attorney, Meredith C. Slawe, Attorney, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, James Bryan Saylor, Attorney, Kelley Drye & Warren LLP, New York, NY, for Respondents-Appellees.

Before Scudder, Pryor, and Kolar, Circuit Judges.

**Opinion**

Pryor, Circuit Judge.

***574** ****1** Petitioners-Appellants Ana Bernal, Amiee Marquez, Patricia Juarez, and Clara Roa ("Petitioners") purchased products online from Kohl's website between 2020 and 2022. Kohl's is a national retailer with its principal place of business in Wisconsin. To purchase products on Kohl's website, ***575** the Petitioners had to accept Kohl's Terms and Conditions, which incorporated an arbitration clause. [1] The arbitration agreement in those Terms and Conditions required the Petitioners to arbitrate "any dispute" with Kohl's before the American Arbitration Association ("AAA"). It also mandated that, prior to filing arbitration demands, the Petitioners had to serve notices of the dispute on Kohl's in an effort to resolve their complaints prior to instituting the arbitration.

Contending that Kohl's engaged in false and deceptive marketing practices, the Petitioners followed the process laid out in the arbitration agreement. They served notices of dispute on Kohl's and attempted to resolve their claims in mediation. After that failed, they filed claims of false and deceptive marketing practices by Kohl's with the AAA. The Petitioners also paid all the requisite fees the AAA charges when a party institutes arbitration. The AAA informed the parties that Kohl's had not filed its arbitration agreement with it as required by its rules, so it directed Kohl's to file the agreement or to let it know that it would not do so. In response, Kohl's communicated to the AAA that it was

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

refusing to file its arbitration agreement.[2] Consequently, the AAA, pursuant to its rules, exercised its discretion by terminating the proceedings and closing each Petitioner's case.

The Petitioners responded by filing a petition to compel arbitration in the district court pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act. In the petition, the Petitioners argued that by refusing to register its agreement and pay the necessary fees as outlined in AAA's rules, Kohl's actions amounted to a failure to arbitrate. *See* 9 U.S.C. § 4. They sought an order directing Kohl's to arbitrate their claims before the AAA, file its arbitration agreement with the AAA, and pay the corresponding fees.

The district court denied the petition. Drawing from *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609 (7th Cir. 2024), the court held it lacked the authority to disturb the AAA's decision to terminate arbitration proceedings. According to the district court, the parties' arbitration had unfolded in line with the process the parties agreed to in their arbitration agreement. For the reasons explained below, we affirm.

## I. BACKGROUND

### A. Factual Background

The Petitioners reside in California and purchased products online from Kohl's website. In doing so, the Petitioners and Kohl's agreed to an arbitration clause in Kohl's Terms and Conditions that "any dispute, controversy, or claim arising out of, or relating to" their "purchases" "shall be resolved only by ... final and binding, bilateral arbitration" "conducted by the [AAA] under its rules, including the AAA's Consumer Arbitration Rules as applicable." Furthermore, they vested the "arbitrator" with exclusive power "to resolve any dispute related to the interpretation, applicability, enforceability or formation of" the arbitration agreement.

****2** The AAA's Consumer Arbitration Rules, in turn, empower the AAA with "the discretion to apply or not to apply the Consumer Arbitration Rule[s], and the parties are able to bring any disputes concerning ***576** the application or nonapplication of the Rules to the attention of the arbitrator."[3] Under the Consumer Arbitration Rules, arbitration starts when the initiating party (*i.e.*, the claimant) serves a written demand on the responding party, sends a copy of the demand and underlying arbitration agreement to the AAA, and pays the filing fee.

The parties' arbitration agreement within the Terms and Conditions also required a pre-arbitration notification process designed to facilitate settlement prior to arbitration. On December 22, 2022, the Petitioners initiated the pre-arbitration process laid out in their agreement by serving notices of dispute on Kohl's, alleging Kohl's marketing practices violated California's consumer protection laws. They were not alone. That same day, 10,000 other claimants, represented by the Petitioners' counsel, served similar notices of dispute on Kohl's. On April 10, 2023, the Petitioners' counsel sent Kohl's an additional 44,656 notices of dispute.

Proceeding under the pre-arbitration procedures, the parties tried for several months, between December 22, 2022 and May 22, 2023, to resolve their disputes in settlement discussions. But on May 22, 2023, while settlement discussions were ongoing, Kohl's modified its terms and conditions (the "2023 Terms and Conditions"), which purportedly applied to any claims arising prior to the 2023 Terms and would have seemingly covered the Petitioners' claims.[4]

### B. Procedural Background

That same day, in response to Kohl's modification of its terms and conditions in a way they viewed as less favorable to them, the Petitioners filed their formal individual arbitration demands on Kohl's, sent a copy of the demand and underlying arbitration agreement to the AAA, and paid all applicable AAA filing fees.

