THE HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY SMITH, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | No. 2:25-cv-01478-JNW<br><br>**DECLARATION OF GARY E. MASON IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**NOTE ON MOTION CALENDAR: August 26, 2026** |

I, **Gary E. Mason**, declare as follows:

**I. Introduction.**

1. I am a founding partner of Mason & Perry LLP (formerly Mason LLP). My firm, together with Siri & Glimstad LLP, represents Plaintiff Jeffrey Smith and the 14,910 other individual consumers whose arbitration demands against Valve Corporation ("Valve") are pending before the American Arbitration Association ("AAA") in *Individual Claimants v. Valve Corporation*, AAA Case No. 01-23-0005-8758 (the "December 2023 Arbitrations")—the forum Valve insisted upon for years in its Steam Subscriber Agreement ("SSA") and successfully defended twice in this District. I submit this declaration in support of Plaintiff's Motion for a



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

Temporary Restraining Order and Preliminary Injunction. I have personal knowledge of the matters set forth herein and could and would testify competently to these facts.

**II. Valve Wrote, Promoted, and Enforced the Arbitration Clause.**

2. In July 2012, Valve amended the SSA to add a new Section 11, which required individual arbitration of claims and contained a class action waiver. On July 31, 2012, Valve announced this change to millions of Steam users in a post published on its website, a true and correct copy of which is attached hereto as **Exhibit 1**. In that post, Valve told subscribers that the new dispute resolution process would "benefit you and Valve" and that arbitration was "faster and better for you and Valve while avoiding unnecessary costs." Valve described class actions as: (1) not providing "any real benefit to users"; (2) imposing "unnecessary expense and delay"; (3) being "often designed to benefit the class action lawyers who craft and litigate these claims"; and (4) not benefiting Valve's users or communities.

3. Valve twice moved to enforce that arbitration provision in this District. In *G.G. v. Valve Corp.*, No. 2:16-cv-01941-JCC (W.D. Wash.), Valve moved to compel individual arbitration, representing to the Court that Section 11 contained "consumer-friendly provisions," including specifically "[a]greeing Valve will pay all arbitration costs of claims under $10,000." *G.G.*, Dkt. No. 10 at 6. In its reply memorandum, Valve relied on that reimbursement obligation to argue that "Valve's agreement to pay arbitration fees renders the provision not substantively unconscionable under Washington law." *G.G.*, Dkt. No. 29 at 11. True and correct copies of those filings are attached hereto as **Exhibits 2 and 3**. The Court compelled arbitration. *G.G. v. Valve Corp.*, 2017 WL 1210220 (W.D. Wash. Apr. 3, 2017), *aff'd in part, vacated in part*, 799 F. App'x 557 (9th Cir. 2020).

4. In 2021, Valve again moved to compel individual arbitration, in *Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC (W.D. Wash.) (now captioned *In re Valve Antitrust Litigation*). Valve again relied on the reimbursement obligation as a reason the clause was fair and enforceable. A true and correct copy of Valve's Motion to Compel Arbitration in *Wolfire*, Dkt. No. 35, is attached hereto as **Exhibit 4**. On October 25, 2021, the Court granted Valve's motion,

ordered that the consumer antitrust claims be arbitrated individually, and directed that "any objections with respect to the existence, scope or validity of the arbitration agreement" be resolved by the arbitrator in each case. *Wolfire*, 2021 WL 4952220, at *3.

5. The version of the SSA in effect when Mr. Smith and the other Putative Class Members submitted their arbitration demands, effective April 25, 2023 (the "2023 SSA"), required in Section 11C that Valve "promptly reimburse [the consumer's] filing fee and [the consumer's] share of any of AAA's arbitration costs, including arbitrator compensation," for claims seeking $10,000 or less. Section 9D provided that the obligation to resolve disputes under Section 11 "will survive any expiration or termination of this Agreement." A true and correct copy of the 2023 SSA is attached hereto as **Exhibit 5**.

## III. Smith and 14,910 Other Claimants Did Exactly What Valve's Contract Required.

6. Plaintiff Jeffrey Smith is among the thousands of individual consumers who retained my firm to pursue their antitrust claims against Valve arising out of Valve's operation of the Steam platform.

7. On or about July 21, 2023, my firm notified Valve that it represented more than 70,000 Steam users with antitrust claims and was prepared to bring their claims before the AAA under Section 11 of the then-operative SSA. The demand letter, a true and correct copy of which is attached hereto as **Exhibit 6**, linked to a chart identifying each of our then-current clients, including their Steam ID and/or account name. Every one of my firm's Valve claimant-clients, including Mr. Smith, was a putative consumer class member in *Wolfire*.

8. Between December 5 and 20, 2023, as the arbitration agreement required, my firm submitted individual arbitration demands to the AAA on behalf of 14,911 individual claimants, including Mr. Smith. Each claimant, including Mr. Smith, seeks individual monetary damages under the Sherman Act, 15 U.S.C. § 2, for antitrust injury arising from Valve's conduct in operating the Steam platform. Each claimant provided my firm with a unique Steam ID, which my firm used with a publicly available tool, the Steam Calculator (https://steamdb.info/calculator), to

determine the amount that claimant had spent on games on Steam; that figure or each clients' representation formed the basis of each individual demand.

