The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY SMITH, on behalf of himself and all persons similarly situated,<br>Plaintiff,<br>v.<br>VALVE CORPORATION,<br>Defendant. | No. 2:25-cv-01478-JNW<br><br><u>CLASS ACTION</u><br><br>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>TRO NOTE ON MOTION CALENDAR: August 26, 2025<br><br>PI NOTE ON MOTION CALENDAR: September 23, 2026 |



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................3

III. THE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION SHOULD BE DENIED ..................................................6

A. Plaintiff Has Not Met His Burden to Establish Any of the Elements to Obtain a Temporary Restraining Order or Preliminary Injunction..........................8

1. Plaintiff Does Not Establish Irreparable Harm ..........................................8

2. Plaintiff Does Not Establish a Likelihood of Success on the Merits .........12

3. The Balance of the Equities Favors Valve ................................................17

4. The Public Interest Favors Valve ...............................................................17

B. Plaintiff May Not Obtain Injunctive Relief Against the AAA .............................18

C. Plaintiff May Not Seek Injunctive Relief On Behalf of an Uncertified Putative Class ..........................................................................................................19

D. Plaintiff's Demand for Injunctive Relief Is Barred by Laches .............................20

1. Plaintiff Acted with Unreasonable Delay ..................................................20

2. Valve Is Unfairly Prejudiced by Plaintiff's Delay ......................................21

IV. CONCLUSION ............................................................................................................22



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arizona Public Integrity Alliance Inc. v. Bennett*,
No. CV–14–01044–PHX–NVW, 2014 WL 3715130 (D. Ariz. June 23, 2014) ................21

*Badgett v. Security State Bank*,
807 P.2d 356 (Wash. 1991) ....................15, 16

*Bauer v. City of Rossford*,
No. 3:16 CV 722, 2017 WL 1179053 (N.D. Ohio Mar. 30, 2017), *affirmed in part, reversed in part*, No. 17-3498, 2018 WL 11438274 (6th Cir. 2018) ....................22

*BitTitan, Inc. v. SkyKick, Inc.*,
No. C15–0754 RSM, 2015 WL 5081130 (W.D. Wash. Aug. 27, 2015) ....................10

*Burnell v. Lewis Brisbois Bisgaard & Smith LLP*,
No. C22-0265JLR, 2023 WL 7110485 (W.D. Wash. Oct. 27, 2023)....................6, 8

*Burrows v. Onewest Bank*,
No. C 12-00995 SBA, 2012 WL 12882754 (N.D. Cal. Apr. 5, 2012) ....................21

*Castaneda v. 6939 Fair Oaks Blvd Tic LLC*,
No. 2:25-CV-02804-TLN-SCR, 2025 WL 2990245 (E.D. Cal. Oct. 24, 2025), *report and recommendation adopted*, No. 2:25-CV-2804-TLN-SCR, 2026 WL 194934 (E.D. Cal. Jan. 26, 2026)....................9

*Crews v. Wachovia Mortgage Corp.*,
No. CV 10–3894 SVW (AGRx), 2010 WL 11601051 (C.D. Cal. July 23, 2010).......20, 21

*Dahl v. Swift Distribution, Inc.*,
No. CV 10-00551 SJO (RZX), 2010 WL 1458957 (C.D. Cal. Apr. 1, 2010)................8, 10

*Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*,
588 F.3d 884 (5th Cir. 2009)....................12, 14

*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026)....................19

*Doe v. Bostock*,
No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) ....................6

*Doe v. Tenet*,
99 F. Supp. 2d 1284 (W.D. Wash. 2000)....................7



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Foster v. SCME Mortgage Bankers, Inc.*,
No. CIV. 2:10-518 WBS GGH, 2010 WL 1408108 (E.D. Cal. Apr. 7, 2010) ....................21

*Frazier v. X Corp.*,
155 F.4th 87 (2d Cir. 2025) ....................12, 13, 14

*Garnett v. Topnotch Management LLC*,
No. 2:25-cv-00229-MCS-SSC, 2025 WL 1543614 (C.D. Cal. Jan. 31, 2025) ....................19

*Gibbs v. Sanchez*,
No. CV 16-9013-RGK (PLA), 2018 WL 5903893 (C.D. Cal. Feb. 2, 2018) ....................18, 19

*Herod v. DMS Solutions Inc.*,
No. 4:23-cv-04465, 2025 WL 1937201 (S.D. Tex. July 15, 2025) ....................19

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*,
No. 21-cv-00038-MKV, 2021 WL 535485 (S.D.N.Y. Feb. 12, 2021) ....................22

*Holman v. Bath & Body Works, LLC*,
No. 1:20-cv-01603-NONE-SAB, 2021 WL 5826468 (E.D. Cal. Dec. 8, 2021), *report and recommendation adopted*, No. 1:20-cv-1603 JLT SAB, 2022 WL 463298 (E.D. Cal. Feb. 15, 2022) ....................20

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ....................12, 14

*Idaho Rivers United v. United States Army Corps of Engineers*,
156 F. Supp. 3d 1252 (W.D. Wash. 2015) ....................6

*Irish Lesbian & Gay Organization v. Giuliani*,
918 F. Supp. 732 (S.D.N.Y. 1996) ....................21

*Karsin v. Devor*,
No. CV 12-10715 DDP (AJWx), 2012 WL 6721086 (C.D. Cal. Dec. 27, 2012) ....................9

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
363 F.3d 1010 (9th Cir. 2004) ....................12, 15

*Lloyd v. Buzell*,
No. 3:19-CV-06239-BHS-DWC, 2021 WL 876951 (W.D. Wash. Feb. 4, 2021), *report and recommendation adopted*, No. C19-6239 BHS-DWC, 2021 WL 1063469 (W.D. Wash. Mar. 19, 2021) ....................18

*Los Angeles Memorial Coliseum Commission v. National Football League*,
634 F.2d 1197 (9th Cir. 1980) ....................10

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ....................7



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Martin v. Read*,
825 F. Supp. 3d 1214 (D. Or. 2026)....................19, 20

*McNae v. ARAG Insurance Co.*,
No. 2:24-cv-00211-TL, 2025 WL 2402098 (W.D. Wash. Aug. 19, 2025)....................18

*Monroe v. Irvine Co. Apartment Communities, Inc.*,
No. CV 10-04654 SJO (SSx), 2010 WL 11601074 (C.D. Cal. July 16, 2010)....................11

*Morales v. McAleenan*,
No. 19cv1575-LAB (AHG), 2019 WL 3974083 (S.D. Cal. Aug. 21, 2019)....................11

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)....................18

*Mosley v. Wells Fargo & Co.*,
No. 23-55478, 2024 WL 977674 (9th Cir. Mar. 7, 2024)....................12

*Murray v. Pennsylvania Manufacturers' Ass'n Insurance Co.*,
No. CV 17-2282, 2018 WL 1508759 (E.D. Pa. Mar. 27, 2018)....................22

*National Council of Arab Americans v. City of New York*,
331 F. Supp. 2d 258 (S.D.N.Y. 2004)....................21

*Oakland Tribune, Inc. v. Chronicle Public Co.*,
762 F.2d 1374 (9th Cir. 1985)....................8

*Page v. Jefferson Transit Authority*,
No. C08-5456RJB, 2008 WL 11343659 (W.D. Wash. Nov. 6, 2008)....................10, 16

