The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY SMITH, on behalf of himself and all persons similarly situated,

Plaintiff,

v.

VALVE CORPORATION,

Defendant.

No. 2:25-cv-01478-JNW

CLASS ACTION

DEFENDANT VALVE CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

PI NOTE ON MOTION CALENDAR: September 23, 2026



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF CONTENTS


I. INTRODUCTION ....................1

II. FACTUAL BACKGROUND ....................2

A. After Plaintiff Had Filed An Arbitration Demand With The AAA, Valve Updated The SSA To Provide For Resolution Of Disputes In Court, And Plaintiff Agreed To That Updated SSA ....................2

B. Notwithstanding Plaintiff's Agreement To The Updated SSA, Plaintiff Urged That The AAA Keep His Arbitration Open ....................3

C. Plaintiff's Counsel Brought Duplicative Court Proceedings Against Valve Seeking To Compel Valve To Pay Fees For AAA Arbitrations....................4

D. After More Than A Year Had Passed, The AAA Advised It Would Close Plaintiff's Arbitration, At Which Point Plaintiff's Counsel Sought Emergency Relief....................4

E. This Court Enters A TRO ....................5

III. THE PRELIMINARY INJUNCTION THAT PLAINTIFF PROPOSES IS BEYOND THIS COURT'S POWER TO GRANT....................6

A. The Court Cannot Enjoin The AAA, Who Is Not A Party Here ....................6

B. The First Amendment Precludes Entering A Prior Restraint Enjoining Valve From Stating Its True Litigation Position To The AAA ....................7

IV. PLAINTIFF MAY NOT SEEK INJUNCTIVE RELIEF ON BEHALF OF AN UNCERTIFIED PUTATIVE CLASS ....................9

V. INDEPENDENTLY, A PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT CARRIED HIS BURDEN OF CLEARLY SHOWING GROUNDS FOR A MANDATORY INJUNCTION....................10

A. Plaintiff Does Not Establish a Likelihood of Success on the Merits....................12

1. This Court Lacks Authority To Grant Plaintiff's Requested Relief Because Fee Disputes Are Solely Within the Purview of the AAA....................12

2. Plaintiff Cannot Plead a Breach Because the Complaint Admits Valve Has Arbitrated According to AAA Rules....................16

3. *Abbruzzese* Does Not Establish a Likelihood of Success on the Merits ....................17

B. Plaintiff Does Not Establish Irreparable Harm....................18

1. Plaintiff Has an Adequate Legal Remedy....................18

2. Plaintiff Can Pursue His Claims in Court....................19




**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

3. Plaintiff's Long Delay Refutes Irreparable Harm .....19

C. The Balance of the Equities Favors Valve .....20

D. The Public Interest Favors Valve .....20

VI. PLAINTIFF'S DEMAND FOR INJUNCTIVE RELIEF IS BARRED BY LACHES .....21

VII. PLAINTIFF DOES NOT MEET HIS EVIDENTIARY BURDEN .....22

VIII. CONCLUSION .....23




**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*New York Times v. United States*,
403 U.S. 713 (1971) ... 7

*A. A. R. P. v. Trump*,
605 U.S. 91 (2025) ... 9

*Valve Corp. v. Abbruzzese*,
No. 2:24-cv-1717, 2026 WL 1481630 (W.D. Wash. filed Oct. 18, 2024) ... 12, 19

*Alexander v. United States*,
509 U.S. 544 (1993) ... 7

*Badgett v. Sec. State Bank*,
807 P.2d 356 (Wash. 1991) ... 16, 17

*Beaver-Jackson v. Ocwen Fed. Bank*,
No. C07-0990 RSM, 2007 WL 3358068 (W.D. Wash. Nov. 13, 2007) ... 22

*BitTitan, Inc. v. SkyKick, Inc.*,
No. C15–0754 RSM, 2015 WL 5081130 (W.D. Wash. Aug. 27, 2015) ... 18

*Blocktree Properties, LLC v. Public Utility District No. 2 of Grant County Washington*,
783 F. App'x 769 (9th Cir. 2019) ... 19

*Broadcom Corp. v. Qualcomm Inc.*,
No. SACV 05-468-JVS(MLGx), 2005 WL 5925584 (C.D. Cal. Oct. 19, 2005) ... 21

*Burnell v. Lewis Brisbois Bisgaard & Smith LLP,*
No. C22-0265JLR, 2023 WL 7110485 (W.D. Wash. Oct. 27, 2023) ... 10

*Crews v. Wachovia Mortgage Corp.*,
No. CV 10–3894 SVW (AGRx), 2010 WL 11601051 (C.D. Cal. July 23, 2010) ... 21

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019) ... 7

*In re Dan Farr Prods.*,
874 F.3d 590 (9th Cir. 2017) ... 7, 8

*Davis v. Ramen*,
No. 1:06–cv–01216–AWI–SKO PC, 2010 WL 1791253 (E.D. Cal. May 4, 2010) ... 22

*Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*,
588 F.3d 884 (5th Cir. 2009) ... 2, 12, 14



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026) .......... 9

*Doe v. Bostock*,
No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) .......... 10, 11

*Doe v. Tenet*,
99 F. Supp. 2d 1284 (W.D. Wash. 2000) .......... 11

*Doe v. Uber Techs., Inc.*,
No. 19-CV-03310-JSC, 2022 WL 767094 (N.D. Cal. Mar. 11, 2022) .......... 8

*Elias v. Connett*,
908 F.2d 521 (9th Cir. 1990) .......... 19

*In re Franklin*,
No. 19-80661, 2020 WL 603900 (Bankr. M.D.N.C. Feb. 6, 2020) .......... 19

*Frazier v. X Corp.*,
155 F.4th 87 (2d Cir. 2025) .......... *passim*

*Frazier v. X Corp.*,
739 F. Supp. 3d 219 (S.D.N.Y. 2024) .......... 15

*Garnett v. Topnotch Management LLC*,
No. 2:25-cv-00229-MCS-SSC, 2025 WL 1543614 (C.D. Cal. Jan. 31, 2025) .......... 7

*Gibbs v. Sanchez*,
No. CV 16-9013-RGK (PLA), 2018 WL 5903893 (C.D. Cal. Feb. 2, 2018) .......... 6, 7

*Herod v. DMS Solutions Inc.*,
No. 4:23-cv-04465, 2025 WL 1937201 (S.D. Tex. July 15, 2025) .......... 7

*Hicks v. Neal*,
No. C 12–2207 SI (pr), 2012 WL 3791399 (N.D. Cal. Aug. 31, 2012) .......... 22

*Holman v. Bath & Body Works, LLC*,
No. 1:20-cv-01603-NONE-SAB, 2021 WL 5826468 (E.D. Cal. Dec. 8, 2021) .......... 9

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .......... 12, 14

*Hughes v. U.S.*,
953 F.2d 531 (9th Cir. 1992) .......... 19

*Idaho Rivers United v. United States Army Corps of Engineers*,
156 F. Supp. 3d 1252 (W.D. Wash. 2015) .......... 10

*Jacobson v. Fla. Secretary of State*,
974 F.3d 1236 (11th Cir. 2020) .......... 7



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Karsin v. Devor*,
No. CV 12-10715 DDP AJWX, 2012 WL 6721086 (C.D. Cal. Dec. 27, 2012)................20

*Lee v. Citigroup Corp. Holdings, Inc.*,
691 F. Supp. 3d 1157 (N.D. Cal. 2023)....................................................................15

*Levine v. United States District Court*,
764 F.2d 590 (9th Cir. 1985)..........................................................................7, 8

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
363 F.3d 1010 (9th Cir. 2004)...................................................................2, 12, 17

*Lloyd v. Buzell*,
No. 3:19-CV-06239-BHS-DWC, 2021 WL 87695 (W.D. Wash. Feb. 4, 2021) .................6