On June 7, 2023, the AAA sent a letter to the parties, informing them that Kohl's failed to comply with the AAA's policies as set forth in the Consumer Arbitration Rules. Specifically, Consumer Arbitration Rule 12 provides that a company identifying the AAA as the arbitral forum to resolve disputes must register its arbitration agreement with the AAA and pay a nonrefundable fee. This process affords the AAA the opportunity to ensure the agreement complies with due process and permits the AAA to include the agreement on a publicly available clause registry it maintains. Furthermore, Rule 12 states the AAA "will decline to administer consumer arbitrations" if a company does not register its arbitration agreement with the AAA and pay the related fees. If the AAA declines to administer arbitration due to the company's

noncompliance with Rule 12, the rule provides that parties can submit their dispute to an appropriate court.

***577 **3** In the June 7, 2023, letter, the AAA requested Kohl's either complete its registration and pay the fees for the AAA to conduct its review and maintain the agreement on its registry or inform the AAA that it did not intend to register its agreement. Almost two weeks later, on June 20, 2023, the AAA sent another letter to the parties, explaining that Kohl's confirmed it would not register the agreement. So, in line with Rule 12, the AAA declined to arbitrate the Petitioners' claims, closed their case files, and refunded the fees they had paid. In the letter, the AAA also relayed "that Kohl's [did] not have any outstanding payment obligations to the AAA" but noted that "[w]ere Kohl's to register its consumer arbitration clause in the future" it "would need to pay" the registration fee at that juncture.

Undeterred, the Petitioners sued Kohl's in federal court in the Central District of California and petitioned to compel arbitration. Upon Kohl's motion, the California district court transferred venue to the Eastern District of Wisconsin pursuant to a forum selection clause in the 2020 and 2022 Terms and Conditions. Once transferred, the Petitioners filed an amended petition to compel arbitration, again seeking an order directing Kohl's to arbitrate their claims before the AAA, by registering its agreement with the AAA and paying all necessary fees.

The district court denied the motion to compel. Relying on *Wallrich*, it reasoned that the parties bargained for the AAA's discretion to apply and interpret the Consumer Arbitration Rules. In its view, the AAA exercised that discretion when it closed the Petitioners' cases, in line with the process laid out in their agreement, due to Kohl's refusal to register its arbitration agreement. Thus, the district court concluded it lacked authority to overturn the AAA's decision to close the Petitioners' cases.

The Petitioners timely filed this interlocutory appeal. *Andermann v. Sprint Spectrum L.P.*, 785 F.3d 1157, 1157 (7th Cir. 2015) (citing 9 U.S.C. § 16(a)(1)(B)). On appeal, they maintain that Kohl's refusal to register its agreement constitutes a refusal to arbitrate, in violation of the Federal Arbitration Act.

## II. DISCUSSION

**[1]** A denial of a motion to compel arbitration is reviewed de novo. *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024) (citation omitted). Any findings of fact underlying the decision are reviewed for clear error. *Id.* (citation omitted).

### A. Legal Background

**[2]** Faced with judicial hostility to arbitration agreements, Congress passed the Federal Arbitration Act to promote a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The Act cements arbitration agreements as "valid, irrevocable, and enforceable," 9 U.S.C. § 2, and reflects the "fundamental principle that arbitration is a matter of contract," *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). Accordingly, courts must place arbitration agreements on the same footing as other contracts and "enforce them according to their terms." *Concepcion*, 563 U.S. at 339, 131 S.Ct. 1740.

**[3] [4] [5] [6]** Because arbitration agreements are creatures of contract, "it is up to the parties to determine whether a particular matter is primarily for arbitrators or for ***578** courts to decide." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 33, 134 S.Ct. 1198, 188 L.Ed.2d 220 (2014). If an agreement "is silent on the matter of who primarily is to decide threshold questions about arbitration," however, "courts determine the parties' intent with the help of presumptions." *Id.* at 34, 134 S.Ct. 1198 (internal quotation marks omitted). In that vein, we presume parties intend for courts to answer certain gateway questions of arbitrability "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68, 139 S.Ct. 524, 202 L.Ed.2d 480 (2019) (quoting *Rent-A-Center*, 561 U.S. at 68–69, 130 S.Ct. 2772). But parties can delegate those types of threshold arbitrability questions to an arbitrator when their agreement does so by " 'clear and unmistakable' evidence." *Id.* at 69, 139 S.Ct. 524 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)); *Rent-A-Center*, 561 U.S. at 68–69, 130 S.Ct. 2772 ("We have recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." (citations and internal quotation marks omitted)).

****4** **[7]** On the other hand, unless otherwise stated in the parties' agreement, we presume "parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp.*, 572 U.S. at 34, 134 S.Ct. 1198. That is, procedural questions "grow[ing] out of the dispute and bear[ing] on its final disposition" are "presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (emphasis in original) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)). In other words, we normally assume parties intend arbitrators to rule on procedural questions regarding whether a party has satisfied "conditions precedent to an obligation to arbitrate." *BG Grp.*, 572 U.S. at 34–35, 134 S.Ct. 1198 (quoting *Howsam*, 537 U.S. at 85, 123 S.Ct. 588); *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184, 139 S.Ct. 1407, 203 L.Ed.2d 636 (2019) ("Parties may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes."); REVISED UNIFORM ARBITRATION ACT § 15 cmt. 2 (2000) ("[P]rocedural matters are within the province of the arbitrators.").