9. In connection with those filings, the claimants paid the AAA initial filing fees totaling approximately $1,518,325.

10. On February 22, 2024, the AAA confirmed that the filing requirements had been met in all 14,911 cases and invoiced Valve $1,866,100 for its share of the initial filing fees. Valve paid that invoice. A true and correct copy of the AAA's February 22, 2024, correspondence is attached hereto as **Exhibit 7**.

11. Section 11C of the 2023 SSA separately required Valve to reimburse the claimants' own filing fees for claims seeking $10,000 or less. My firm made repeated requests to Valve for that reimbursement beginning no later than March 2024. Valve did not pay until on or about October 1, 2024—after several months of prodding by claimants' counsel. On October 1, 2024, my firm confirmed receipt of the reimbursement, stating expressly that it was accepted "consistent with our prior requests for reimbursement of claimants' AAA filing fees, as provided by Steam's arbitration provision." True and correct copies of that correspondence are attached hereto as **Exhibit 8**.

12. Nothing in the AAA's Consumer Arbitration Rules provides for a refund of filing fees or case management fees if the AAA closes a case without adjudicating it. A true and correct copy of the Costs of Arbitration provisions of the AAA Consumer Arbitration Rules, amended and effective August 1, 2023, is attached hereto as **Exhibit 9**.

13. On May 14, 2024, the AAA determined that no Process Arbitrator would be appointed for the December 2023 Arbitrations, and that the next administrative step for those cases was the selection of merits arbitrators—for which a Case Management Fee of $1,400 per case was required. A true and correct copy of that determination is attached hereto as **Exhibit 10**. Following an administrative conference, the AAA confirmed on July 29, 2024, that no process issues remained outstanding in the 14,911 cases and that they were ready for the appointment of merits arbitrators.



**MASON & PERRY LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

**IV. Valve Rewrote the SSA Mid-Proceeding and Refused to Pay the Fees.**

14. In July or August 2024, Valve proposed mediating the claims of the 14,911 claimants and requested that the arbitration proceedings be stayed in the meantime. Believing that Valve was acting in good faith, counsel for the claimants agreed, and the AAA stayed the December 2023 Arbitrations pending mediation.

15. On September 26, 2024—after obtaining that stay—Valve unilaterally amended the SSA to remove the arbitration agreement altogether and to require that "all disputes and claims" between users and Valve, "including any dispute or claim that arose before the existence of this or any prior agreement," be maintained exclusively in the courts of King County, Washington. A true and correct copy of the amended SSA is attached hereto as **Exhibit 11**.

16. Notwithstanding its amendment of the SSA, Valve proceeded with the mediation. The mediation was held on February 4, 2025, and was unsuccessful. Following the mediation, my firm asked the AAA to lift the stay that had been entered pending mediation.

17. Valve then demanded that the AAA close the December 2023 Arbitrations, taking the position that there was no longer any arbitration agreement between Valve and the claimants, that the arbitrations should be closed, and that the claimants were now required to proceed only in court. Valve made that demand in writing on February 13, 2025, and supplemented it on February 19, 2025. True and correct copies of that correspondence are attached hereto as **Exhibit 12**. Valve has continued to press that demand since.

18. On March 24, 2025, notwithstanding Valve's demand, the AAA lifted the stay and invoiced Valve $20,875,400—$1,400 per case—in Case Management Fees for the 14,911 December 2023 Arbitrations. The invoice was due upon receipt, and payment was required before the AAA would assign merits arbitrators. A true and correct copy of the invoice is attached hereto as **Exhibit 13**.

19. On April 23, 2025, Valve notified the AAA that it would not pay the invoice. Valve asserted that it no longer had any obligation to arbitrate, citing its amended SSA and the new



**MASON & PERRY LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

forum-selection clause, which Valve asserts applies retroactively to all existing arbitration claims, including those of the Putative Class. Valve reiterated that position in a letter to the AAA dated May 1, 2025. True and correct copies of that correspondence are attached hereto as **Exhibit 14**.

**V. The AAA Stayed the Cases "Pending a Court's Ruling," and Claimants Sought That Ruling.**

20. On April 25, 2025, the AAA, acting on its own initiative in response to Valve's refusal to pay, cited California Code of Civil Procedure § 1281.98 and asked claimants' counsel how they wished to proceed under that statute. The AAA wrote: "Pursuant to CA CCP 1281.98, AAA requests Claimants review the relevant section of the statute and provide a response on how they wish to proceed." A true and correct copy of that correspondence is attached hereto as **Exhibit 15**.

21. On April 30, 2025, my firm responded by electing to proceed under both Cal. Civ. Proc. Code § 1281.98(b)(3), which permits a claimant to seek a court order compelling payment of outstanding arbitration fees, and § 1281.98(b)(4), which permits a claimant to advance those fees and proceed with the arbitration. My firm asked the AAA to hold the cases rather than close them. A true and correct copy of that letter is attached hereto as **Exhibit 16**.