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
388 U.S. 395 (1967)....................14

*Prostek v. Lincare Inc.*,
662 F. Supp. 3d 1100 (E.D. Cal. 2023)....................20

*Shenzhen Gooloo E-Commerce Co. v. Pilot, Inc.*,
No. 2:21-CV-08915-RGK-E, 2021 WL 6751988 (C.D. Cal. Nov. 22, 2021)....................9

*Silvey v. Numerica Credit Union*,
519 P.3d 920 (Wash. Ct. App. 2022)....................15

*Stanley v. University of Southern California*,
13 F.3d 1313 (9th Cir. 1994)....................6

*Studio 010, Inc. v. Digital Cashflow LLC*,
No. 2:20-cv-01018-RAJ, 2020 WL 3605654 (W.D. Wash. July 2, 2020)....................8, 10



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Super Chefs, Inc. v. Second Bite Foods, Inc.*,
No. CV 15-00525 SJO (FFMx), 2015 WL 12914441 (C.D. Cal. June 11, 2015)................9

*Tamayo v. Washington State Housing Finance Commission*,
No. C13–1176RSL, 2013 WL 3873278 (W.D. Wash. July 24, 2013) ................................7

*Valencia Barrera v. City of Lakewood*,
No. 3:25-CV-6086-RAJ-DWC, 2026 WL 1931743 (W.D. Wash. July 2, 2026) ...............18

*Valve Corporation v. Abbruzzese*,
No. 2:24-cv-1717-JNW, 2026 WL 1481630 (W.D. Wash. May 27, 2026)....................7, 17

*Western Watersheds Project v. Salazar*,
692 F.3d 921 (9th Cir. 2012).........................................................................................9

*Wallrich v. Samsung Electronics America, Inc.*,
106 F.4th 609 (7th Cir. 2024)........................................................................... *passim*

*Way.com, Inc. v. Singh*,
No. 3:18-cv-04819-WHO, 2018 WL 6704464 (N.D. Cal. Dec. 20, 2018)......................8, 9

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008)..........................................................................................................6

*Wolfire Games, LLC v. Valve Corp.*,
No. C21-0563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021)............................1, 4

**STATUTES**

9 U.S.C. § 1.............................................................................................................14

9 U.S.C. § 2.............................................................................................................14



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I. INTRODUCTION[1]

Plaintiff asks this Court for an emergency order directing nonparty the American Arbitration Association ("AAA") to continue to administer his arbitration and those of 14,910 other individuals. Plaintiff contends that this relief is necessary because, "according to Valve's own account of the law" (Mot. 10), he and the other claimants will no longer be able to proceed in arbitration if the arbitrations are closed. But just three weeks ago, Plaintiff's counsel demanded an emergency conference before this Court in this action and two other related actions to request this very same relief. The Court accommodated Plaintiff's counsel, holding a conference on August 10, 2026, and accelerating its decision on Plaintiff's counsel's motion for sanctions filed in *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW (W.D. Wash.) ("*Wolfire*"). That motion demanded the same relief as the Complaint does here: an order compelling Valve to pay $20.8 million in arbitration fees on behalf of 14,911 arbitration claimants purportedly represented by Plaintiff's counsel.

On August 21, 2026, the Court denied Plaintiff's counsel's motion for sanctions in *Wolfire*. As the Court explained, that motion—brought by one individual on behalf of 14,910 others—could not be granted because it was "a request for other people's money, and the rule against asserting other people's rights bars it." *Wolfire*, Dkt. 692 at 6. The same is true here. Plaintiff's counsel tries again anyway, even though this case has been stayed for nearly a month, seeking a temporary restraining order based on that same defective theory. This Court has already denied the relief sought, and should do so again.

Plaintiff's Motion also must be denied because he does not meet his burden of establishing any, much less all, of the threshold requirements for the extraordinary remedy of injunctive relief:

*First*, Plaintiff does not establish irreparable harm. Plaintiff seeks emergency relief directing the AAA to hold open cases that it has decided to close. But Plaintiff has known since

---

[1] Emphases are added and internal citations, quotations, and alterations are omitted unless noted. References to "Marks-Dias Ex." refer to exhibits to the declaration of Blake Marks-Dias, dated August 28, 2026.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

April 2025 that Valve does not intend to pay the AAA case management fees and that arbitrations may be closed for nonpayment of fees under the AAA rules. Plaintiff waited nearly a year and a half thereafter to make this Motion. On July 17, 2026, the AAA expressly advised that it would close the arbitrations if the parties did not pay the case management fees. Plaintiff waited another 40 days after that notice to pursue this Motion. Plaintiff's unexplained delay defeats any inference of irreparable harm. And the putative harm Plaintiff identifies is in any event not irreparable because it can be remedied by money. Plaintiff and his counsel, backed by litigation funding, may advance fees to permit their arbitrations to proceed, as Plaintiff's counsel have done for several claimants. Ultimately, Plaintiff can show no genuine harm at all: even if his arbitration is closed, he can pursue the same antitrust claim in court.

*Second*, Plaintiff does not show a likelihood of success on the merits. This Court rejected Plaintiff's theory of liability in *Wolfire* a week ago. Plaintiff's claims here also cannot succeed for the additional reasons set forth in Valve's motion to dismiss and for summary judgment and left unaddressed in Plaintiff's Motion: (1) the Court lacks the authority to grant the relief Plaintiff ultimately seeks—namely, to order Valve to pay arbitral fees and (2) Plaintiff does not plead and cannot prove any breach of contract or the implied covenant of good faith and fair dealing.

*Third*, the balance of the equities favors Valve. Plaintiff makes no showing that he will suffer prejudice in the absence of an injunction. Valve and the AAA—a nonparty—will be prejudiced, however, if a mandatory injunction is imposed on them.

*Fourth*, the public interest favors Valve. The public interest is not served by instructing a nonparty arbitral forum as to how to administer cases or forcing a party in an arbitration to take positions against its own interest.

Plaintiff's Motion must be denied for several additional reasons as well:

- The Court cannot enjoin the AAA because it is a nonparty. Yet that is the relief Plaintiff seeks here: an order mandating that the AAA continue to administer cases that it otherwise ordered closed.
- Plaintiff cannot obtain a classwide injunction because he does not, as he must,



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

request that the Court provisionally certify a class and establish the predicates for class treatment under Rule 23. Plaintiff could never make that showing because the very agreement on which his claims are predicated contains a class action waiver.

- Plaintiff's request for injunctive relief is barred by laches because he acted with unreasonable delay that prejudiced Valve.

Accordingly, Plaintiff's Motion should be denied.

## II. FACTUAL BACKGROUND

In 2023, Plaintiff's counsel filed arbitration demands with the AAA purportedly on behalf of Plaintiff and 14,910 other individuals. (Compl. ¶¶ 33-34.) On September 26, 2024, Valve updated the Steam Subscriber Agreement ("SSA") to remove the arbitration agreement in response to (1) four arbitration rulings holding that the arbitration clause was unenforceable and (2) a new class action premised on those rulings. *See Valve Corp. v. Abbruzzese*, No. 2:24-cv-1717 (W.D. Wash. filed Oct. 18, 2024) ("*Abbruzzese*"), Dkts. 1-2. After updating the SSA, Valve requested that the AAA close the arbitrations pursued by Plaintiff's counsel. *Id.* At the same time, Valve reimbursed Plaintiff and the other arbitration claimants $1,143,325 for the initial filing fees they had paid to the AAA. (Compl. ¶¶ 35, 44.)