*Los Angeles Memorial Coliseum Commission v. National Football League*,
634 F.2d 1197 (9th Cir. 1980) .............................................................................18

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009)...............................................................................11

*Martin v. Read*,
825 F. Supp. 3d 1214 (D. Or. 2026)......................................................................9

*McNae v. ARAG Insurance Co.*,
2025 WL 2402098 (W.D. Wash. Aug. 19, 2025) ......................................................6

*Monroe v. Irvine Co. Apartment Communities, Inc.*,
No. CV 10-04654 SJO (SSx), 2010 WL 11601074 (C.D. Cal. July 16, 2010).................19

*Morales v. McAleenan*,
No. 19cv1575-LAB, 2019 WL 3974083 (S.D. Cal. Aug. 21, 2019)................................19

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022).....................................................................................15, 21

*Mosley v. Wells Fargo & Co.*,
No. 23-55478, 2024 WL 977674 (9th Cir. Mar. 7, 2024) ..........................................12

*National Council of Arab Ams. v. City of N.Y.*,
331 F. Supp. 2d 258 (S.D.N.Y. 2004) ...................................................................21

*Newton AC/DC Fund*, *L.P. v. Ermilov,*
No. 5:26-CV-05055-PCP, 2026 WL 2224231 (N.D. Cal. Aug. 3, 2026)..........................22

*Page v. Jefferson Transit Authority*,
No. C08-5456RJB, 2008 WL 11343659 (W.D. Wash. Nov. 6, 2008).........................17, 18

*Prehired, LLC v. Provins*,
No. 2:22-CV-00384-TLN-AC, 2022 WL 1093237 (E.D. Cal. Apr. 12, 2022) ....................8



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
388 U.S. 395 (1967)....16

*Prostek v. Lincare Inc.*,
662 F. Supp. 3d 1100 (E.D. Cal. 2023)....9

*Shaw v. Garcia*,
No. 24-CV-05826-HSG, 2025 WL 3483087 (N.D. Cal. Dec. 4, 2025)....8

*Silvey v. Numerica Credit Union*,
519 P.3d 920 (Wash. Ct. App. 2022)....16

*Simmons v. Herrera*,
No. C 09-0318 JSW (PR), 2010 WL 1233815 (N.D. Cal. Mar. 26, 2010)....16

*Stanley v. University of S. Cal.*,
13 F.3d 1313 (9th Cir. 1994)....10

*Tamayo v. Washington State Housing Fin. Commission*,
No. C13–1176RSL, 2013 WL 3873278 (W.D. Wash. July 24, 2013)....11

*Tillman v. Tillman*,
825 F.3d 1069 (9th Cir. 2016)....14, 15

*U.H.A. v. Bondi*,
822 F. Supp. 3d 1007 (D. Minn. 2026)....9

*V.L. v. Wagner*,
669 F. Supp. 2d 1106 (N.D. Cal. 2009)....9

*Valencia Barrera v. City of Lakewood*,
No. 3:25-CV-6086-RAJ-DWC, 2026 WL 1931743 (W.D. Wash. July 2, 2026)....6

*W. Watersheds Project v. Salazar*,
692 F.3d 921 (9th Cir. 2012)....20

*Wallrich v. Samsung Elecs. Am., Inc.*,
106 F.4th 609 (7th Cir. 2024).... *passim*

*Way.com, Inc. v. Singh*,
No. 3:18-cv-04819-WHO, 2018 WL 6704464 (N.D. Cal. Dec. 20, 2018)....19, 20

*X Corp. v. Bahr*,
No. 2:25-cv-02766-RGK-MBK, 2025 WL 2377826 (C.D. Cal. July 31, 2025)....15

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969)....6



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**STATUTES**

9 U.S.C. §§ 1, 2, 4 ........................................................................................................ 15, 16

Fed. R. Civ. P. 65(d) ........................................................................................................ 1, 6



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I. INTRODUCTION[1]

Plaintiff's request for a preliminary injunction is baseless and should be denied.

To start, the relief Plaintiff requests is not within this Court's power to grant. The Court cannot enter an injunction against the American Arbitration Association ("AAA"): it is not a party to this action nor is it alleged to be working in active concert with Valve. *See* Fed. R. Civ. 65(d). As to Valve, the relief that Plaintiff proposes—forcing Valve to pretend before the AAA that it does not believe the arbitrations should be closed—is a classic prior restraint precluded by the First Amendment. Respectfully, the Court's analysis may end there: the injunction Plaintiff seeks simply cannot issue.

The class-wide injunction that Plaintiff seeks is also beyond this Court's power to grant. As Ninth Circuit and Supreme Court precedent make clear, this Court cannot grant a class-wide injunction where the Plaintiff has not requested that the Court provisionally certify a class and has made no effort to show a class would comport with Rule 23. Plaintiff could never make that showing, including because the very agreement on which his claims are predicated contains a class action waiver.

Even if the Court could grant the class-wide injunctive relief requested here—and it cannot—Plaintiff's Motion must be denied because he does not meet his burden of establishing any, much less all, of the *Winter* factors applicable to mandatory injunctions:

*First*, Plaintiff does not show a likelihood of success on the merits. Plaintiff's claims cannot succeed for the reasons set forth in Valve's motion to dismiss and for summary judgment and left unaddressed in Plaintiff's Motion: (1) the Court lacks the authority to grant the relief Plaintiff ultimately seeks—namely, to order Valve to pay arbitral fees and (2) Plaintiff does not plead and cannot prove any breach of contract or the implied covenant of good faith and fair dealing. Four circuits—including the Ninth—and numerous district courts within this Circuit have held that

---

[1] Emphases are added and internal citations, quotations, and alterations are omitted unless noted. References to "Marks-Dias Ex." refer to exhibits to the declaration of Blake Marks-Dias, dated August 28, 2026. (Dkt. 44). References to "Supp. Ex." refer to exhibits to the supplemental declaration of Blake Marks-Dias, dated September 15, 2026.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

arbitration fee issues are procedural questions unreviewable by courts and reserved exclusively for arbitration providers or arbitrators. *See, e.g.*, *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1013 (9th Cir. 2004); *Frazier v. X Corp.*, 155 F.4th 87, 100 (2d Cir. 2025); *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 620 (7th Cir. 2024); *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009). Valve's good-faith, principled reason for non-payment of a $20.8 million invoice—that there is no agreement to arbitrate—does not breach any contract provision or implied covenant of good faith and fair dealing. On the contrary, it is entirely consistent with the AAA's own rules and procedures.

*Second*, Plaintiff does not establish irreparable harm. Plaintiff seeks relief directing the AAA to hold open cases that it has decided to close. But the putative harm Plaintiff identifies is not irreparable because it can be remedied by money. Plaintiff and his counsel, backed by litigation funding, may advance fees to permit their arbitrations to proceed, as Plaintiff's counsel have done for several claimants. Even if Plaintiff's arbitration were closed, he could pursue the same antitrust claim in court.

*Third*, the balance of the equities favors Valve. Plaintiff makes no showing that he will suffer prejudice in the absence of an injunction. Valve and the AAA—a nonparty—will be prejudiced, however, if a mandatory injunction is imposed on them.

*Fourth*, the public interest favors Valve. The public interest is not served by instructing a nonparty arbitral forum as to how to administer cases or forcing a party in an arbitration to take positions against its own interest.

In short, Plaintiff utterly fails to make the evidentiary showing required to obtain the extraordinary relief of a preliminary injunction (much less a mandatory preliminary injunction).

## II. FACTUAL BACKGROUND

### A. After Plaintiff Had Filed An Arbitration Demand With The AAA, Valve Updated The SSA To Provide For Resolution Of Disputes In Court, And Plaintiff Agreed To That Updated SSA

In 2023, Plaintiff's counsel filed arbitration demands with the AAA purportedly on behalf of Plaintiff and 14,910 other individuals. (Compl. ¶¶ 33-34.)