**[8]** In support, the Federal Arbitration Act authorizes "a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' " to petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." *Rent-A-Center*, 561 U.S. at 68, 130 S.Ct. 2772 (quoting 9 U.S.C. § 4). A party can compel arbitration under the Act by showing: (1) an enforceable written arbitration agreement; (2) a dispute falling within the agreement's scope; and (3) a refusal to arbitrate. *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 617–18 (7th Cir. 2024). Here, the parties principally dispute the third element: whether Kohl's has refused to arbitrate by declining to register its agreement with the AAA.

**[9]** We have recognized that a party does not refuse to arbitrate when arbitration starts and ends in a manner their agreement describes, even if it ends prior to an arbitrator's decision on the merits. ***579** *Id.* at 620–22. That's because the "Federal Arbitration Act does not grant [a party] an unfettered right to arbitrate .... Rather, all the law requires is that the parties arbitrate according to the terms of their agreement." *Id.* at 621.

As such, in *Wallrich*, we reversed a district court's order compelling Samsung to pay the AAA's administrative filing fees. *Id.* at 622. There, the parties' agreement stated arbitration " 'shall be conducted according to the [AAA's] Commercial Arbitration Rules' and that administrative, facility, and arbitrator fees shall likewise 'be determined according to AAA['s] rules.' " *Id.* at 613. Those rules instructed that if one party failed to pay its share of fees, "the AAA may suspend or terminate" proceedings. *Id.* at 614. The plaintiffs filed arbitration demands on Samsung, but Samsung refused to pay the administrative filing fees. *Id.* The AAA offered the plaintiffs the opportunity to advance the fees, but they declined. *Id.* The AAA then closed the arbitration proceedings. *Id.*

The plaintiffs in *Wallrich* moved to compel arbitration by seeking an order compelling Samsung to pay the administrative filing fees and arbitrate their claims, which the district court granted. *Id.* We reversed. *Id.* at 622. As an initial matter, we held the parties delegated disputes regarding fees to the procedures and rules of the AAA. *Id.* at 620. Thus, because the AAA used those rules to terminate the arbitration, we found the parties had "fully 'arbitrated' under their agreement." *Id.* at 621. After Samsung refused to pay the required fees, the AAA "considered the dispute and terminated the arbitration within its discretion," "arbitration was complete," and the district court lacked authority to overturn the AAA's judgment by ordering Samsung to front the AAA filing fees. *Id.* at 620. Put another way, "[t]he parties agreed to abide by the rules and procedures of the AAA, and they proceeded through arbitration in accordance with those rules and their consequences." *Id.* at 622. Concluding otherwise would "flout the parties' agreement" and inappropriately "disturb the AAA's judgment." *Id.* at 620.

****5** The same was true in *Hoeg v. Samsung Electronics America, Inc.*, where we summarily reversed in a district court's order compelling arbitration by directing Samsung to pay the AAA's administrative fees. No. 24-1274, 2024 WL 3593896, at *1–2 (7th Cir. July 31, 2024). In that case, we applied *Wallrich*'s reasoning to similar facts and concluded that Samsung's failure to pay its share of administrative fees to the AAA—leading the AAA to terminate arbitration in its discretion—did not equate to Samsung refusing to arbitrate. [5] *Id.* at *1. Instead, we held arbitration had been completed in line with what the parties bargained for in their agreement. *Id.* at *2. [6] The district court's contrary order was therefore "improper." *Id.*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**B. Analysis**

In seeking to compel arbitration, the parties do not meaningfully contest that an ***580** enforceable agreement exists or that the Petitioners' underlying false advertising claims fall within the scope of the arbitration agreement. For the most part, this appeal focuses on whether Kohl's refusal to register its agreement equated to refusing to arbitrate or not, in violation of the Federal Arbitration Act. *See* 9 U.S.C. § 4. The Petitioners maintain that by failing to register its agreement in line with AAA rules, Kohl's refused to arbitrate. In response, Kohl's contends that arbitration has been completed in line with the parties' agreement. Thus, according to Kohl's, the district court properly denied the Petitioners' motion because the court lacked authority to disturb the AAA's exercise of discretion under 9 U.S.C. § 4. We agree.

Parties do not have a freestanding right to arbitrate. *Wallrich*, 106 F.4th at 621. Instead, the Federal Arbitration Act imposes an obligation on parties to arbitrate according to the terms of their agreement. *Id.* Here, the parties agreed to arbitration "conducted by the" AAA "under its rules, including the AAA's Consumer Arbitration Rules as applicable" to resolve all disputes between them relating to the Petitioners' online purchases from Kohl's website. The parties also delegated to the arbitrator the "exclusive authority to resolve any dispute related to the interpretation, applicability, enforceability or formation of" their arbitration agreement.