22. On May 15, 2025, the AAA denied Valve's request to close the cases and placed the 14,911 December 2023 Arbitrations in abeyance expressly "pending a Court's Ruling." The AAA's directive also expressly authorized individual claimants to advance Valve's unpaid Case Management Fees and proceed: "[T]he AAA will proceed with case administration of a subset of cases . . . upon receipt of Claimants' identification of the subset, and Claimants' corresponding advanced payment of Respondent's Case Management Fees for the subset." A true and correct copy of the AAA's directive is attached hereto as **Exhibit 17**.

23. Since May 15, 2025, the claimants have pursued the judicial ruling the AAA's abeyance contemplated through three separate actions: (1) *Welty v. Valve Corporation*, No. 2:25-cv-02450-JNW (W.D. Wash. filed May 2, 2025); (2) a Motion for Sanctions brought by claimant



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

Ryan Lally in *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW (W.D. Wash. filed June 11, 2025), Dkt. No. 467; and (3) this action, filed August 5, 2025.

24. On June 24, 2026, the AAA's Director of ADR Operations confirmed that the 14,911 cases "were stayed on May 15, 2025, while claimants' sought judicial relief," and warned for the first time that the AAA would not hold the cases in abeyance indefinitely. A true and correct copy of that email is attached hereto as **Exhibit 18**.

VI. Valve's Counsel Escalated to the AAA's Executives.

25. In April 2026, four additional claimants represented by my firm—Dylan Bartell, Nicholas King, Marissa Ritter, and Lincoln Bock—commenced arbitrations against Valve. On April 30, 2026, the AAA's Consumer Filing Team sent letters in all four cases stating that, although "[t]he business previously failed to comply with the AAA's policies regarding consumer claims," the AAA "is in receipt of a court order compelling arbitration" and "[a]ccordingly, we are proceeding on that basis."

26. That same day, Valve's counsel, Michael W. McTigue Jr. of Skadden, Arps, Slate, Meagher & Flom LLP, wrote to the AAA demanding that it "decline to administer" those arbitrations and accusing the AAA of a "fundamental misunderstanding of these matters." Departing from the ordinary course of correspondence in this matter, Mr. McTigue copied members of the AAA's executive leadership on the letter who were not involved in the administration of these claims, including a Vice President of Business Development and Outreach. A true and correct copy of the April 30, 2026, letter, which quotes the AAA's letters of the same date, is attached hereto as **Exhibit 19**.

27. Valve's counsel continued to copy the AAA's executive leadership on subsequent demands, including letters to the AAA dated May 15, 2026, and July 2, 2026. True and correct copies of those letters are attached hereto as **Exhibits 20 and 21**.

VII. The AAA's Closure Deadline and Claimants' Efforts to Preserve the Status Quo.

28. On Friday, July 17, 2026, at 5:57 p.m. Eastern, the AAA's Director of ADR Operations set a "final payment deadline" and stated that "[a]ny cases for which Case Management

Fees have not been received . . . will be closed for non-payment." The same letter stated that the AAA "will abide by any court order as to how these cases should proceed." A true and correct copy of that letter is attached hereto as **Exhibit 22**.

29. On July 22, 2026, my firm asked the AAA to reconsider. We explained that the AAA's abeyance-fee provision expressly contemplates holding cases in abeyance pending "judicial intervention"; that the applicable abeyance fee is $2,500 per six months, which the claimants have tendered; and we requested that the AAA confirm, no later than July 29, 2026, that the cases would not be closed. A true and correct copy of that letter is attached hereto as **Exhibit 23**.

30. On August 3, 2026, my firm wrote to the Court's chambers, with all counsel of record copied, requesting an emergency status or case management conference regarding the AAA's deadline. A true and correct copy of that email is attached hereto as **Exhibit 24**. The Court scheduled a conference for August 10, 2026, and the AAA extended its closure deadline to August 31, 2026.

31. To date, no merits arbitrator has been appointed in Mr. Smith's arbitration or in any of the other 14,910 December 2023 Arbitrations. That delay is not attributable to any lack of diligence by Mr. Smith or his counsel. It follows from Valve's refusal to pay the Case Management Fees the AAA invoiced on March 24, 2025, and from the administrative stays that refusal produced. If the AAA closes these cases for non-payment, neither its rules nor any communication I have received from the AAA provides for the return of the approximately $1,518,325 in filing fees the claimants paid to obtain the forum Valve required them to use.



**MASON & PERRY LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of August 2026 in Bethesda, Maryland.

Respectfully submitted,



Gary E. Mason (admitted *pro hac vice*)
**MASON & PERRY LLP**
5335 Wisconsin Ave., NW, Ste. 640
Washington, DC 20015
Tel.: (202) 429-2290
Email: gmason@masonllp.com

*Counsel for Plaintiff Jeffrey Smith and the proposed Class*