The Controlling SSA now provides for resolution of disputes in court:

> You and Valve agree that **all disputes and claims** between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) **shall be commenced and maintained exclusively in any state or federal court located in King County, Washington**, having subject matter jurisdiction. You and Valve hereby consent to the exclusive jurisdiction of such courts and waive any objections as to personal jurisdiction or venue in such courts.

(Dkt. 14, Ex. A § 10 (emphasis added).)[2] This Plaintiff affirmatively agreed to the Controlling SSA on September 27, 2024. (Dkt. 14 ¶ 22.)

---

[2] The SSA was modified to include the updated dispute resolution provision as of September 26, 2024. The SSA has since been updated twice but neither update is relevant to U.S. users or this action. The version of the SSA as updated on September 26, 2024, and subsequent versions are referred to collectively as the "Controlling SSA."



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

At Plaintiff's counsel's urging, the AAA chose not close the arbitrations at that time. (Compl. ¶ 46.) The AAA instead sent Valve an invoice for approximately $20.8 million for case management fees ($1,400/claimant × 14,911 claimants). (*Id.* ¶¶ 40, 47.) On April 23, 2025, Valve notified the AAA and Plaintiff's counsel that it would not be paying that invoice (*id.* ¶ 48)—again, because claimants, including this Plaintiff, are no longer parties to arbitration agreements with Valve. Plaintiff's counsel requested that the AAA stay the arbitrations because Plaintiff's counsel were "preparing appropriate court filings" against Valve seeking to compel payment of the fee invoice under California Code of Civil Procedure § 1281.98(b)(3), and were "in the process of identifying a subset of the 14,911 Claimants that intend to proceed with their arbitration claims." (*See* Dkt. 41, Ex. 16.) On May 15, 2025, the AAA accommodated that request and administratively stayed the arbitrations. (Compl. ¶ 51; Dkt. 41, Ex. 17.)

Plaintiff's counsel then commenced duplicative court proceedings in an improper effort to compel Valve to pay those AAA fees:

(1) On May 2, 2025, Plaintiff's counsel filed a putative class action in California, *Welty v. Valve Corp.*, No. 2:25-cv-02450 (W.D. Wash) (Dkt. 1), seeking an order compelling Valve to pay the case management fees. *Welty* has been transferred to this Court.

(2) On June 11, 2025, Plaintiff's counsel filed a motion for sanctions in *Wolfire* demanding that Valve pay the case management fees for 14,911 claimants as a "sanction." *Wolfire*, No. 2:21-cv-00563-JNW (Dkt. 467).

(3) On August 5, 2025, Plaintiff's counsel filed this putative class action, *Smith v. Valve Corp.*, No. 2:25-cv-01478-JNW (W.D. Wash.) (Dkt. 1), again seeking an order compelling Valve to pay fees.

In the 15 months since the AAA administratively stayed the arbitrations at Plaintiff's counsel's request, Plaintiff's counsel have advanced (or asked to advance) fees for seven of the 14,911 claimants—one on December 17, 2025, and six others on various dates in April 2026. After identifying these seven Claimants in dribs and drabs over months—generating administrative

burden for the AAA and for Valve—Plaintiff's counsel wrote the AAA on June 29, 2026, stating that they intended "to identify an additional group of approximately 100 claimants" for whom they would advance fees. (Marks-Dias Ex. A at 1.) But the record shows Plaintiff's counsel failed to identify any additional claimants who wished to proceed in arbitration.

On July 17, 2026, the AAA informed the parties that it would close the arbitrations on August 17, 2026, if Plaintiff's counsel failed to advance the case management fees by that date. (Dkt. 41, Ex. 22.)

On July 30, 2026, this Court entered a stay of this action pending a potential appeal in *Abbruzzese*. (Dkt. 38.) Plaintiff did not ask to lift the stay at any time.

On August 3, 2026, Plaintiff's counsel wrote to this Court regarding an "Emergency Request for Status/Case-Management Conference: *In re Valve Antitrust Litigation,* No. 2:21-cv-00563-JNW; *Welty v. Valve Corp.*, No. 2:25-cv-02450-JNW; *Smith v. Valve Corp.*, No. 2:25-cv-01478-JNW." (Dkt. 41, Ex. 24.) Plaintiff's counsel asked the Court to "hold a brief conference so it can address how to proceed before the [AAA's arbitration closure] deadline." (*Id.*) Plaintiff's counsel wrote on behalf of Claimant Ryan Lally, the plaintiff asserting the motion for sanctions in *Wolfire*, but explained that the deadline also related directly to the relief sought in this action. The Court granted this request and scheduled an emergency status conference for August 10, 2026.

On August 7, 2026, the AAA again informed the parties that it would close the arbitrations unless Plaintiff's counsel advanced the case management fees but, at Plaintiff's counsel's urging, AAA extended the payment deadline to August 31, 2026. (Marks-Dias Ex. B.)

On August 10, 2026, this Court held the emergency conference in *Wolfire*, at which Plaintiff's counsel sought relief from the AAA's payment deadline—i.e., the same relief sought here. After hearing argument, the Court indicated that it would "have a ruling for you all, whether on the motion for sanctions [in *Wolfire*] or on this separate request that's made by plaintiffs," before the August 31, 2026, payment deadline. (Marks-Dias Ex. C at 14:1-6.) Mr. Lally's motion for sanctions in *Wolfire*, pursued by Plaintiff's counsel, sought the same relief Plaintiff seeks here: an order requiring Valve to pay $20.8 million in AAA case management fees.



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

On August 21, 2026, this Court denied Mr. Lally's motion for sanctions in *Wolfire*.

## III. THE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION SHOULD BE DENIED

A temporary restraining order is "an 'extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Burnell v. Lewis Brisbois Bisgaard & Smith LLP*, No. C22-0265JLR, 2023 WL 7110485, at *2 (W.D. Wash. Oct. 27, 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). It is "'never awarded as of right.'" *Id.* (quoting *Winter*, 555 U.S. at 24). Like a TRO, a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Idaho Rivers United v. United States Army Corps of Eng'rs*, 156 F. Supp. 3d 1252, 1259 (W.D. Wash. 2015) (emphasis in original).

"Mandatory injunctions are particularly disfavored, and the district court should deny such relief unless the facts and law clearly favor the moving party." *Doe v. Bostock*, No. C24-0326JLR-SKV, 2024 WL 2861675, at *2 (W.D. Wash. June 6, 2024); *accord Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). A mandatory injunction "orders a responsible party to take action, while [a] prohibitory injunction prohibits a party from taking action." *Bostock*, 2024 WL 2861675, at *2.

The heightened standard for mandatory injunctions applies here because Plaintiff seeks an order directing Valve and the AAA (a nonparty) to take action. The proposed order would mandate as follows:

(i) That Valve reverse the position it has taken in arbitration proceedings and "notify AAA in writing" of this proposed court-ordered about-face. (Mot. 15.) Plaintiff's proposed order describes in detail this "[a]ct required" of Valve. (Dkt. 40, Ex. B ("Act required. … Valve shall, as soon as is practicable, deliver to the AAA a written notice, with a copy to Plaintiff's counsel, stating that (a) Valve withdraws each pending request or demand that the Arbitrations be closed, and (b) Valve does not oppose the AAA's continuing to hold the Arbitrations in abeyance pending final judicial



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

disposition of their arbitrability.").)