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Subsequently, in September 2024, Valve updated the Steam Subscriber Agreement ("SSA") to remove its arbitration agreement in response to (1) four arbitration rulings holding that the arbitration clause was unenforceable and (2) a new class action premised on those rulings. *See Valve Corp. v. Abbruzzese*, No. 2:24-cv-1717 (W.D. Wash. filed Oct. 18, 2024) ("*Abbruzzese*"), Dkts. 1-2. The Controlling SSA now provides for resolution of disputes in a state or federal court sitting in Washington. (Dkt. 14, Ex. A § 10.)[2] Plaintiff affirmatively agreed to the Controlling SSA on September 27, 2024. (Dkt. 14 ¶ 22.)

**B. Notwithstanding Plaintiff's Agreement To The Updated SSA, Plaintiff Urged That The AAA Keep His Arbitration Open**

After updating the SSA, Valve requested that the AAA close the arbitrations submitted by Plaintiff's counsel, and reimbursed Plaintiff and the other arbitration claimants $1,143,325 for initial filing fees they had paid to the AAA. (Compl. ¶¶ 35, 44.) At Plaintiff's counsel's urging, however, the AAA did not close the arbitrations. (Compl. ¶ 46.) The AAA instead sent Valve an invoice for $20.8 million for case management fees (14,911 claimants × $1,400/claimant). (*Id.* ¶¶ 40, 47.)

On April 23, 2025, Valve notified the AAA and Plaintiff's counsel that it would not be paying that invoice (Compl. ¶ 48) because the claimants (including Plaintiff) were no longer parties to arbitration agreements with Valve. Plaintiff's counsel requested that the AAA stay the arbitrations because Plaintiff's counsel were "preparing appropriate court filings" against Valve seeking to compel payment of the fee invoice under California Code of Civil Procedure § 1281.98(b)(3), and were "in the process of identifying a subset of the 14,911 Claimants that intend to proceed with their arbitration claims." (*See* Dkt. 41, Ex. 16.) On May 15, 2025, the AAA accommodated that request and administratively stayed the arbitrations. (Compl. ¶ 51; Dkt. 41, Ex. 17.)

---

[2] The SSA was modified to include the updated dispute resolution provision as of September 26, 2024. The SSA has since been updated twice but neither update is relevant to U.S. users or this action. The version updated on September 26, 2024, and subsequent versions are referred to collectively as the "Controlling SSA."



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### C. Plaintiff's Counsel Brought Duplicative Court Proceedings Against Valve Seeking To Compel Valve To Pay Fees For AAA Arbitrations

Plaintiff's counsel then commenced duplicative court proceedings in an effort to compel Valve to pay those AAA fees:

(1) On May 2, 2025, Plaintiff's counsel filed a putative class action in California, *Welty v. Valve Corp.*, No. 2:25-cv-02450 (W.D. Wash) (Dkt. 1), seeking an order compelling Valve to pay the case management fees. *Welty* has been transferred to this Court.

(2) On June 11, 2025, Plaintiff's counsel filed a motion for sanctions in *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW (W.D. Wash.) ("*Wolfire*") demanding that Valve pay the case management fees as a "sanction." *Wolfire*, Dkt. 467.

(3) On August 5, 2025, Plaintiff's counsel filed this putative class action, *Smith*, again seeking an order compelling Valve to pay fees.

In the 15 months between when the AAA administratively stayed the arbitrations at Plaintiff's counsel's request and Plaintiff filed this Motion, Plaintiff's counsel advanced (or asked to advance) fees for seven of the 14,911 claimants—one on December 17, 2025, and six others on various dates in April 2026. After identifying these seven Claimants in dribs and drabs over months—generating administrative burden for the AAA and for Valve—Plaintiff's counsel wrote the AAA on June 29, 2026, stating that they intended "to identify an additional group of approximately 100 claimants" for whom they would advance fees. (Marks-Dias Ex. A at 1.)

### D. After More Than A Year Had Passed, The AAA Advised It Would Close Plaintiff's Arbitration, At Which Point Plaintiff's Counsel Sought Emergency Relief

On July 17, 2026, the AAA advised that it would close the arbitrations on August 17, 2026, if the case management fees were not paid by that date. (Dkt. 41, Ex. 22.)

On July 30, 2026, this Court entered a stay of this action pending a potential appeal in *Abbruzzese*. (Dkt. 38.) Plaintiff did not ask to lift the stay at any time.



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

On August 3, 2026, Plaintiff's counsel wrote to this Court requesting an "Emergency Request for Status/Case-Management Conference" in *Wolfire*, *Welty*, and this case. (Dkt. 41, Ex. 24.) Plaintiff's counsel asked the Court to "hold a brief conference so it can address how to proceed before the [AAA's] deadline." (*Id.*) The Court scheduled an emergency status conference for August 10, 2026.

On August 7, 2026, the AAA again advised that it would close the arbitrations unless the fees were paid. At Plaintiff's counsel's urging, the AAA extended the payment deadline to August 31, 2026. (Marks-Dias Ex. B.)

At the August 10, 2026, emergency conference, Plaintiff's counsel sought relief from the AAA's payment deadline—i.e., the same relief sought here. After argument, the Court indicated that it would rule by the August 31, 2026, payment deadline. (Marks-Dias Ex. C at 14:1-6.)

On August 21, 2026, this Court denied Ryan Lally's motion for sanctions in *Wolfire*, which sought the same relief Plaintiff seeks here. (*Wolfire*, Dkt. 692.)

**E. This Court Enters A TRO**

On August 26, 2026, Plaintiff filed this Motion. In advance of the hearing, Plaintiff's counsel advanced arbitration fees for an additional 12 arbitrations, but not Plaintiff's. (Supp. Ex. G.)

On August 31, 2026, this Court held a hearing on Plaintiff's Motion. The Court questioned where in the Superseded SSA or the AAA Consumer Arbitration Rules it states that "Valve is required to pay this invoice." (Aug. 31, 2026, Tr. ("Tr.") at 4:19-24.) The Court further acknowledged the force of Valve's argument that "arbitrable fees, disputes, belong to AAA rather than to the court" (Tr. at 27:7-8). Nevertheless, the Court granted the TRO in part, including by barring Valve "from requesting, demanding or otherwise urging AAA to close, terminate, or decline to administer" the arbitrations at issue. (Dkt. 48; Tr. at 27:23-25.)



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## III. THE PRELIMINARY INJUNCTION THAT PLAINTIFF PROPOSES IS BEYOND THIS COURT'S POWER TO GRANT

### A. The Court Cannot Enjoin The AAA, Who Is Not A Party Here

The Court cannot grant this Plaintiff relief against the AAA. The AAA is not a party to this action. Indeed, by seeking to bring an arbitration before the AAA, Plaintiff agreed that the AAA could not be named in a judicial proceeding.[3] There is no reason to believe that this Court would have subject matter jurisdiction over such a proceeding: Plaintiff has no federal claim against the AAA or any claim for damages that could support diversity jurisdiction.

Nevertheless, Plaintiff seeks to enjoin the AAA to hold these arbitrations open. The Court's temporary restraining order directs that "the arbitrations will remain in whatever abeyance status is that AAA has held them in since [March 15, 2025], until the court can rule on the preliminary injunction." (Tr. at 27:20-23.) But to grant relief, the Court would have to "issue the injunction against the person with the authority to carry out the Court's order," i.e., the AAA. *Gibbs v. Sanchez*, 2018 WL 5903893, at *3 (C.D. Cal. Feb. 2, 2018).