To resolve the Petitioners' claims that Kohl's allegedly violated consumer protection laws, which the parties agree fell under the scope of the arbitration agreement, the AAA exercised its "discretion to apply" the Consumer Arbitration Rules. Under those rules, arbitration started when the Petitioners served a demand on Kohl's, sent a copy of the demand and the parties' agreement to the AAA, and paid their portion of the filing fee.

But before the AAA could reach the merits of the Petitioners' claims that Kohl's engaged in false and deceptive marketing practices in violation of various consumer protection laws, Rule 12 of the Consumer Arbitration Rules required Kohl's to register the arbitration agreement. This registration would have enabled the AAA to conduct a due process review and include the agreement on a publicly accessible registry. Kohl's declined to do so.

****6** The registration requirement outlined in the Consumer Arbitration Rules and applied by the AAA here is best understood to present a "forum-specific procedural gateway" matter. *Howsam*, 537 U.S. at 85–86, 123 S.Ct. 588; *John Wiley*, 376 U.S. at 557, 84 S.Ct. 909 ("Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Frazier v. X Corp.*, 155 F.4th 87, 96 (2d Cir. 2025) ("[P]rocedural questions include issues that arise only after the question of the arbitrability of the dispute has been resolved in favor of arbitration." (citation modified)). And "[i]n the absence of any statement to the contrary in the arbitration agreement, it is reasonable to infer" that by agreeing to arbitrate "the parties intended" to withhold the registration dispute from a court's review. *Howsam*, 537 U.S. at 85, 123 S.Ct. 588.

**[10]** That's the case here. The parties agreed that "any dispute, controversy, or claim arising out of, or relating to" the Petitioners' "purchases" "shall be resolved only by ... final and binding, bilateral arbitration" "conducted by the [AAA] under its rules, including the AAA's Consumer Arbitration Rules as applicable." No language in the parties' arbitration agreement suggests they withheld power from an arbitrator to rule on procedural disputes. ***581** Consequently, under the parties' agreement, the procedural dispute regarding Kohl's refusal to register the agreement was properly before the AAA for it to resolve. *See* *Howsam*, 537 U.S. at 84, 123 S.Ct. 588. And Rule 12 of the Consumer Arbitration Rules specified that the AAA would "decline" to administer arbitration if Kohl's did not register its agreement. The AAA, vested with the authority the parties delegated to it, concluded its proceedings in the manner Rule 12 described. In short, arbitration started and ended in line with the parties' agreement. [7]

Like *Wallrich*, the parties "bargained for the AAA's discretion over the" registration of the agreement, "including the consequences that would stem from [Kohl's] refusal" to register the agreement. *Id.* at 620. And we will not disturb the AAA's judgment concluding arbitration when it "considered the dispute and terminated the arbitration within its discretion." *See* *id.* at 620–22; *Frazier*, 155 F.4th at 99 ("[A] district court is not invited to involve itself in the arbitrator or arbitral body's resolution of 'procedural questions which grow out of the dispute and bear on its final disposition,' unless the parties' agreement provides otherwise." (quoting *Howsam*, 537 U.S. at 84, 123 S.Ct. 588)).

Our conclusion also finds support in the decisions of our sister circuits. In *Frazier*, the plaintiffs and the defendant were in the midst of arbitration proceedings when the defendant declined to pay certain fees the arbitral forum, JAMS, assessed the defendant owed, so JAMS paused proceedings. 155 F.4th at 90–95. The plaintiffs, in turn, sued under 9 U.S.C. § 4 and sought an order compelling the defendant to pay the fees and to continue arbitrating the dispute. *Id.* The district court agreed, but the Second Circuit reversed. *See generally id.* The court concluded "that courts have no role under 9 U.S.C. § 4 to intervene to review arbitrators' rulings regarding the allocation of fees in the context of an ongoing arbitral proceeding." *Id.* at 98. In its view, "a party's decision not to abide by the procedural determinations of an arbitrator or arbitral body is ordinarily not a 'failure, neglect, or refusal *to arbitrate*' under § 4—it is simply an *intra*-arbitration delinquency that arbitral bodies, like JAMS here, are empowered to manage." *Id.* at 99 (emphasis in original).

****7** The same is true outside of the context of fee disputes. In *Hernandez v. MicroBilt Corp.*, the AAA informed the defendant that its arbitration agreement did not comport with due process, and the defendant refused to revise its agreement so that it did. 88 F.4th 215, 217 (3d Cir. 2023). The AAA declined to administer arbitration and closed the plaintiff's case, and she brought her claims to federal court. *Id.* While the defendant filed a motion to compel arbitration, its "real gripe [was] with the merits of the AAA's administrative decision" finding its agreement violated due process. *Id.* at 220. The Third Circuit, however, recognized that it did not "have the authority to review the AAA's decision." *Id.* In other words, the Third Circuit did not have a role in reviewing an arbitral body's determination that a party "ha[d] or ha[d] not met the conditions necessary for it to continue administering [an] arbitral proceeding." *Frazier*, 155 F.4th at 98.