(ii) That the AAA issue an administrative order that the arbitrations shall "remain in [] abeyance … until this case is resolved." (Mot. 15.) It would require the AAA to reverse its prior administrative decision to close the arbitrations on August 31, 2026, unless Plaintiff's counsel pays the requisite administration fees.

While Plaintiff frames the proposed injunction as requiring Valve to "refrain from acting" (Mot. 9), Plaintiff in fact seeks an order that would compel performance of several affirmative, mandatory acts. *See Doe v. Tenet*, 99 F. Supp. 2d 1284, 1294 (W.D. Wash. 2000) (denying motion under mandatory injunction standard where plaintiff sought to compel defendants to "commence performance of [a] mandatory act"); *Tamayo v. Washington State Hous. Fin. Comm'n*, No. C13-1176RSL, 2013 WL 3873278, at *3-4 (W.D. Wash. July 24, 2013) (denying motion under mandatory injunction standard where plaintiffs "do not seek to preserve the status quo pending a resolution on the merits [but] [i]nstead … request preliminary injunctive relief that requires Defendants to *act*").

The two cases Plaintiff cites to support his position that he seeks only prohibitory relief do not help him. In *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009), the Ninth Circuit held that a district court's injunction order was mandatory because the injunctive "remedy … required [a party] to take the affirmative step of recalling its product." *Id.* at 879. Plaintiff also seeks to mandate affirmative acts here. Plaintiff putatively quote *Marlyn* for the proposition that an order directing a party to refrain from acting is a "quintessential prohibitory injunction," but *Marlyn* does not contain that phrase. This phantom language is in any event irrelevant because Plaintiff seeks to compel affirmative acts here.

Plaintiff quotes this Court's decision in *Valve Corporation v. Abbruzzese*, No. 2:24-CV-1717-JNW, 2026 WL 1481630 (W.D. Wash. May 27, 2026), for the proposition that whether injunctive relief is mandatory "'turns on what the order directs the enjoined party to do.'" (Mot. 9.) But Plaintiff excludes the remainder of that sentence, in which the Court explained an order is prohibitory where it "would direct Defendants to … halt conduct, not to undertake it." *Abbruzzese*,



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

2026 WL 1481630, at *6. Here, Plaintiff's proposed injunction would affirmatively direct Valve—and the AAA—to "undertake" conduct.

### A. Plaintiff Has Not Met His Burden to Establish Any of the Elements to Obtain a Temporary Restraining Order or Preliminary Injunction

To obtain a temporary restraining order or preliminary injunction, a movant "must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Burnell*, 2023 WL 7110485, at *2. Plaintiff does not and cannot make any of those showings.

#### 1. Plaintiff Does Not Establish Irreparable Harm

##### (a) Plaintiff's Long Delay Refutes Irreparable Harm

Plaintiff's extraordinary delay, standing alone, defeats any claim of irreparable harm. Delay "implies a lack of urgency and irreparable harm." *Way.com, Inc. v. Singh,* 2018 WL 6704464 (N.D. Cal. Dec. 20, 2018) (quoting *Oakland Tribune, Inc. v. Chronicle Pub. Co*., 762 F.2d 1374, 1377 (9th Cir. 1985)). Courts have held that a delay of even two or three weeks forecloses emergency injunctive relief. *See Studio 010, Inc. v. Digital Cashflow LLC*, No. 2:20-CV-01018-RAJ, 2020 WL 3605654 (W.D. Wash. July 2, 2020) (denying emergency motion for TRO where plaintiff waited "three weeks" to file); *Dahl v. Swift Distribution, Inc.*, No. CV 10-00551 SJO(RZX), 2010 WL 1458957, *4 (C.D. Cal. Apr. 1, 2010) (denying emergency motion for TRO where 18-day delay implied "a lack of urgency and irreparable harm"). Plaintiff's delay here is far more extreme.

Plaintiff waited **more than a year** after Valve notified Plaintiff and the AAA on April 23, 2025, that it would not pay the case management fees in the arbitrations to seek injunctive relief. *Supra* Part II, pp. 4-5. By that date, Plaintiff and his counsel were on notice that the AAA may close the arbitrations in accordance with its own rules if Plaintiff's counsel did not advance the fees. *See* AAA Consumer Rules (Amended Sep. 1, 2014) (Dkt. 16, Ex. 8), Rule R-54(d).[3] Yet Plaintiff did

---

[3] Lead Plaintiff's counsel Gary Mason is a seasoned litigator "whose firm has 10 pending mass arbitrations." *Gary Mason Speaks with ALM on Mass Arbitration*, Mason & Perry LLP (Mar. 18,

*(cont'd)*



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

not seek injunctive relief then or at any time over the next 16 months. *See W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (affirming denial of preliminary injunction where plaintiff waited **seven months** to seek relief); *Castaneda v. 6939 Fair Oaks Blvd Tic LLC*, No. 2:25-CV-02804-TLN-SCR, 2025 WL 2990245 (E.D. Cal. Oct. 24, 2025) (no irreparable harm where plaintiff waited **five months** to seek TRO), *report and recommendation adopted*, No. 2:25-CV-2804-TLN-SCR, 2026 WL 194934 (E.D. Cal. Jan. 26, 2026); Transcript at 55–56, 61, *Golub Cap., LLC v. NB Alts. Advisers, LLC*, No. 21-cv-3991 (S.D.N.Y. May 14, 2021) (**four months'** delay defeated injunction), Dkt. 51 (Marks-Dias Ex. D); *Way.com*, 2018 WL 6704464, at *11 (**three months'** delay defeated injunction); *Super Chefs, Inc. v. Second Bite Foods, Inc.*, No. CV1500525SJOFFMX, 2015 WL 12914441 (C.D. Cal. June 11, 2015) (**six months'** delay defeated injunction); *Karsin v. Devor*, No. CV 12-10715 DDP AJWX, 2012 WL 6721086, at *2 (C.D. Cal. Dec. 27, 2012) (**two months'** delay defeated injunction; observing that "Plaintiffs' unexplained delay in seeking a TRO calls into question their current claims of irreparable harm").

Plaintiff contends his delay is excused because, on May 15, 2025, the AAA agreed to hold the arbitrations in abeyance. But the AAA's own rules provide that arbitrations may be held in abeyance only if all filing and other administrative fees are paid. *See* AAA, Consumer Arbitration Rules Costs of Arbitration at 4 (Jan. 1, 2023). They also require the business to pay periodic abeyance fees. *Id.* Because the case management fees had not been paid, and Valve would not pay abeyance fees, there was always a possibility that the AAA would decide to close the arbitrations, and eventually it did. Any excuse for delay disappeared on July 17, 2026, when the AAA informed the parties that it would close the arbitrations on August 17, 2026, if Plaintiff's counsel failed to advance case management fees by that date. *Supra* Part II, p. 5.

Yet Plaintiff waited another **40 days** after the AAA expressly stated that it would close the cases to pursue injunctive relief. *Supra* Part II, p. 5; *see Shenzhen Gooloo E-Com. Co. v. Pilot, Inc.*,

---

2024) (citing *How a Plaintiffs Lawyer Armored Up for the Mass Arbitration Battle*, Law.com (Mar. 5, 2024), available at https://www.masonllp.com/wp-content/uploads/2024/03/Article-How-a-Plaintiffs-Lawyer-Armored-Up-for-the-Mass-Arb-Battle.pdf).