The AAA is a nonparty and is not alleged to be working in "active concert" with Valve, the only defendant, and thus cannot be enjoined.[4] *See* Fed. R. Civ. P. 65(d)(2); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 112 (1969). As this Court has elsewhere recognized, this "Court lacks authority to direct" a nonparty "to perform any specific actions." *Valencia Barrera v. City of Lakewood*, 2026 WL 1931743, at *1 (W.D. Wash. July 2, 2026); *Lloyd v. Buzell*, 2021 WL 876951, at *2-3 (W.D. Wash. Feb. 4, 2021).

Courts routinely deny requests for injunctive relief, like Plaintiff's here, that are putatively raised against a named defendant but that actually seek to enjoin a nonparty, *see, e.g.*, *McNae v. ARAG Ins. Co.*, 2025 WL 2402098, at *3 (W.D. Wash. Aug. 19, 2025); *Gibbs*, 2018 WL 5903893,

---

[3] *See* AAA Consumer Rules (Amended Sep. 1, 2014), Rule 49(b) ("Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration.").

[4] Nor could Plaintiff reasonably so allege: the AAA and Valve are not in privity, and if the AAA were working in "active concert" with Valve, it would have closed the arbitrations months ago.



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

at *3, including in cases where parties have sought to enjoin the AAA, *see Garnett v. Topnotch Mgmt. LLC*, 2025 WL 1543614, at *1 (C.D. Cal. Jan. 31, 2025) (no authority "to enjoin a nonparty, AAA"); *Herod v. DMS Sols. Inc.*, 2025 WL 1937201, at *1 (S.D. Tex. July 15, 2025) ("This court lacks jurisdiction to enjoin the non-party AAA."). So too here.

That deficiency is not cured by the possibility that the AAA might voluntarily abide by a court order. If the Court cannot enjoin the AAA, a nonbinding order suggesting what the AAA could do is merely advisory and beyond a federal court's power to enter. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1269 (11th Cir. 2020) (district court "erred by reaching the merits and entering an injunction against nonparties whom it had no authority to enjoin" where court "had no justiciable case or controversy before it").

**B. The First Amendment Precludes Entering A Prior Restraint Enjoining Valve From Stating Its True Litigation Position To The AAA**

Plaintiff seeks to enjoin Valve from "requesting, demanding, urging, or otherwise seeking that the AAA close, terminate, dismiss, or decline to administer" the arbitrations at issue. (Dkt. 40, Ex. A ¶ 2.) That order, which would bar Valve from speaking in advance of its doing so, is a "prior restraint." *Alexander v. United States*, 509 U.S. 544, 551 (1993). "[P]ermanent injunctions—*i.e.,* court orders that actually forbid speech activities—are classic examples of prior restraints." *Id.* at 550.

"Prior restraints on speech present some of the most serious and the least tolerable infringement on free speech rights." *Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019). Accordingly, a prior restraint bears a "heavy presumption against its constitutional validity," *New York Times v. United States*, 403 U.S. 713, 714 (1971), and is "subject to the strict scrutiny standard of review," *In re Dan Farr Prods.*, 874 F.3d 590, 593 n.2 (9th Cir. 2017). Plaintiff's proposed injunction would require Valve to affirmatively and falsely state to the AAA that it favors maintaining the arbitrations.

A prior restraint may only be imposed if "the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest." *Levine v.*

*United States District Court*, 764 F.2d 590, 595 (9th Cir. 1985). Enjoining Valve from stating its litigation position at the risk of being sanctioned for contempt cannot meet that demanding test. Valve's advocacy on its own behalf before the AAA presents no "clear and present danger" to life and limb, nor does it present any "serious and imminent threat" to a protected interest. *Id.* Valve has no power to close these arbitrations, and Plaintiff's proposal to enjoin Valve from speaking is offered only to circumvent that obvious defect in its request for relief. Further, the AAA has long been aware that Valve's view is that these arbitrations should be closed, and as the Court has acknowledged, it is not even clear that Valve's position is wrong. Such an injunction would serve only to chill Valve's advocacy before the AAA, while permitting Plaintiff's counsel to argue without any constraint.

The Ninth Circuit has rejected prior restraints imposed in the context of civil litigation as unconstitutional. In *Dan Farr*, *supra*, the San Diego Comic-Con ("SDCC") sued a rival convention promoter for trademark infringement. The rival promoter stated on social media its view that SDCC's lawsuit was unjustified. SDCC obtained a court order barring the promoter from making such comments and then successfully moved for contempt sanctions. The Ninth Circuit, acting on mandamus, vacated those orders, because there were no exceptional circumstances warranting the prior restraint: "Unlike other cases involving attorneys or the press, grisly crimes or national security, the district court's orders silence one side of a vigorously litigated, run-of-the-mill civil trademark proceeding." 874 F.3d at 596. Courts within the Ninth Circuit have likewise refused to gag parties to civil litigations. *E.g.*, *Shaw v. Garcia*, 2025 WL 3483087 (N.D. Cal. Dec. 4, 2025) (citing *Dan Farr*; declining to enter protective order barring plaintiff from contacting parties with whom defendant did business); *Prehired, LLC v. Provins*, 2022 WL 1093237 (E.D. Cal. Apr. 12, 2022); *Doe v. Uber Techs., Inc.*, 2022 WL 767094 (N.D. Cal. Mar. 11, 2022). There is likewise no basis for imposing a prior restraint on Valve here: any such injunction could never survive strict scrutiny.



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## IV. PLAINTIFF MAY NOT SEEK INJUNCTIVE RELIEF ON BEHALF OF AN UNCERTIFIED PUTATIVE CLASS

It is well settled that a plaintiff cannot seek injunctive relief on behalf of an uncertified class, except under one of these three circumstances: (1) he demonstrates affirmative compliance with Federal Rule of Civil Procedure 23; (2) he establishes that complete relief for himself requires relief for the absent class; or (3) he identifies how injunctive relief extending to the absent class is necessary to preserve the Court's jurisdiction. *Martin v. Read*, 825 F. Supp. 3d 1214, 1222-23 (D. Or. 2026). None of those criteria are satisfied here.

**1.** Plaintiff has not even requested that the Court certify a provisional class, let alone demonstrated compliance with Rule 23. *See Dickinson v. Trump*, 174 F.4th 634, 646 (9th Cir. 2026) (refusing injunctive relief for a provisional class and observing that "the plaintiffs must 'affirmatively demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites"); *accord Martin,* 825 F. Supp. 3d at 1223 ("The Court, however, need not spend any further time on this issue now because Plaintiff has not yet moved for class certification.").

Nor could the Court certify a class. As Plaintiff acknowledges, the Superseded SSA on which he relies contains a class action waiver. That waiver forecloses the class relief he seeks. *See* Dkt. 13 at 10, 24-25; *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1122 (E.D. Cal. 2023) (dismissing class claims due to class waiver); *Holman v. Bath & Body Works, LLC*, 2021 WL 5826468, at *26 (E.D. Cal. Dec. 8, 2021) (striking class allegations), *report and recommendation adopted*, 2022 WL 463298 (E.D. Cal. Feb. 15, 2022).

Plaintiff's counsel argued that there are a "couple of other courts that have done this before, without requiring provisional certification." (Tr. at 24:8-10.) But in those cases, plaintiffs had moved for class certification and showed that they were likely to satisfy Rule 23. *See U.H.A. v. Bondi*, 822 F. Supp. 3d 1007 (D. Minn. 2026); *A. A. R. P. v. Trump*, 605 U.S. 91 (2025) (same); *V.L. v. Wagner*, 669 F. Supp. 2d 1106 (N.D. Cal. 2009). Not so here.