At bottom, unless the parties' agreement provides otherwise, a motion to compel ***582** arbitration is not a mechanism by which a party may seek court intervention to resolve intraarbitration procedural disputes properly delegated to arbitrators to handle under 9 U.S.C. § 4. *See Wallrich*, 106 F.4th at 621–22; *Frazier*, 155 F.4th at 99 (" '[A] petitioner cannot use Section 4 as a vehicle to seek review of the [arbitral body's] decision about how to proceed'—or, in this case, not proceed—'with the arbitration process.' " (quoting *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004))). Instead, "parties to an arbitration contract" should "expect a forum-based decisionmaker to decide forum-specific procedural gateway matters." *Howsam*, 537 U.S. at 86, 123 S.Ct. 588. Accordingly, we conclude Kohl's failure to register its agreement with the AAA was properly before the AAA to consider in line with its rules. Its exercise of discretion in closing the Petitioners' cases flowed directly from the parties' agreement granting AAA that power, leaving nothing for the district court to compel under the Federal Arbitration Act.

## III. CONCLUSION

For these reasons, we AFFIRM.

Kolar, Circuit Judge, dissenting.

I agree with much of the majority opinion. Kohl's and Petitioners entered into a binding agreement for bilateral arbitration. As the majority opinion sets forth, that agreement delegated the gateway issue of whether a dispute falls under the agreement, as well as procedural questions arising during arbitration, to the arbitrator.

The majority opinion correctly notes that the days of judicial hostility to arbitration were put to an end with the FAA. We must respect the parties' contract, giving effect to agreements to arbitrate, including agreements to allow an arbitrator to decide threshold or procedural issues. And, as we recognized in *Wallrich*, "a party does not refuse to arbitrate when arbitration starts and ends in a manner their agreement describes, even if it ends prior to an arbitrator's decision on the merits." *Supra* at —— (citing *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609, 620–22 (7th Cir. 2024)).

The majority opinion concludes that arbitration here started and ended in a manner the parties' agreement described, just as in *Wallrich.* This is where I part company: In my view, the parties never arbitrated their dispute as contemplated by their agreement. The majority opinion finds some support in certain language from the AAA rules, which were incorporated into the parties' agreement. I, however, see the parties' agreement as requiring the parties to allow for AAA's *administration* of their dispute. As I read the record, because of Kohl's refusal to comply with the AAA rules, the AAA could not, in its own words, "begin to proceed with the administration" of the arbitration. While my differences with the majority opinion boil down to minor nuances in the record, those minor nuances have a dramatic impact on whether Kohl's "refused to arbitrate" and thus whether a court can compel arbitration under § 4 of the FAA. Because this case

could affect contractual rights and obligations for any party that incorporated the AAA rules into an arbitration agreement, I respectfully dissent.

### I

****8** Without repeating the majority opinion's accurate recitation of the facts, I pause to add some emphasis. In my view of the record, Kohl's refusal to register its agreement with the AAA was a conscious step to depart from its agreement to arbitrate. Originally, Kohl's bargained with Petitioners for AAA administration of disputes but ***583** apparently Kohl's did not like how the AAA rules would apply to the claims at issue here. Kohl's went so far as to attempt to change the parties' agreement and supplant the AAA with a new forum—National Arbitration and Mediation—that had far different mass-arbitration procedures. And, central to the dispute here, Kohl's would not so much as register its agreements with the AAA. The AAA's response to Kohl's attempts to evade its administration of Petitioners' claims, and conclusion that it was "unable to" administer the dispute due to Kohl's failure to register the agreement, are key to my conclusion that arbitration before the AAA did not terminate—or even begin—according to the parties' bargain.

Start with the parties' agreement. Kohl's agreement with Petitioners (under both the 2020 and 2022 Terms and Conditions) sets out how future disputes between the parties must unfold. First, "any dispute, controversy, or claim arising out of, or relating to" a consumer's online purchases with Kohl's was subject to "final and binding, bilateral arbitration." This was not a unilateral option-to-arbitrate for Kohl's. Rather, "if either of us"—Kohl's *or* the consumer—"intends to seek arbitration," the parties' agreement would kick into effect. Then, once Kohl's or the consumer sought arbitration, the agreement provided that "the party seeking arbitration must first notify the other party" and allow for a 30-day mediation period. If the parties were "unable to resolve [their] dispute within 30 days, either party may then proceed to initiate an arbitration" that would be "conducted by the [AAA] under its rules, including the AAA's Consumer Arbitration Rules as applicable." Those rules state, further, that "[w]hen parties have provided for the AAA's rules or AAA administration as part of their consumer agreement ... *AAA administration of the consumer arbitration shall be an essential term of their consumer agreement.*" (Emphasis added.)