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

No. 2:21-CV-08915-RGK-E, 2021 WL 6751988 (C.D. Cal. Nov. 22, 2021) ("**month and a half**" delay defeated injunction).

Plaintiff waited **25 days** after the Court entered its stay of this action on July 30, 2026, to pursue injunctive relief. *Supra* Part II, p. 5; *see Studio 010*, 2020 WL 3605654 (**three-week** delay defeated injunction). He has not moved to lift the stay.

Plaintiff waited **19 days** after the AAA reiterated, in a communication on August 7, 2026, that it would close the arbitrations unless Plaintiff's counsel advanced the case management fees. *Supra* Part II, p. 5; *see Dahl*, 2010 WL 1458957, at *4 (**eighteen-day** delay defeated injunction). At Plaintiff's counsel's urging, the AAA also advised that it was extending the payment deadline to August 31, 2026. (Marks-Dias Ex. B.)

Plaintiff waited **16 days** after representing to the Court on August 10, 2026, that counsel had already "prepared" a "proposed order"—presumably, the order for a TRO that Plaintiff seeks here. (Marks-Dias Ex. C at 6:12.)

In sum, Plaintiff's lengthy and unwarranted delay defeats his claim of irreparable harm.

**(b) Plaintiff Has an Adequate Legal Remedy**

Plaintiff also cannot show that he is likely to suffer irreparable harm because he can be compensated by monetary damages. "[M]onetary injury is not normally considered irreparable." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *accord BitTitan, Inc. v. SkyKick, Inc.*, 2015 WL 5081130, at *8 (W.D. Wash. Aug. 27, 2015) (denying preliminary injunction motion where plaintiff failed to show injuries that could not "be made whole by monetary damages"); *Page v. Jefferson Transit Auth.,* 2008 WL 11343659, at *2 (W.D. Wash. Nov. 6, 2008) (denying preliminary injunction and TRO because plaintiff failed to show injuries "other than a monetary loss").

The only harm Plaintiff identifies is monetary. The Complaint demands that Valve pay fees for his arbitration and thousands of others so the AAA will administer them. But under AAA rules, Plaintiff's counsel may advance those fees. *See* Rule MA-10(d), AAA Mass Arbitration Supplementary Rules (if fees are unpaid, other "party may advance the required payment") (Dkt. 16,



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Ex. 9). Plaintiff's counsel urged the AAA not to close the arbitrations because it intended to invoke this rule. (*See* Dkt. 41, Ex. 16; *see also* Marks-Dias Ex. A at 1, 5-6.) Indeed, Plaintiff's counsel has done exactly that for seven arbitrations. (*See* Marks-Dias Exs. E-F.) Plaintiff's counsel also told the AAA they intended to advance fees for many other arbitrations yet never did so. Accordingly, Plaintiff and the putative class members, whose counsel are backed by a litigation funder (Dkt. 13 at 7; Dkt. 16, Exs. 1-2), can prevent the harm Plaintiff identifies—closure of the arbitrations—by making that payment and then seeking to recover the fees. *See Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 622 (7th Cir. 2024) ("Further, the consumers were not left without recourse. They could have advanced [arbitration] fees and continued with arbitration . . . ."). And Plaintiff's individual fees are only $1,400. Because Plaintiff has an adequate legal remedy, he cannot show irreparable harm.

**(c) Plaintiff Can Pursue His Claims in Court**

Even if the AAA closes Plaintiff's arbitration, he will not be harmed: he can pursue his antitrust claims in court. *See Morales v. McAleenan*, 2019 WL 3974083, at *2 (S.D. Cal. Aug. 21, 2019) (denying request for TRO where plaintiff "can continue to litigate" his case before the relevant administrative body); *Monroe v. Irvine Co. Apartment Communities, Inc.*, 2010 WL 11601074, at *3 (C.D. Cal. July 16, 2010) (denying TRO where, because "Plaintiff may pursue her instant claims in state court, she cannot establish that she will suffer irreparable harm if immediate injunctive relief is not provided"); *accord Wallrich*, 106 F.4th at 622 ("Further, the consumers were not left without recourse. They . . . can now pursue their claims on the merits in district court.").

### 2. Plaintiff Does Not Establish a Likelihood of Success on the Merits

#### (a) This Court Lacks Authority To Grant Plaintiff's Requested Relief Because Fee Disputes Are Solely Within the Purview of the AAA

Plaintiff cannot succeed on the merits because the Court lacks the authority to grant the procedural relief in arbitration that Plaintiff is seeking. Under the FAA, "'procedural' questions which grow out of [a] dispute [in arbitration] and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (emphasis in original); *accord Mosley v. Wells Fargo & Co.*, 2024 WL 977674, at *1 (9th Cir. Mar. 7, 2024) ("It is well-settled that questions of procedure relating to arbitration are outside of the purview of the federal courts.").

Arbitration fee disputes raise procedural questions that are not reviewable by a court and are instead within the sole purview of the arbitrator or arbitration provider. *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1013 (9th Cir. 2004) (reversing district court order compelling party "to pay its pro-rata share of the fees" because fees were governed by AAA rules and subject to AAA's discretion); *accord Frazier v. X Corp.*, 155 F.4th 87, 100 (2d Cir. 2025) (court "lacked authority" to order party "to pay … arbitral fees"); *Wallrich*, 106 F.4th at 620 (district court "exceeded its authority and the scope of the arbitration agreement by ordering Samsung to pay the AAA filing fees"); *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009) ("Payment of fees is a procedural condition precedent that the trial court should not review.").

*Frazier* illustrates the point. There, the defendant-company's former employees initiated arbitrations against the company, submitting various employment-related claims to JAMS. However, "months into the proceedings, [the company] disagreed with JAMS about how the arbitral fees should be allocated between the parties," and contended that only an arbitrator—not JAMS—could resolve the fee dispute. *Frazier*, 155 F.4th at 90. The company declined to pay the JAMS fees, and "[b]ecause JAMS refused to appoint an arbitrator without the fees, the proceedings ground to a halt." *Id.* JAMS stayed the proceedings at the parties' request, and the employees



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

brought an action seeking to compel the company to arbitrate and to pay the JAMS fees. *Id.*

The Second Circuit reversed the trial court's order mandating payment of fees with instructions to deny the petition. The court held that "whether a party has failed to pay arbitration fees in an ongoing arbitral proceeding is a procedural issue entrusted to the arbitrator or arbitral body—not the court—for resolution within that proceeding." *Frazier*, 155 F.4th at 91. JAMS was best positioned to interpret and apply its own rules governing payment of fees. *Id.* at 99-101. To conclude otherwise would "inevitably require the court to interpret the parties' agreement, the arbitrators' rules, or both—interpretations that would otherwise … presumptively be reserved for the arbitrator." *Id.* at 100. Accordingly, the court saw "no role for a court to involve itself in a dispute in an ongoing arbitral proceeding over a party's payment of fees or compliance with arbitral policies." *Id.*

Here, too, Plaintiff asks the Court to resolve a dispute over AAA fees, with Plaintiff seeking an order compelling Valve to pay arbitral fees. (*See* Compl. ¶¶ 66-71, 77, 81-84, 88.) But just as in *Lifescan*, *Frazier*, *Wallrich*, and *Dealer Computer*, questions about the payment of fees and the consequences of non-payment are delegated to the AAA.