**2.** It is clear "the Court need not give preliminary injunctive relief to the putative class to provide complete relief" to Plaintiff. *Martin*, 825 F. Supp. 3d at 1222. Each putative class



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

member is pursuing an *individual* arbitration against Valve. The Court need not enter a sweeping injunction governing thousands of separate proceedings involving absent members of the putative class to grant Plaintiff relief.[5]

**3.** Injunctive relief on behalf of the putative class is not required to retain jurisdiction. Plaintiff posits that failure to award injunctive relief will render this matter moot. Not so. Plaintiff seeks both injunctive relief and "an award of damages to Plaintiff and the Class." (Compl. ¶ 89(a)-(d).) Plaintiff does not assert that denial of injunctive relief will moot his damages claim. *Simmons v. Herrera*, 2010 WL 1233815, at *3 (N.D. Cal. Mar. 26, 2010).

## V. INDEPENDENTLY, A PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT CARRIED HIS BURDEN OF CLEARLY SHOWING GROUNDS FOR A MANDATORY INJUNCTION

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Idaho Rivers United v. United States Army Corps of Eng'rs*, 156 F. Supp. 3d 1252, 1259 (W.D. Wash. 2015) (emphasis in original). To obtain a preliminary injunction, a movant "must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Burnell v. Lewis Brisbois Bisgaard & Smith LLP*, 2023 WL 7110485, at *2 (W.D. Wash. Oct. 27, 2023). Plaintiff does not and cannot make any of those showings—much less show that the law and facts clearly favor his position.

"Mandatory injunctions are particularly disfavored, and the district court should deny such relief unless the facts and law *clearly favor* the moving party." *Doe v. Bostock*, 2024 WL 2861675,

---

[5] It is unclear whether Plaintiff's counsel even have authority to pursue arbitrations on behalf of the 14,911 claimants they purport to represent. Notably, last month a federal court expressed "grave concerns" about Plaintiff's counsel's conduct in seeking to file opt-out notices for thousands of potential class members in a putative class action. Order at 1, *In re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, No. 3:23-md-3071 (M.D. Tenn. Aug. 24, 2026), Dkt. 1500. The court "received information raising questions about whether the people who were contacted [by Plaintiff's counsel] have the information they need to make that decision." *Id.* The court directed a curative notice be sent to "everyone [Plaintiff's counsel] contacted about this case, so that no one is excluded from the settlements unless they decide to be." *Id.*

at *2 (W.D. Wash. June 6, 2024); *accord Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). A mandatory injunction "orders a responsible party to take action, while [a] prohibitory injunction prohibits a party from taking action." *Bostock*, 2024 WL 2861675, at *2.

The heightened standard for mandatory injunctions applies here because Plaintiff seeks an order directing both nonparty AAA and Valve to act, mandating as follows:

(i) That Valve reverse the position it has taken in arbitration proceedings and "notify the AAA in writing" of this proposed court-ordered about-face. (Mot. 15.) Plaintiff's proposed order describes in detail this "[a]ct required" of Valve. (Dkt. 40, Ex. B.)

(ii) That the AAA order that the arbitrations shall "remain in [] abeyance … until this case is resolved" (Mot. 15), thereby reversing its prior decision to close the arbitrations unless fees are paid.

Plaintiff characterizes the proposed injunction as requiring Valve to "refrain from acting" (Mot. 9), but in fact seeks to compel performance of several affirmative acts. *See Doe v. Tenet*, 99 F. Supp. 2d 1284, 1294 (W.D. Wash. 2000) (denying motion where plaintiff sought to compel defendants to "commence performance of [a] mandatory act"); *Tamayo v. Washington State Hous. Fin. Comm'n*, 2013 WL 3873278, at *3-4 (W.D. Wash. July 24, 2013) (denying motion under mandatory injunction standard where plaintiffs "do not seek to preserve the status quo" but would "require[] Defendants to *act*").

Plaintiff's cases do not help him. In *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009), the Ninth Circuit held that an injunction was mandatory because the injunctive "remedy … required [a party] to take the affirmative step of recalling its product." *Id.* at 879. Plaintiff also seeks to mandate affirmative acts here. Plaintiff purports to quote *Marlyn* for the proposition that an order directing a party to refrain from acting is a "quintessential prohibitory injunction," but *Marlyn* does not even contain that phrase.

Plaintiff quotes this Court's *Abbruzzese* decision for the proposition that whether injunctive relief is mandatory "'turns on what the order directs the enjoined party to do.'" (Mot. 9.) But Plaintiff omits the remainder of that sentence, which explains that an order is prohibitory where it

"would direct Defendants to … halt conduct, not to undertake it." *Abbruzzese*, 2026 WL 1481630, at *6. Here, Plaintiff's proposed injunction would require affirmative acts.

**A. Plaintiff Does Not Establish a Likelihood of Success on the Merits**

**1. This Court Lacks Authority To Grant Plaintiff's Requested Relief Because Fee Disputes Are Solely Within the Purview of the AAA**

Plaintiff cannot succeed on the merits because the Court lacks the authority to grant the ultimate, purely procedural, relief in arbitration that Plaintiff is seeking. Under the FAA, "'procedural' questions which grow out of [a] dispute [in arbitration] and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (emphasis in original); *accord Mosley v. Wells Fargo & Co.*, 2024 WL 977674, at *1 (9th Cir. Mar. 7, 2024) ("It is well-settled that questions of procedure relating to arbitration are outside of the purview of the federal courts.").

Arbitration fee disputes raise procedural questions that are not reviewable by a court and are instead within the sole purview of the arbitrator or arbitration provider. *See Lifescan*, 363 F.3d at 1013 (reversing district court order compelling party "to pay its pro-rata share of the fees" because fees were governed by AAA rules and subject to AAA's discretion); *accord Frazier*, 155 F.4th at 100 (court "lacked authority" to order party "to pay … arbitral fees"); *Wallrich*, 106 F.4th at 620 (district court "exceeded its authority and the scope of the arbitration agreement by ordering Samsung to pay the AAA filing fees"); *Dealer Comput.*, 588 F.3d at 887 ("Payment of fees is a procedural condition precedent that the trial court should not review.").

*Frazier* illustrates the point. There, a company's former employees initiated arbitrations against the company before JAMS on various employment-related claims. However, "months into the proceedings, [the company] disagreed with JAMS about how the arbitral fees should be allocated between the parties," and contended that only an arbitrator—not JAMS—could resolve the fee dispute. *Frazier*, 155 F.4th at 90. The company declined to pay the JAMS fees, and so "the proceedings ground to a halt." *Id.* JAMS stayed the proceedings, and the employees sued seeking to compel the company to pay the JAMS fees. *Id.*



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

The Second Circuit reversed the trial court's order mandating payment of fees, holding that "whether a party has failed to pay arbitration fees in an ongoing arbitral proceeding is a procedural issue entrusted to the arbitrator or arbitral body—not the court—for resolution within that proceeding." *Frazier*, 155 F.4th at 91. JAMS was best positioned to interpret and apply its own rules governing payment of fees. *Id.* at 99-101. The court saw "no role for a court to involve itself in a dispute in an ongoing arbitral proceeding over a party's payment of fees or compliance with arbitral policies." *Id.* at 100.

Here, too, Plaintiff asks the Court to resolve a dispute over AAA fees, with Plaintiff seeking an order compelling Valve to pay arbitral fees. (*See* Compl. ¶¶ 66-71, 77, 81-84, 88.) But as the Court noted at the hearing, Valve's argument that "arbitrable fees, disputes, belong to AAA rather than to the court . . . has force." (Tr. at 27:7-8.) Indeed, *Lifescan*, *Frazier*, *Wallrich*, and *Dealer Computer* make clear that questions about the payment of fees and the consequences of non-payment are reserved for the AAA.