The AAA's Consumer Arbitration Rules, in turn, make plain the obligations on each party for "administration" of their dispute to proceed. Consumer Rule 12, for example, required Kohl's to "notify the AAA of the existence of ... a consumer contract" providing for the Rules' applicability or "of its intention to do so" in an impending contract, "provide the AAA a copy of the arbitration agreement," and pay the necessary registration fees before the AAA accepts the dispute. The Consumer Arbitration Rules unambiguously state that "[t]he AAA *will decline* to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee," and will administer arbitration only after "the AAA reviews the submitted consumer clause [and] receives the annual consumer registry fee." (Emphasis added.)

When the dispute arose between Kohl's and Petitioners, Petitioners followed the precise procedures outlined in the arbitration agreement. They, along with thousands of other Kohl's customers, filed their notices of dispute, "describ[ing] the nature of the claim and the relief being sought" and starting the clock on the 30-day mediation window. This is when Kohl's sought to wrestle out of its original agreements with Petitioners and attempted to designate a separate forum with different rules.

Kohl's gambit failed—Petitioners and thousands of other consumers immediately filed their claims before the AAA, fronting almost $200,000 in fees. Undeterred, Kohl's ensured that arbitration before the AAA could not proceed. Disregarding Consumer Rule 12, which was incorporated into the arbitration agreement, Kohl's refused to register the 2020 and 2022 arbitration agreements with the AAA. The ***584** AAA reached out to counsel for Petitioners and Kohl's, noting that "[u]pon completion of the registration process and the confirmation from the AAA that Kohl's is now active on the Consumer Clause Registry, ... the AAA *will begin* to proceed with the administration of these cases." (Emphasis added.) The AAA further clarified the consequences of continued non-compliance: "If [Kohl's] does not comply, absent a court order, the AAA will be unable to provide arbitration administration to the parties to assist the parties in resolving their disputes." After Kohl's refused to comply, the AAA took the only course its rules allowed and declined administration of Petitioners' claims.

### II

****9** I stress again that the majority and I agree on the underlying legal principles that govern this case. The FAA reflects the "fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). Thus, to give effect to the parties' bargain, federal courts compel arbitration where there is (1) an enforceable written arbitration agreement; (2) a dispute falling within the scope of that agreement; and (3) a refusal to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018).

The majority opinion correctly zeroes in on the third element in this case: whether Kohl's refused to arbitrate according to the terms of its arbitration agreement with Petitioners. This question turns on whether "arbitration start[ed] and end[ed] in a manner their agreement describes, even if it end[ed] prior to an arbitrator's decision on the merits." *Supra* at ——. As we recently recognized in *Wallrich*, a party has no "unfettered right to arbitrate" and "all the law requires is that the parties arbitrate according to the terms of their agreement." 106 F.4th at 621. But in applying *Wallrich*, the majority opinion concludes that the mere fact that the AAA declined to administer arbitration due to Kohl's non-compliance with its rules means that "arbitration started and ended in line with the parties' agreement." *Supra* at ——. Thus, the majority opinion declines to compel arbitration.

In my view, the majority opinion stretches *Wallrich*'s holding too far and threatens to convert any bilateral agreement to arbitrate under the AAA's Consumer Rules into something of a unilateral option-to-arbitrate for the business, regardless of the language of the agreement. Accordingly, I would compel Kohl's to register its contract to allow the AAA to begin arbitration.

### A

In *Wallrich*, we held that Samsung's refusal to pay its allocated filing fees was not a "refusal to arbitrate" under the FAA. 106 F.4th at 621. We reasoned that the parties had "bargained for the AAA's discretion over the payment of administrative filing fees, including the consequences that would stem from a party's refusal to pay those fees." *Id.* at 620. Because the AAA had exercised that discretion by, first, offering the consumers to pay the fees and, second, terminating the arbitration, the district court could not "flout the parties' agreement and disturb the AAA's judgment" by ordering Samsung to pay fees. *Id.*

*Wallrich* is fully in-line with the judgments of our sister circuits that have similarly held that a business does not "refuse to arbitrate" where the AAA terminates arbitration proceedings for non-payment of filing fees. *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 888 (5th Cir. 2009); ***585** *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1012–13 (9th Cir. 2004); *see also Frazier v. X Corp.*, 155 F.4th 87, 99–100 (2d Cir. 2025) (same with JAMS). But no court (before the majority opinion) has extended this rule beyond the context of filing fees and applied it where a party took actions that precluded the arbitral body from even administering the case and exercising discretion in the first place. [1]

****10** Non-payment of fees and a business's failure to register an agreement present fundamentally different challenges under the AAA's Consumer Arbitration Rules. As we noted in *Wallrich*, the AAA has specific provisions allowing one party to advance the filing fees of the other. 106 F.4th at 613. Indeed, in *Wallrich, Dealer, Lifescan*, and *Frazier* alike, the courts noted that the AAA (or JAMS in *Frazier*) had *in fact* offered the other party the opportunity to advance the non-paying party's fees. *See id.* at 613–14*; Dealer Computer Services*, 588 F.3d at 886; *Lifescan*, 363 F.3d at 1012–13; *Frazier*, 155 F.4th at 93–94. By contrast, Rule 12 of the AAA's Consumer Arbitration Rules provides no method for a consumer to "advance" or otherwise make up for a business's non-compliance. Indeed, the AAA's letter to the parties in this case shows that only Kohl's could allow "the AAA [to] begin to proceed with the administration of these cases."