The now-superseded version of the Steam Subscriber Agreement on which Plaintiff relies in his Complaint (the "Superseded SSA") provides that the arbitration "will be governed by the Consumer Arbitration Rules" of the AAA. (Compl. ¶ 30; Compl. Ex. A.) Those rules provide that the AAA's "role is to manage the administrative aspects of the arbitration," such as "handling the fees associated with the arbitration." (Dkt. 16, Ex. 8 at 6.) The AAA Mass Arbitration Supplementary Rules, which supplement the Consumer Arbitration Rules when the AAA determines they apply (as it has done here), include fees schedules as well as remedies in the event of non-payment. (Dkt. 16, Ex. 9 at MA-1; Compl. ¶ 36.)

Rule MA-10(d) provides that if fees "have not been paid in full, the AAA may notify the parties in order that one party may advance the required payment within the time specified." (Dkt. 16, Ex. 9.) "If payments due are not made" and "no arbitrator has yet been appointed," the AAA "may suspend or terminate those proceedings." (Dkt. 16, Ex. 9 at MA-10(e); *accord* Dkt. 16, Ex. 8

at R-54(a) (if fees "have not been paid in full, the AAA may inform the parties so that one of them may forward the required payment."); *id.* at R-54(c) (in the event of nonpayment, "[i]f no arbitrator has yet been appointed, the AAA may suspend the proceedings" or ultimately terminate them).)

Nothing in the Superseded SSA "suggests that the parties agreed to invoke judicial oversight of those decisions or procedures," *Frazier*, 155 F.4th at 100, or to otherwise involve the Court in arbitral fee disputes. If Plaintiff wishes to pursue his arbitration, his "remedy lies with [the AAA]," not with the Court. *Id.* at 101. Indeed, as *Wallrich* explained, Plaintiff may "advance[] [the] fees and continue[] with the arbitration." 106 F.4th at 622. Alternatively, Plaintiff "can … pursue [his] claims on the merits in district court," where there is an already-pending putative class action. *Id.* But because this Court lacks the authority to resolve this dispute over AAA fees, Plaintiff cannot show a likelihood of success on the merits and the Complaint should be dismissed. *See Howsam*, 537 U.S. at 82 (affirming dismissal of action to enjoin arbitration because arbitrator, not court, should decide procedural question at issue); *Wallrich*, 106 F.4th at 622 ("the consumers cannot compel [defendant] to pay the AAA's administrative fees"); *Dealer Computer*, 588 F.3d at 888-89 (remanding to district court "to dismiss" action seeking an order compelling payment of fees).

Plaintiff cannot avoid this result by asserting common law claims for breach of contract and breach of the duty of good faith and fair dealing. Federal law applies to Plaintiff's claims regardless of how they are styled. Unless the parties agree otherwise, the FAA applies to arbitration agreements involving interstate commerce, and federal courts are bound to apply it. *See* 9 U.S.C. §§ 1, 2; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (applying FAA in diversity case; explaining that "Federal courts are bound to apply rules enacted by Congress with respect to matters—here a contract involving commerce—over which it has legislative power"). Here, the Complaint expressly pleads that the parties' Superseded SSA involves interstate commerce. (Compl. ¶ 29 (quoting agreement that provides FAA applies); *id.* ¶¶ 11-13 (describing interstate character of parties' relationship).) The Superseded SSA also expressly provides that the FAA "governs arbitration." (Compl. Ex. A § 10.) Therefore, the FAA, not state law, applies.



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**(b) Plaintiff Cannot Plead a Breach Because the Complaint Admits that Valve Has Arbitrated According to AAA Rules**

Plaintiff also cannot show a likelihood of success on the merits because Plaintiff cannot plead or prove a legally sufficient claim for breach of contract or breach of the covenant of good faith and fair dealing. To state such a claim, a plaintiff must allege, among other things, that the defendant breached the contract at issue. *See Silvey v. Numerica Credit Union*, 519 P.3d 920, 926 (Wash. Ct. App. 2022); *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) (duty of good faith and fair dealing "requires only that the parties perform in good faith the obligations imposed by their agreement"). Valve's refusal to pay the $20.8 million disputed AAA invoice is not a breach of the parties' Superseded SSA as a matter of law.

Plaintiff alleges that "Valve's refusal to pay necessary the [sic] AAA fees is an anticipatory, willful and deliberate breach of" the Superseded SSA. (Compl. ¶¶ 50, 74.) But nothing in the Superseded SSA requires Valve to pay every invoice that the AAA issues, or the particular $20.8 million invoice at issue here, and Plaintiff alleges nothing to the contrary. (*See* Compl. Ex. A, § 11.) Rather, as Plaintiff acknowledges, the Superseded SSA provides only that the "arbitration will be governed by the Consumer Arbitration Rules." (Compl. ¶¶ 29-30, 81.) As for those Consumer Arbitration Rules, Plaintiff alleges only that they required Valve to pay filing fees and arbitrator compensation. (*Id.* ¶¶ 31, 82.) Plaintiff acknowledges that Valve paid filing fees, and no arbitrator compensation is due because no arbitrators have yet been appointed. (*Id.* ¶¶ 37-38, 40-41.) Plaintiff has therefore not alleged a violation of the Consumer Arbitration Rules.

On the contrary, under the Consumer Arbitration Rules, if a party refuses to pay an invoice, the other party may advance those fees, and the AAA may suspend or terminate the arbitration in the event of nonpayment. (*See* pp. 10-11, *supra*.) Numerous courts have held that a refusal or failure to pay arbitral fees under the AAA framework does not constitute a "failure, neglect, or refusal" to arbitrate—*i.e.*, a breach of the arbitration agreement. *See Lifescan*, 363 F.3d at 1013 (party did not fail, neglect, or refuse to arbitrate when, despite failure to pay fees, "the arbitration has proceeded pursuant to the parties' agreement and the rules they incorporated"); *Wallrich*, 106



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

F.4th at 620 (plaintiffs' and defendant's arbitrations "proceeded in line with their agreement" when the AAA terminated arbitrations after defendant refused to pay fees).

Here, Valve declined to pay a disputed $20.8 million invoice for "case management fees" on the ground that there is no agreement to arbitrate between the parties and the AAA has followed its procedures in light of that decision. (Compl. ¶¶ 70, 75.) That complies with the Superseded SSA. Plaintiff has not alleged in his Complaint a breach of the Superseded SSA and therefore cannot show a likelihood of success on the merits.

Nor does the duty of good faith and fair dealing support such a claim. That duty does not "inject substantive terms into the parties' contract" or create a "free-floating duty of good faith unattached to the underlying legal document." *Badgett*, 807 P.2d at 360. Plaintiff points to no provision of the Superseded SSA or AAA Consumer Arbitration Rules that Valve violated. Therefore, there is no contractual hook on which to hang Plaintiff's purported claim for breach of the duty of good faith and fair dealing.