The now-superseded version of the Steam Subscriber Agreement on which Plaintiff relies in his Complaint (the "Superseded SSA") and the AAA's rules further support that conclusion. The Superseded SSA provides that the arbitration "will be governed by the Consumer Arbitration Rules" of the AAA. (Compl. ¶ 30; Compl. Ex. A.) Those rules provide that the AAA's "role is to manage the administrative aspects of the arbitration," such as "handling the fees associated with the arbitration." (Dkt. 16, Ex. 8 at 6.) The AAA Mass Arbitration Supplementary Rules, which apply here, include fees schedules as well as remedies in the event of non-payment. (Dkt. 16, Ex. 9 at MA-1; Compl. ¶ 36.)

Rule MA-10(d) provides that if fees "have not been paid in full, the AAA may notify the parties in order that one party may advance the required payment within the time specified." (Dkt. 16, Ex. 9.) "If payments due are not made" and "no arbitrator has yet been appointed," the AAA "may suspend or terminate those proceedings." (Dkt. 16, Ex. 9 at MA-10(e); *accord* Dkt. 16, Ex. 8 at R-54(a); *id.* at R-54(c).)

Nothing in the Superseded SSA "suggests that the parties agreed to invoke judicial



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

oversight of those decisions or procedures," *Frazier*, 155 F.4th at 100, or to otherwise involve the Court in arbitral fee disputes. If Plaintiff wishes to pursue his arbitration, his "remedy lies with [the AAA]," not with the Court. *Id.* at 101. Indeed, as *Wallrich* explained, Plaintiff may "advance[] [the] fees and continue[] with the arbitration." 106 F.4th at 622. His counsel have already advanced fees for several claimants.

Alternatively, Plaintiff "can … pursue [his] claims on the merits in district court," where there is an already-pending putative class action. *Wallrich*, 106 F.4th at 622. But because this Court lacks the authority to resolve this dispute over AAA fees, Plaintiff cannot show a likelihood of success on the merits and the Complaint should be dismissed. *See Howsam*, 537 U.S. at 82 (affirming dismissal of action to enjoin arbitration because arbitrator should decide procedural question at issue); *Wallrich*, 106 F.4th at 622 ("the consumers cannot compel [defendant] to pay the AAA's administrative fees"); *Dealer Comput.*, 588 F.3d at 888-89 (remanding "to dismiss" action seeking order compelling payment of fees).

The Court pointed at the hearing to the Ninth Circuit's decision in *Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016), which held that a case should "continue in court" when the AAA closed the arbitration because a party did not pay the fees. *Id.* at 1076. That is Valve's position here, and so *Tillman* undermines rather than supports Plaintiff's request. *Tillman* reaffirmed *Lifescan*, which the *Tillman* court noted "goes a long way toward resolving this dispute," and recognized that "Tillman's arbitration likewise has been had in accordance with the terms of the arbitration agreement" and the AAA rules. *Id.* at 1073-74. *Tillman* had nothing to do with a request for an injunction compelling a party to pay arbitration fees; it was about only whether the court should dismiss the case after the arbitration was terminated by the AAA.

The *Tillman* court left open in dicta the question what should happen when nonpayment is by "a party who has the ability to pay but simply chooses not to," i.e., "in the event of a party's willful nonpayment." 825 F.3d at 1075 n.1. That dicta does not help Plaintiff:

*First*, the Ninth Circuit explicitly noted that it "need not decide how to construe" Sections 3 and 4 of the FAA "in the event of a party's willful nonpayment of an arbitrator's fees." *Tillman*,

825 F.3d at 1075 n.1.

*Second*, even if the statement were not dicta, Valve's nonpayment is not "willful" disregard of the invoice or "intentional noncompliance with an arbitrator's rules." *Tillman*, 825 F.3d at 1075 n.1. Rather, Valve has consistently maintained that there is no agreement to arbitrate under the Controlling SSA and that the proposed arbitrations are *ultra vires*.

*Third*, the decade-old dicta in *Tillman* pre-dates intervening appellate authority from the Second, Fifth, and Seventh Circuits holding that fee disputes are reserved for the arbitrator or arbitration provider regardless of the reasons for non-payment. There is no basis for the Court to interfere with the AAA's exercise of its discretion.

Indeed, the district court in *Frazier* relied on the dicta in *Tillman* to compel a party to pay arbitration fees. *Frazier v. X Corp.*, 739 F. Supp. 3d 219, 224 (S.D.N.Y. 2024). But the Second Circuit reversed, holding that "Twitter's refusal to pay the fees—and JAMS's discretionary decision to halt the arbitrations as a result— does not amount to a 'failure, neglect, or refusal ... to arbitrate' by Twitter that the district court was empowered to remedy under 9 U.S.C. § 4." *Frazier*, 155 F.4th at 101. This Court should reject Plaintiff's invitation to commit the same error.

*Fourth*, *Tillman* suggested that "it may be contrary to 'the structure and purpose of the FAA'" to permit a party to choose not to pay arbitration fees. 825 F.3d at 1075 n.1. But, as the Supreme Court subsequently explained, the purpose of the FAA is to "hold a party to its arbitration contract just as the court would to any other kind," not to "devise novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Where, as here, a contract permits a party to decline to pay a fee and provides for the consequence of non-payment, the court must enforce those terms as written. As *Wallrich* and *Frazier* hold, that analysis does not change where the contract is an arbitration agreement.

*Fifth*, post-*Tillman*, district courts within this Circuit have concluded that final arbitration occurred when parties failed to pay fees—without analyzing the reason for the failure to pay. *See, e.g.*, *Lee v. Citigroup Corp. Holdings, Inc.*, 691 F. Supp. 3d 1157 (N.D. Cal. 2023); *X Corp. v. Bahr*, 2025 WL 2377826 (C.D. Cal. July 31, 2025).



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiff cannot avoid this result by asserting common law claims for breach of contract and breach of the duty of good faith and fair dealing. Federal law applies to Plaintiff's claims regardless of how they are styled. Unless the parties agree otherwise, the FAA applies to arbitration agreements involving interstate commerce, and federal courts are bound to apply it. *See* 9 U.S.C. §§ 1, 2; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (applying FAA in diversity case; explaining that "[f]ederal courts are bound to apply rules enacted by Congress with respect to matters—here a contract involving commerce—over which it has legislative power"). Here, the Complaint expressly pleads that the parties' Superseded SSA involves interstate commerce. (Compl. ¶ 29 (quoting agreement); *id.* ¶¶ 11-13 (describing interstate character of parties' relationship).) The Superseded SSA also expressly provides that the FAA "governs arbitration." (Compl. Ex. A § 10.) Therefore, the FAA, not state law, applies.

### 2. Plaintiff Cannot Plead a Breach Because the Complaint Admits Valve Has Arbitrated According to AAA Rules

Plaintiff also cannot show a likelihood of success on the merits because Plaintiff cannot plead or prove a claim for breach of contract or breach of the covenant of good faith and fair dealing. To state such a claim, a plaintiff must allege, among other things, that the defendant breached the contract at issue. *See Silvey v. Numerica Credit Union*, 519 P.3d 920, 926 (Wash. Ct. App. 2022); *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) (duty of good faith and fair dealing "requires only that the parties perform in good faith the obligations imposed by their agreement"). Valve's refusal to pay the $20.8 million disputed AAA invoice is not a breach of the parties' Superseded SSA as a matter of law.