This distinction is critical for two reasons. First, because the AAA can invite an opposing party (business or consumer) to advance their adversary's fees, a party can never unilaterally deprive the AAA of the ability to exercise discretion when it refuses to pay filing fees. But the registration requirement, as this case demonstrates, allows the business to unilaterally force the AAA's hand when it withholds registration of its arbitration agreement. Second, where the AAA exercises its discretion by inviting the consumer to advance the fees, there is an actual tension between the remedy sought in federal court (*e.g.* ordering the business to pay) and the exercise of the AAA's discretion (*e.g.* allocating fees to the consumer). But there is no similar tension between an order compelling a business to abide by AAA's registration rules and AAA's decision that "absent a court order, [it] will be unable to provide arbitration administration." *Wallrich*—and our subsequent summary order in *Hoeg v. Samsung*

*Electronics America, Inc.*, 2024 WL 3593896 (7th Cir. July 31, 2024)—address situations where an arbitrator exercised discretion, not where the arbitral forum's rules preclude administration of the dispute. [2]

***586** Respectfully, the majority opinion's expansion of *Wallrich* overlooks these distinctions, and accordingly: (1) creates a get-out-of-arbitration-free option for businesses bound to arbitrate under AAA rules; and (2) ignores *Wallrich*'s careful comparison between the remedy sought and the arbitrator's exercise of discretion.

### B

By giving Kohl's a ticket out of arbitration before the AAA, the majority opinion's application of *Wallrich* turns the parties' agreement for "bilateral arbitration" into something akin to a unilateral option for Kohl's. *See McLellan v. Charly*, 313 Wis.2d 623, 758 N.W.2d 94, 101 (Wis. Ct. App. 2008). But I do not see language in the parties' agreement giving Kohl's the unilateral option to arbitrate that the majority opinion implicitly recognizes. On the contrary, consider the following provisions:

> ****11** "You and Kohl's agree that any dispute, controversy, or claim arising out of, or relating to these terms of use ... *shall be resolved* only by: ... final and binding, bilateral arbitration[.]"
>
> "If *either of us* intends to seek arbitration, the party seeking arbitration must first notify the other party of the Dispute in writing at least 30 days in advance of initiating the arbitration .... If we are unable to resolve our dispute within 30 days, *either party* may then proceed to initiate an arbitration."
>
> "You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the country where you live or at another mutually agreed location."

(Emphasis added.)

Far from suggesting that Kohl's maintains the right to, at its whim, prevent the AAA from administering the arbitration, the agreement guarantees that "[t]he arbitration *will be conducted* by the [AAA] under its rules." (Emphasis added.) And as discussed above, the AAA's administration of the arbitration of any dispute between the parties was an essential term of their agreement.

True, as the majority opinion observes, the rules also determine that "[a]rbitration ... shall be started" when a claimant files a "Demand for Arbitration" with the business and the AAA. But this says nothing about whether "bilateral arbitration" as set forth in the parties' agreement has commenced, much less ended in a manner consistent with the parties' agreement. One can start to dance as they head to a dance floor, but it takes two to tango. I view the term "bilateral arbitration" as similarly requiring a minimum level of engagement by both parties.

### C

Finally, I would take the opportunity this case presents to stress that *Wallrich* is grounded in respect for parties' delegation of certain issues to an arbitrator's discretion; it is not a tool for escaping an agreement for bilateral arbitration. We must always look at the language of the parties' agreement, and where that agreement provides for bilateral arbitration, I would pay particular attention to whether a *bilateral* proceeding—not simply an attempt ***587** to initiate one—commenced. Looking at that language here, the parties' agreement required that the AAA begin administering the case, or at the very least exercise discretion in its decision not to administer the case.

Our precedents align with this approach. Recall again that in *Wallrich*, we paid close attention to *how* the AAA exercised its discretion in declining to administer arbitration. After noting that the arbitration agreement "delegated threshold arbitration fee disputes to the AAA," we noted that "the AAA, in line with its rules (which it applies in its discretion), allowed the consumers to advance Samsung's fees." 106 F.4th at 620. After the consumers declined, "[t]he AAA then could have stayed the arbitration, as requested by the consumers, but it chose not to," and terminated the case. *Id.* Given the route taken by the AAA in its discretion, we held that any request for a court to order Samsung to pay fees to the AAA "was outside the district court's authority." *Id.*


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Applying this same analysis here, we examine how—and whether—the AAA exercised its discretion. Unlike in *Wallrich*, the AAA never offered Petitioners the option to make up for Kohl's failure to register. Instead, the AAA pressed that "Kohl's, at a minimum, must register its arbitration clause" in order for the AAA to "begin to proceed with the administration of these cases." Anticipating Petitioners' ability to seek an order compelling Kohl's to comply, the AAA even wrote that "absent a court order, the AAA will be *unable* to provide arbitration administration." (Emphasis added.) The order Petitioners now seek—the "court order" invited by the AAA's letter—would not "flout" or "disturb" the AAA's discretion. *Wallrich*, 106 F.4th at 620. On the contrary, it would *allow* the AAA to begin exercising its discretion. And such an order would not invite an endless line of cases challenging procedural issues such as fee or discovery disputes, where an arbitral body does exercise the discretion the parties bargained for.