#### (c) The Court's Decision in *Abbruzzese* Does Not Establish a Likelihood of Success on the Merits

Plaintiff does not address any of the above-described defects that preclude a showing of likelihood of success on the merits, each of which Valve raised in its motion to dismiss or for summary judgment. (Dkt. 13.) Plaintiff's failure to "in any manner, address the merits of his underlying claims" and Valve's arguments is fatal to this motion. *Page v. Jefferson Transit Auth.*, 2008 WL 11343659, at *2 (W.D. Wash. Nov. 6, 2008) (denying plaintiff's motion for TRO and for preliminary injunction because "[p]laintiff fail[ed] to address the likelihood of success on the merits").

Plaintiff devotes a single paragraph to likelihood of success on the merits. There, Plaintiff argues only that he is likely to establish that he is not bound by the Controlling SSA that requires his claims to proceed in court. But even assuming that were correct (and it is not), Plaintiff cannot obtain the relief he seeks for the reasons explained above: (1) the Court cannot order Valve to pay arbitration fees and (2) Plaintiff does not state a claim for breach of the Superseded SSA or of the



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

implied covenant of good faith and fair dealing.

In any event, Plaintiff is in fact bound by the Controlling SSA, which independently refutes a likelihood of success on the merits. (Dkt. 13 at 18-23; *supra* Part II, p. 3.) Plaintiff argues that he is not bound by the Controlling SSA based on this Court's preliminary decision in *Abbruzzese*, 2026 WL 1481630, which the Court has since certified for interlocutory appeal. But *Abbruzzese* is distinguishable. This Court reasoned in *Abbruzzese* that enforcing the Controlling SSA's forum provision would "fall hard on the Defendants" by "unwind[ing] the work and expense" they incurred and "threaten[] awards[]" they secured or were close to securing. Not so here: Plaintiff's arbitration and the arbitrations of the other putative class members have not commenced. Indeed, the AAA has not even assigned merits arbitrators. Nor does *Abbruzzese* address any of Valve's other arguments herein.

### 3. The Balance of the Equities Favors Valve

The balance of the equities tips decidedly against Plaintiff and in favor of Valve. Plaintiff has made no showing that he will lose his claims if his arbitrations are closed, nor can he: under the Controlling SSA, he may pursue them in court. Nor does Plaintiff dispute that he and other members of the putative class may advance the case management fees to pursue their arbitrations. And the injunction here would not merely "preserve the status quo": Plaintiff seeks an extraordinary mandatory injunction that would force (1) Valve to take an affirmative position that is contrary to its own interests in pending arbitrations and (2) the AAA to continue to administer claims, contrary to its own rules and policies, and to issue an order to that effect that would reverse its prior decision to close the arbitrations.

### 4. The Public Interest Favors Valve

The public interest is not served by an injunction that commandeers arbitral administration and a party's litigation strategy. *See, e.g.*, *Wallrich*, 106 F.4th at 620 (reversing district court order that "disturb[ed] the AAA's judgment" to terminate, rather than stay, proceedings upon nonpayment where claimants declined to advance the fees).

Plaintiff cites the FAA's "equal footing policy" but the Supreme Court has made clear the



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

FAA creates no policy preference favoring arbitration beyond enforcing agreements like ordinary contracts. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 412 (2022) ("The federal policy is about treating arbitration contracts like all others, not about fostering arbitration."). The parties will have "fully arbitrated" under the Superseded SSA that Plaintiff invokes upon termination by the AAA for nonpayment. *Wallrich,* 106 F.4th at 620. "[A]ll the law requires is that the parties arbitrate according to the terms of their agreement," the public interest is not served by requiring more. *Id.* at 621.

**B. Plaintiff May Not Obtain Injunctive Relief Against the AAA**

Plaintiff's motion for injunctive relief should also be denied because he improperly seeks to enjoin a nonparty: the AAA. A movant may not seek an injunction against a nonparty to an action. *Valencia Barrera v. City of Lakewood*, No. 3:25-CV-6086-RAJ-DWC, 2026 WL 1931743, at *1 (W.D. Wash. July 2, 2026) (holding that, as to entities not named in the suit, the "Court lacks authority to direct them to perform any specific actions"); *Lloyd v. Buzell*, No. 3:19-CV-06239-BHS-DWC, 2021 WL 876951, at *2-3 (W.D. Wash. Feb. 4, 2021) (denying request for preliminary injunction against nonparty).

Here, Plaintiff hopes to have AAA reverse its decision to close the arbitrations and instead hold them open. To grant that relief, the Court must "issue the injunction against the person with the authority to carry out the Court's order," i.e., the AAA. *Gibbs v. Sanchez*, No. CV 16-9013-RGK (PLA), 2018 WL 5903893, at *3 (C.D. Cal. Feb. 2, 2018). But the AAA is not named in this action, nor could it be named.[4]

Courts routinely deny requests for injunctive relief, like Plaintiff's here, that are putatively raised against a named defendant but in effect seek to enjoin the conduct of a nonparty. *See, e.g.*, *McNae v. ARAG Ins. Co.*, No. 2:24-CV-00211-TL, 2025 WL 2402098, at *3 (W.D. Wash. Aug. 19, 2025) (denying TRO with prejudice where there was one named defendant but plaintiffs

---

[4] *See* AAA Consumer Rules (Amended Sep. 1, 2014), Rule 49(b) ("Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration.").

"appear actually to seek to enjoin the actions of their judgment-creditors, the King County Superior Court, the King County Sheriff's Office, or some combination of these actors—none of whom is a party to this case"); *Gibbs*, 2018 WL 5903893, at *3 (denying plaintiff's motion for preliminary injunction and TRO where court "lack[ed] jurisdiction to issue the requested injunction" because "the person with the authority to carry out the Court's order … . is not named or served as a defendant in this action"). Courts also deny requests to enjoin the actions of the AAA where it is not a party to the ligation. *See Garnett v. Topnotch Mgmt. LLC*, No. 2:25-CV-00229-MCS-SSC, 2025 WL 1543614, at *1 (C.D. Cal. Jan. 31, 2025) (denying request for district court to enjoin AAA arbitration where "[n]owhere in his petition does [plaintiff] identify the authority that vests the Court with the capacity to enjoin a nonparty, AAA"); *Herod v. DMS Sols. Inc.*, No. 4:23-CV-04465, 2025 WL 1937201, at *1 (S.D. Tex. July 15, 2025) ("This court lacks jurisdiction to enjoin the non-party AAA."). Indeed, granting relief against a nonparty would violate Due Process.

Plaintiff's attempt to circumvent that defect by requiring Valve to feign a litigation position adverse to its interests only confirms the impropriety of this request. Valve is not aware of any authority holding that a court, consistent with the First Amendment and Due Process, may order a party to adopt a litigation position and Plaintiff certainly does not cite any.

### C. Plaintiff May Not Seek Injunctive Relief On Behalf of an Uncertified Putative Class

Plaintiff's Motion for injunctive relief with respect to an uncertified class must be denied because he does not establish a basis for or entitlement to classwide relief.