Plaintiff alleges that "Valve's refusal to pay necessary the [sic] AAA fees is an anticipatory, willful and deliberate breach of" the Superseded SSA. (Compl. ¶ 50.) Plaintiff's counsel also relied at the TRO hearing on the statement in the Superseded SSA that "If you seek $10,000 or less, Valve agrees to promptly reimburse your filing fee and your share, if any, of AAA's arbitration costs, including arbitrator compensation, unless the arbitrator determines your claims are frivolous or were filed for harassment." (Tr. at 23:5-9.) But Plaintiff has not alleged any breach of that



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

statement. As Plaintiff acknowledges, the Superseded SSA provides only that the "arbitration will be governed by the Consumer Arbitration Rules." (Compl. ¶¶ 29-30, 81.) Plaintiff further acknowledges that the Consumer Arbitration Rules require Valve to reimburse only filing fees and arbitrator compensation. (*Id.* ¶¶ 31, 82.) Plaintiff acknowledges that Valve paid the filing fees, and no arbitrator compensation is due because no arbitrators have yet been appointed. (*Id.* ¶¶ 37-38, 40-41.) Plaintiff has therefore not alleged a violation of the Consumer Arbitration Rules or breach of the Superseded SSA.

Further, under the Consumer Arbitration Rules, if a party refuses to pay an invoice, the other party may advance those fees, and the AAA may suspend or terminate the arbitration in the event of nonpayment. (*See* pp. 13-14, *supra*.) Numerous courts have held that a refusal or failure to pay arbitral fees under the AAA framework does not constitute a "failure, neglect, or refusal" to arbitrate—i.e., a breach of the arbitration agreement. *See Lifescan*, 363 F.3d at 1013; *Wallrich*, 106 F.4th at 620; *Frazier*, 155 F.4th at 101. Here, Valve declined to pay a disputed $20.8 million invoice for case management fees because there is no longer an agreement to arbitrate. The AAA followed its procedures given that decision. (Compl. ¶¶ 70, 75.) That complies with the Superseded SSA.

Nor does the duty of good faith and fair dealing support such a claim. That duty does not "inject substantive terms into the parties' contract" or create a "free-floating duty of good faith unattached to the underlying legal document." *Badgett*, 807 P.2d at 360. Plaintiff points to no provision of the Superseded SSA or AAA Consumer Arbitration Rules that Valve violated.

**3. *Abbruzzese* Does Not Establish a Likelihood of Success on the Merits**

Plaintiff does not address any of the above defects that preclude a showing of likelihood of success on the merits, each of which Valve raised in its motion to dismiss or for summary judgment. (Dkt. 13.) Plaintiff's failure to "in any manner, address the merits of his underlying claims" and Valve's arguments is fatal to this Motion. *Page v. Jefferson Transit Auth.*, 2008 WL 11343659, at *2 (W.D. Wash. Nov. 6, 2008) (denying preliminary injunction where plaintiff "fail[ed] to address the likelihood of success on the merits").



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiff argues only that he is likely to establish that he is not bound by the Controlling SSA that requires his claims to proceed in court. But in fact Plaintiff is so bound. Plaintiff relies on this Court's preliminary decision in *Abbruzzese*, which the Court has since certified for interlocutory appeal. While Valve respectfully disagrees with this Court's holding in *Abbruzzese*, that case is distinguishable. There, this Court reasoned that enforcing the Controlling SSA's forum provision would "fall hard on the Defendants" by "unwind[ing] the work and expense" they incurred and "threaten[] awards[]" they secured or were close to securing. (*Abbruzzese*, Dkt. 169 at 24, 28.) Here, Plaintiff's arbitration and the arbitrations of the other putative class members have not commenced. Indeed, the AAA has not even assigned merits arbitrators.

**B. Plaintiff Does Not Establish Irreparable Harm**

**1. Plaintiff Has an Adequate Legal Remedy**

Plaintiff cannot show that he is likely to suffer irreparable harm because he can be compensated by monetary damages. "[M]onetary injury is not normally considered irreparable." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *accord BitTitan, Inc. v. SkyKick, Inc.*, 2015 WL 5081130, at *8 (W.D. Wash. Aug. 27, 2015); *Page*, 2008 WL 11343659, at *2 (similar).

The only harm Plaintiff identifies is monetary. The Complaint demands that Valve pay fees for his arbitration and thousands of others so the AAA will administer them. But under AAA rules, Plaintiff's counsel may advance those fees. *See* p. 13, *supra*. Plaintiff's counsel urged the AAA not to close the arbitrations because they intended to invoke this rule. (*See* Dkt. 41, Ex. 16; *see also* Marks-Dias Ex. A at 1, 5-6.) Indeed, Plaintiff's counsel have done exactly that for 19 arbitrations. (*See* Marks-Dias Exs. E-F; Supp. Ex. G.) Plaintiff's counsel also told the AAA they intended to advance fees for many other arbitrations yet never did so.

Accordingly, Plaintiff and the putative class members, whose counsel are backed by a litigation funder (Dkt. 13 at 7; Dkt. 16, Exs. 1-2), can prevent the harm Plaintiff identifies—closure of the arbitrations—by making that payment and then seeking to recover the fees. *See Wallrich*, 106 F.4th at 622. Here, Plaintiff's individual fees are only $1,400. "A cost a party elects to incur, and

that money could repay, is not the irreparable harm that warrants an extraordinary remedy." *Abbruzzese*, 2026 WL 1481630, at *10. Plaintiff has not offered any evidence that he or his counsel are unable to advance the fees for his arbitration. *See infra* Part VII; *Elias v. Connett*, 908 F.2d 521, 526 (9th Cir. 1990) (plaintiff "has not offered any evidence to support his claim that he cannot pay his assessments" and thus plaintiff "has a remedy at law"). Nor has Plaintiff offered evidence as to which putative class members are or are not able to advance the fees in their arbitrations.

More fundamentally, "the claim of mere financial hardship does not establish irreparable harm." *Hughes v. U.S.*, 953 F.2d 531, 536 (9th Cir. 1992); *see also, e.g.*, *Blocktree Properties, LLC v. Pub. Util. Dist. No. 2 of Grant Cnty. Washington*, 783 F. App'x 769, 770 (9th Cir. 2019) (unpublished) (no irreparable harm because "monetary harm does not constitute an immediate threat of irreparable harm"); *In re Franklin*, 2020 WL 603900, at *4 (Bankr. M.D.N.C. Feb. 6, 2020) ("perceived inability to pay … is not a justification for finding irreparable harm").

**2. Plaintiff Can Pursue His Claims in Court**

Even if the AAA closes Plaintiff's arbitration, he will not be harmed: he can pursue his antitrust claims in court. Plaintiff is already a putative class member in the pending *Wolfire* action, and he is also free to pursue his claims in his own litigation. *See Morales v. McAleenan*, 2019 WL 3974083, at *2 (S.D. Cal. Aug. 21, 2019) (denying request for injunctive relief where plaintiff "can continue to litigate" his case before the relevant administrative body); *Monroe v. Irvine Co. Apartment Communities, Inc.*, 2010 WL 11601074, at *3 (C.D. Cal. July 16, 2010) (because "Plaintiff may pursue her instant claims in state court, she cannot establish that she will suffer irreparable harm if immediate injunctive relief is not provided"); *accord Wallrich*, 106 F.4th at 622.

**3. Plaintiff's Long Delay Refutes Irreparable Harm**

Plaintiff's extraordinary delay also defeats any claim of irreparable harm. Delay "implies a lack of urgency and irreparable harm." *Way.com, Inc. v. Singh,* 2018 WL 6704464 (N.D. Cal. Dec. 20, 2018). Here, Plaintiff waited *more than a year* after Valve notified Plaintiff and the AAA on April 23, 2025, that it would not pay the case management fees in the arbitrations to seek



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

injunctive relief. *Supra* pp. 3-5. Plaintiff and his counsel were therefore on notice that the AAA may close the arbitrations in accordance with its own rules if Plaintiff's counsel did not advance the fees. *See* AAA Consumer Rules (Amended Sep. 1, 2014) (Dkt. 16, Ex. 8), at R-54(d).)[6] Yet Plaintiff did not seek injunctive relief then or at any time over the next 16 months. *See W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (affirming denial of preliminary injunction where plaintiff waited *seven months* to seek relief); *Way.com*, 2018 WL 6704464, at *11 (*three months*); *Karsin v. Devor*, 2012 WL 6721086, at *2 (C.D. Cal. Dec. 27, 2012) (*two months*).