### III

****12** *Wallrich* stands in part for the common-sense rule that where parties delegate procedural disputes to the AAA's discretion, a district court lacks authority under § 4 of the FAA to override the exercise of that discretion. *Id.* Here, there is no exercise of discretion to disturb. I would compel Kohl's to register its contract to allow AAA to administer the disputes and exercise its discretion, as the parties bargained for. Thus, I respectfully dissent.

**All Citations**

174 F.4th 573, 2026 WL 1193991

## Footnotes

1 The Petitioners assented to either the 2020 Terms and Conditions or the 2022 Terms and Conditions. The 2020 and 2022 Terms and Conditions are identical for purposes of this litigation.

2 There are no facts in the record providing the reason Kohl's refused to register its agreement.

3 The AAA typically applies the Consumer Arbitration Rules to resolve disputes covered by arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses.

4 The 2023 Terms and Conditions "serve as the entire understanding and agreement, and supersede all prior understandings and agreements of the parties, regarding the subject matter of the Terms." While the 2020 and 2022 Terms and Conditions provided for arbitration before the AAA, the 2023 Terms and Conditions provided for binding arbitration before the National Arbitration and Mediation tribunal and its rules. The 2023 Terms and Conditions covered "any dispute" including "claims that ... arose before [a customer] entered into these Terms of Use or out of a prior agreement with Kohl's" and disputes "subject to ongoing litigation."

5 While we recognize *Hoeg* was unpublished, the case was submitted to the original panel that decided *Wallrich* as a successive appeal under Seventh Circuit Operating Procedure 6(b). *Hoeg*, 2024 WL 3593896, at *1 n.*.

6 *Hoeg* did present a separate nuance not at issue here. Prior to terminating arbitration, the parties jointly requested a stay of arbitration so they could mediate. *Hoeg*, 2024 WL 3593896, at *1. But because Samsung refused to pay the requisite fees, the AAA declined the request and terminated arbitration. *Id.* In doing so, the AAA indicated that the consumers could refile their arbitration demands if mediation failed. *Id.* That did not alter our conclusion that the district court's order was improper because the plaintiffs' motion to compel arbitration was premature as they had not yet refiled their arbitration demands. *Id.* at *2.

7 The parties do strongly contest whether the 2023 Terms and Conditions superseded the prior 2020 and 2022 Terms and Conditions. But we need not answer that question because all three agreements send this procedural question to the arbitrator. Thus, we assume, as the Petitioners urge, that the 2020 and 2022 Terms and Conditions were in full force and effect at the time the Petitioners filed their claims with the AAA.

1 The majority opinion suggests that *Hernandez v. MicroBilt Corp.*, 88 F.4th 215, 220 (3d Cir. 2023) expanded *Wallrich*'s reasoning beyond the fee context. *Supra* at ——. But *Hernandez* arose from an entirely different posture. There, the AAA found that the damages provision of the parties' agreement failed to comply with AAA's standards, and requested that the defendant waive the provision before arbitration could proceed. *Hernandez*, 88 F.4th at 217. After the defendant refused to waive the provision, and the plaintiff filed in federal court, the *defendant* sought to compel arbitration despite *its own* non-compliance with the AAA's rules. *Id.* But the Third Circuit reasonably found that there was no "refusal to arbitrate" by the plaintiff, and that the defendant's "real gripe is with the merits of the AAA's administrative decision." *Id.* at 220. If anything, *Hernandez* supports the conclusion—which is not in dispute—that *Petitioners* could have filed in federal court after Kohl's non-compliance. *See id.* It does not help resolve whether Petitioners can compel arbitration because of Kohl's refusal to register.

2 Kohl's argues that because the AAA's rules give it "the discretion to apply or not apply the Consumer Arbitration Rule[s]," the AAA's application of the registration requirement under Rule 12 is *itself* an exercise of the AAA's discretion that the district court has no authority to disturb. Not only does this fly in the face of the AAA's letters, but it does not follow that because the AAA has discretion "to apply or not apply the Consumer Arbitration Rule[s]," the AAA can pick and choose which rules to follow during arbitration. Indeed, Kohl's interpretation raises serious questions as to what "procedures" the parties even agreed to be bound by. Instead, as Petitioners note, this language could mean that the AAA may supplant the Consumer Arbitration Rules *as a whole* with a different set of procedures selected by the parties (*i.e.* the AAA's "Commercial Rules" or "Supplementary Procedures").

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.