*First*, Plaintiff has not even requested that the Court certify a provisional class, let alone satisfied the requirements of Rule 23. *See Dickinson v. Trump*, 174 F.4th 634, 646 (9th Cir. 2026) (observing that "the plaintiffs must 'affirmatively demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites" when declining to award injunctive relief for a provisional class); *accord Martin v. Read*, 825 F. Supp. 3d 1214, 1223 (D. Or. 2026) ("The Court, however, need not spend any further time on this issue now because Plaintiff has not yet



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

moved for class certification."). Nor could the Court certify a class. As Plaintiff admits, the Superseded SSA on which he relies contains a class action waiver. That waiver forecloses the class relief he seeks, making his class claims improper and his class action allegations immaterial. *See* Dkt. 13 at 10, 24-25; *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1122 (E.D. Cal. 2023) (dismissing class claims due to class action waiver); *Holman v. Bath & Body Works, LLC*, No. 120CV01603NONESAB, 2021 WL 5826468, at *26 (E.D. Cal. Dec. 8, 2021) (striking class allegations due to class action waiver), *report and recommendation adopted*, No. 1:20-CV-1603 JLT SAB, 2022 WL 463298 (E.D. Cal. Feb. 15, 2022).

*Second*, "the Court need not give preliminary injunctive relief to the putative class to provide complete relief" to Plaintiff. *Martin*, 825 F. Supp. 3d at 1222. Each putative class member is pursuing an *individual* arbitration against Valve. Even if Plaintiff were entitled to relief (and he is not), he has not established why the Court must enter a sweeping injunction governing thousands of separate proceedings involving absent class members. The fate of any individual absent class member's arbitration has no impact on Smith's own arbitration proceeding.[5]

### D. Plaintiff's Demand for Injunctive Relief Is Barred by Laches

A request for injunctive relief is barred by laches where a moving party acts with "unreasonable delay" that "prejudices the opposing party." *Crews v. Wachovia Mortg. Corp.*, No. CV103894SVWAGRX, 2010 WL 11601051, at *5 (C.D. Cal. July 23, 2010).

#### 1. Plaintiff Acted with Unreasonable Delay

Plaintiff's delay here is unreasonable by any measure. Plaintiff did not seek injunctive relief for nearly a year and a half after Valve advised that it would not pay the fees, thus putting the

---

[5] It is unclear whether Plaintiff's counsel even has authority to pursue arbitrations on behalf of the 14,911 claimants they purport to represent. Notably, earlier this week a federal court expressed "grave concerns" about Plaintiff's counsel's conduct in seeking to file opt-out notices for thousands of potential class members in a putative class action. Order at 1, *In re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, No. 3:23-md-3071 (M.D. Tenn. Aug. 24, 2026), Dkt. 1500. The court "received information raising questions about whether the people who were contacted [by Plaintiff's counsel] have the information they need to make that decision." *Id.* The court directed a curative notice be sent to "everyone [Plaintiff's counsel] contacted about this case, so that no one is excluded from the settlements unless they decide to be." *Id.*



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

arbitrations at risk of being closed. *See Burrows v. Onewest Bank*, No. C 12-00995 SBA, 2012 WL 12882754, at *2 (N.D. Cal. Apr. 5, 2012) (denying TRO on laches grounds where movant delayed five months); *Foster v. SCME Mortg. Bankers, Inc.*, No. CIV2:10-518WBSGGH, 2010 WL 1408108, at *1 (E.D. Cal. Apr. 7, 2010) (denying TRO on laches grounds where movant delayed eight months). Even crediting *arguendo* Plaintiff's apparent contention that he was entitled to wait until the AAA expressly told the parties that it would close the arbitrations, Plaintiff delayed another 40 days after being so informed before making this Motion.

That delay is all the more egregious given that Plaintiff's counsel sought separate relief from the AAA's payment deadline before this Court weeks ago. On August 10, 2026, this Court held an emergency conference in *Wolfire* at Plaintiff's counsel's urging. At that conference, Plaintiff's counsel advised the Court that counsel had already prepared a request for relief—presumably the TRO that Plaintiff's counsel now demands. *See supra* p. 10. Rather than pursuing that relief then, however, Plaintiff's counsel waited with the apparent goal of getting a second bite at the apple here.

**2. Valve Is Unfairly Prejudiced by Plaintiff's Delay**

Plaintiff's delay has also unfairly prejudiced Valve. Forcing a defendant to respond to a demand for injunctive relief at the eleventh hour is sufficient to establish unfair prejudice. *See Crews*, 2010 WL 11601051, at *5 ("[A] moving party's unreasonable delay prejudices the opposing party when the delay prevents the opposing party from compiling a sufficient response."); *Arizona Pub. Integrity All. Inc. v. Bennett*, 2014 WL 3715130, at *3 (D. Ariz. June 23, 2014) (denying TRO on laches grounds where "[p]laintiffs' unreasonable delay in filing th[e] Motion unduly prejudiced the [defendant's] ability to defend on the merits"); *Nat'l Council of Arab Ams. v. City of N.Y.*, 331 F. Supp. 2d 258, 266 (S.D.N.Y. 2004) (prejudice where plaintiffs forced defendant to respond within less than a week); *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 732, 748–49 (S.D.N.Y. 1996) (prejudice where plaintiff sought injunction 19 days before event).

But the unfair prejudice runs deeper. Between May and August 2025, Plaintiff's counsel pursued three separate proceedings for the very same relief he is seeking here (*i.e.*, payment of fees). Yet at no time between May 2025 and August 25, 2026, did Plaintiff's counsel seek an injunction in



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

any of these actions. Instead, he sprung that motion on Valve just three days before the AAA's payment deadline, which the AAA already extended at Plaintiff's counsel's request.

Plaintiff's counsel already made an attempt to forestall the AAA from closing the arbitrations, seeking an emergency conference in this case, *Wolfire*, and *Welty* to raise the AAA's upcoming payment deadline. On August 10, 2026, the Court held an emergency conference, and on August 21, the Court denied Plaintiff's counsel's motion for sanctions in *Wolfire*. Yet Plaintiff's counsel have now come back again seeking the same relief they already sought in the conference and that the court denied in *Wolfire*.

That whack-a-mole litigation strategy reinforces the unfair prejudice to Valve. *See* Transcript at 67-68, *Golub Cap., LLC v. NB Alts. Advisers, LLC*, No. 21-cv-3991 (S.D.N.Y. May 14, 2021), Dkt. 51 (Marks-Dias Ex. D) (denying motion for preliminary injunction on laches grounds where "plaintiff's litigation strategy is akin to a game of 'Whac-A-Mole,' where an adverse ruling is followed by a new theory in a new court but based on nearly identical allegations"); *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, No. 21-cv-00038-MKV, 2021 WL 535485, at *1 (S.D.N.Y. Feb. 12, 2021) (denying preliminary injunction where plaintiff's duplicative lawsuit in federal court "borders on an abusive litigation tactic and filing"); *accord Murray v. Pa. Mfrs.' Ass'n Ins. Co.*, No. CV 17-2282, 2018 WL 1508759, at *10 (E.D. Pa. Mar. 27, 2018) (admonishing plaintiff for "litigation strategy … akin to a game of whack-a-mole; each time the record evidence foreclosed one theory, [plaintiff] popped up with another one"); *Bauer v. City of Rossford*, No. 3:16 CV 722, 2017 WL 1179053, at *1 (N.D. Ohio Mar. 30, 2017) ("case resemble[d] a game of whack-a-mole" where after an adverse ruling plaintiffs sought "to amend their Complaint … to raise an entirely new legal theory").

## IV. **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion.



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED: August 28, 2026

I certify that this memorandum contains 8,153 words, in compliance with the Local Rules.

Respectfully submitted,

CORR CRONIN LLP

*s/ Blake Marks-Dias*

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Defendant Valve Corporation*