Plaintiff contends his delay is excused because, on May 15, 2025, the AAA agreed to hold the arbitrations in abeyance. But there was always a possibility that the AAA would decide to close the arbitrations, and eventually it did. Any excuse for delay disappeared on July 17, 2026, when the AAA informed the parties that it would close the arbitrations on August 17, 2026, if Plaintiff's counsel failed to advance case management fees by that date. *Supra* pp. 4-5. Yet Plaintiff waited another *40 days* after July 17, 2026, to pursue injunctive relief. *Supra* p. 5.

**C. The Balance of the Equities Favors Valve**

The balance of the equities tips decidedly against Plaintiff and in favor of Valve. Plaintiff has made no showing that he will lose his claims if his arbitration is closed, nor can he: under the Controlling SSA, he may pursue them in court. Nor does Plaintiff dispute that he and other members of the putative class may advance the case management fees to pursue their arbitrations—none of which have proceeded to arbitrator appointment, much less the merits.

**D. The Public Interest Favors Valve**

The public interest is not served by an injunction that commandeers arbitral administration and a party's litigation strategy. *See, e.g.*, *Wallrich*, 106 F.4th at 620 (reversing district court order that "disturb[ed] the AAA's judgment" to terminate, rather than stay, proceedings upon

---

[6] Lead Plaintiff's counsel Gary Mason is a seasoned litigator "whose firm has 10 pending mass arbitrations." *Gary Mason Speaks with ALM on Mass Arbitration*, Mason & Perry LLP (Mar. 18, 2024) (citing *How a Plaintiffs Lawyer Armored Up for the Mass Arbitration Battle*, Law.com (Mar. 5, 2024), available at https://www.masonllp.com/wp-content/uploads/2024/03/Article-How-a-Plaintiffs-Lawyer-Armored-Up-for-the-Mass-Arb-Battle.pdf).

nonpayment where claimants declined to advance fees).

Plaintiff cites the FAA's "equal footing policy," but the Supreme Court has made clear that principle requires enforcing arbitration agreements like ordinary contracts. *See Morgan*, 596 U.S. at 412. The parties will have "fully arbitrated" under the Superseded SSA that Plaintiff invokes upon termination by the AAA for nonpayment. *Wallrich*, 106 F.4th at 620. "[A]ll the law requires is that the parties arbitrate according to the terms of their agreement"; the public interest is not served by requiring more. *Id.* at 621.

## VI. PLAINTIFF'S DEMAND FOR INJUNCTIVE RELIEF IS BARRED BY LACHES

A request for injunctive relief is barred by laches where a moving party acts with "unreasonable delay" that "prejudices the opposing party." *Crews v. Wachovia Mortg. Corp.*, 2010 WL 11601051, at *5 (C.D. Cal. July 23, 2010).

*First*, Plaintiff's delay here is unreasonable. Plaintiff did not seek injunctive relief for nearly a year and a half after Valve advised that it would not pay the fees, thus putting the arbitrations at risk of being closed. *See Broadcom Corp. v. Qualcomm Inc.*, 2005 WL 5925584, at *6 (C.D. Cal. Oct. 19, 2005) (denying preliminary injunction for laches where movant delayed four months). Even if Plaintiff were entitled to wait until the AAA expressly stated it would close the arbitrations, Plaintiff delayed another 40 days after that before making this Motion.

*Second*, Plaintiff's delay has also unfairly prejudiced Valve. Forcing a defendant to respond to a demand for injunctive relief at the eleventh hour is sufficient to establish unfair prejudice. *See Crews*, 2010 WL 11601051, at *5; *Nat'l Council of Arab Ams. v. City of N.Y.*, 331 F. Supp. 2d 258, 266 (S.D.N.Y. 2004). Moreover, between May and August 2025, Plaintiff's counsel pursued three separate proceedings for the very same relief Plaintiff is seeking here. Yet at no time did Plaintiff's counsel seek an injunction in any of these actions. Instead, they sprung that motion on Valve just three days before the AAA's payment deadline. (Dkt. 40.)

Plaintiff's counsel already attempted to forestall the AAA from closing the arbitrations, seeking an emergency conference in this case, *Wolfire*, and *Welty* to raise the AAA's upcoming payment deadline. The Court already held an emergency conference and denied Plaintiff's counsel's



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

motion for sanctions in *Wolfire*. Yet Plaintiff's counsel have now come back again seeking the same relief. *See, e.g.*, *Golub Cap., LLC v. NB Alts. Advisers, LLC*, No. 21-cv-3991 (S.D.N.Y. May 14, 2021), Dkt. 51 (Marks-Dias Ex. D) (denying preliminary injunction on laches grounds where "plaintiff's litigation strategy is akin to a game of 'Whac-A-Mole,' where an adverse ruling is followed by a new theory in a new court but based on nearly identical allegations").

## VII. PLAINTIFF DOES NOT MEET HIS EVIDENTIARY BURDEN

A motion for preliminary injunction "should not be granted unless the movant carries the burden of persuasion by a clear showing." *Beaver-Jackson v. Ocwen Fed Bank*, 2007 WL 3358068, at *1 (W.D. Wash. Nov. 13, 2007). Plaintiff must "demonstrate, not merely allege, his entitlement to a preliminary injunction" with "competent and credible *evidence* to support it." *Hicks v. Neal*, 2012 WL 3791399, at *3 (N.D. Cal. Aug. 31, 2012) (emphasis in original); *see also Newton AC/DC Fund, L.P. v. Ermilov*, 2026 WL 2224231, at *2 (N.D. Cal. Aug. 3, 2026) ("A motion for a preliminary injunction is an evidence-based motion.").

Plaintiff does not meet this standard. Rather than "present any facts, declarations, exhibits, affidavits, or any other objective proof to support [his] motion," Plaintiff's counsel "merely makes conclusory allegations that are factually unsupported." *Beaver-Jackson*, 2007 WL 3358068, at *1. For example, Plaintiff offers no evidence that he is "unable" to advance his arbitration fees. That is likely because he cannot; the record indicates the opposite. Plaintiff and his counsel, backed by a litigation funder with access to substantial resources, are readily able to advance the fees for his arbitration. (*See* Supp. Ex. J ("Bench Walk Advisors has committed over $1b billion across more than 250+ commercial cases and portfolios."); Supp. Ex. K (Bench Walk Advisors LLC SEC Form ADV listing more than $707 million in regulatory assets under management).) Plaintiff's counsel's conclusory statement that Plaintiff is "unable to pay this invoice" (Tr. at 25:9), without more, is "not sufficient to justify the extraordinary and drastic remedy of a preliminary injunction." *Davis v. Ramen*, 2010 WL 1791253, at *1 (E.D. Cal. May 4, 2010) (denying preliminary injunction where "Plaintiff's conclusory allegations [are] unsupported by any evidence").

Plaintiff also made no attempt to cure his failure to proffer any evidence after Valve raised

this defect. Valve raised in its August 28, 2026, opposition brief that this Motion must be denied because it is unsupported by evidence. (Dkt. 43 at 10-11.) And, on September 4, 2026, Valve sent a letter to Plaintiff's counsel seeking information about their and the putative class's ability and intent to advance fees. (Supp. Ex. H.) Plaintiff's counsel refused to provide such information, or any other evidence, to Valve or the Court. (Supp. Ex. I.)

## VIII. CONCLUSION

The Court should deny Plaintiff's Motion.

DATED: September 15, 2026

I certify that this memorandum contains 8,394 words, in compliance with the Local Rules.

Respectfully submitted,

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Defendant Valve Corporation*