THE HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY SMITH, on behalf of himself and all persons similarly situated,

Plaintiff,

v.

VALVE CORPORATION,

Defendant.

No. 2:25-cv-01478-JNW

**CLASS ACTION**

**PLAINTIFF JEFFREY SMITH'S REPLY IN SUPPORT OF HIS MOTION FOR A PRELIMINARY INJUNCTION**

**NOTE ON MOTION CALENDAR:**
September 23, 2026

## I. INTRODUCTION

In its Opposition (Dkt. 50 ("Opp.")) Valve repeats arguments this Court has already heard and already rejected. Valve argues that an order aimed at Valve cannot reach the American Arbitration Association (the "AAA"), but an order aimed at Valve alone has kept these arbitrations in abeyance since August 31. Valve recasts as a fee dispute a controversy Valve itself has always framed otherwise: whether any agreement to arbitrate survives Valve's 2024 amendment. That is an arbitrability question. Valve's newest argument, that ordering Valve to stop lobbying the AAA for closure amounts to an unconstitutional prior restraint on speech, ignores that "not all



**MASON & PERRY LLP**
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

injunctions that may incidentally affect expression" are prior restraints. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 n.2 (1994). And Valve repeats a delay argument that the Court already signaled is not persuasive. *See* Aug. 31, 2026, Tr. ("Tr.") at 13:3-4.

The relief Plaintiff seeks is narrow: it restrains only Valve, not the AAA, and preserves the status quo until this Court or the Ninth Circuit decides whether these arbitrations survive Valve's amendment. The Court should grant the preliminary injunction.

## II. FACTUAL BACKGROUND

Four points bear on the arguments below.

*First*, the AAA, not Plaintiff's counsel, set this sequence in motion. *Cf.* Opp. 3. On April 25, 2025, two days after Valve refused to pay the $20,875,400 invoice, the AAA asked the claimants how they want to proceed under California Code of Civil Procedure § 1281.98, which supplies a consumer's remedies when the drafting party defaults on its fees. Decl. of Gary Mason, dated August 26, 2026 ("Mason Decl."), Dkt. 41, Ex. 15. On April 30, 2025, the claimants elected two of those remedies: petitioning a court to compel Valve to pay, § 1281.98(b)(3), and advancing Valve's share for certain claimants so their arbitrations could proceed, § 1281.98(b)(4). *Id.* Ex. 16. The AAA then placed the arbitrations "in abeyance" expressly "pending a Court's Ruling." *Id.* Ex. 17. The AAA confirmed as much more than a year later: the cases were "stayed on May 15, 2025 per Claimants' election under CCCP 1281.98" *Id.* Ex. 18.

*Second*, the arbitrations' abeyance held for more than a year. *Cf.* Opp. 4-5. That changed only after Valve's counsel began contacting AAA leadership not involved in administering these arbitrations. On April 30, 2026, Valve's counsel wrote the AAA demanding that it "decline to administer" four newly filed arbitrations and copied the AAA's Vice President and Vice President of Business Development and Outreach, for the first time in this matter. *Id.* Ex. 19. Counsel copied


MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

AAA executives again on May 15 and July 2, 2026. *Id.* Exs. 20, 21. On June 24, 2026, the AAA's Director of ADR Operations warned for the first time that the AAA "will not hold these cases in abeyance indefinitely." *Id.* Ex. 18. On Friday, July 17, 2026, the AAA set a deadline: cases for which fees had not been received by August 17, 2026, would be closed. *Id.* Ex. 22. The same letter promised that the AAA "will abide by any court order as to how these cases should proceed." *Id.* The AAA later extended its deadline to August 31. Decl. of Gary Mason, dated September 23, 2026 ("Supp. Mason Decl.") Ex. A. The Court granted the TRO on August 31, 2026. Dkt. No 48.[1]

*Third*, and new since this Motion: the AAA has done what it said it would. On September 2, 2026, the AAA wrote: "We are in receipt of the minutes from the August 31, 2026, TRO hearing. Accordingly, the 14,892 cases for which Case Management Fees have not been received will remain in abeyance pending further order of the Court." Supp. Mason Decl. Ex. B. No case has closed. The Court's order, directed at Valve alone, has been sufficient.

*Fourth*, on September 16, 2026, the Ninth Circuit granted Valve's petition for permission to appeal this Court's order denying Valve's motion for a preliminary injunction in *Valve Corp. v. Abbruzzese*, No. 2:24-cv-01717-JNW (W.D. Wash. May 27, 2026) at Dkt. No. 169 (the "*Abbruzzese* Order"). *See* Order, *Valve v. Users of Video Game Platform, Steam*, No. 26-5123 (9th Cir. Sept. 16, 2026).

---

[1] The bench ruling refers to the abeyance in which the AAA has held the arbitrations "since March 15th of last year, 2025." (Tr. 27:20–22.) The AAA's abeyance began on May 15, 2025. (Mason Decl. Ex. 17.)



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

## III. THE COURT HAS THE POWER TO GRANT THE REQUESTED RELIEF

### A. The Proposed Order Binds Valve, Not the AAA.

The relief Plaintiff seeks binds Valve alone. Paragraphs 2 and 3 of the proposed order direct Valve to stop requesting the arbitrations' closure and to tell the AAA it has done so; paragraph 1 is the Court's finding as to where the arbitrations presently stand, not a command to anyone. Dkt. No. 40, Ex. A, Order ("Proposed Order") ¶¶ 1-3. That answers Valve's Rule 65(d) objection on its own terms. *See* Opp. 6–7.

### B. The Order Is Not Advisory.

Valve next argues that because the AAA is not bound, any order would be "merely advisory." Opp. 7. It would not. Relief against a party satisfies the Article III standing requirement where it makes action by a third party substantially likely. *See Utah v. Evans*, 536 U.S. 452, 464 (2002). The AAA said it "will abide by any court order as to how these cases should proceed" (Mason Decl. Ex. 22), and on September 2 it did exactly that. Supp. Mason Decl. Ex. B. *Jacobson v. Florida Secretary of State* is not to the contrary; there the court enjoined nonparties directly although it "had no justiciable case or controversy before it." 974 F.3d 1236, 1269 (11th Cir. 2020). Here, as discussed *infra*, Section V.B.1, this arbitrability controversy is properly before the Court.

### C. The Order Is Not a Prior Restraint.

Valve contends that barring it from "requesting, demanding, urging, or otherwise seeking that the AAA close, terminate, dismiss, or decline to administer" the arbitrations (Proposed Order ¶ 2.a) would be a prior restraint. Opp. 7–8. It would not. A prior restraint is an order forbidding communication before they occur, *Alexander v. United States*, 509 U.S. 544, 549–50 (1993), but "[n]ot all injunctions that may incidentally affect expression . . . are 'prior restraints' . . ." *Madsen*,



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

512 U.S. at 763 n.2. The doctrine calls for a "pragmatic assessment of its operation in the particular circumstances." *Info. Providers' Coal. for Def. of the First Amendment v. FCC*, 928 F.2d 866, 877 (9th Cir. 1991) (quoting *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 441–42 (1957)).

An injunction that is "reactive" to prior *conduct* is not a prior restraint. *See, e.g., Livewire Publ'g. Inc., v. Best Software Inc.*, 125 Fed. Appx. 428, 433 (3d Cir. 2005) (enjoining a party that fails to heed a court's ruling is not a prior restraint where "necessary to stop [a party] from disrupting the proper and orderly resolution of the case."); *Lucero v. Trosch*, 121 F.3d 591, 600-01 (11th Cir. 1997) (injunction was remedial and not a prior restraint where it enjoined defendant's prospective conduct in light of prior judicial determination that defendant's prior conduct was unlawful). Here, the requested injunction is remedial and reactive to Valve's prior conduct; it would preserve this Court's likely-unconscionable ruling by restraining Valve's continued lobbying of the AAA to terminate the arbitrations until the Ninth Circuit rules. Assessed pragmatically, the order restrains a procedural act, not expression. Indeed, courts routinely restrain parties from seeking relief in another forum without offending the First Amendment. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881–89 (9th Cir. 2012) (affirming injunction barring party from enforcing foreign injunction); *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 480–82 (9th Cir. 2022) (affirming preliminary injunction barring private enforcement suits).

*In re Dan Farr Productions* is not comparable. *See* Opp. 8. That order silenced a party's public commentary about a "run-of-the-mill civil trademark proceeding" 874 F.3d 590, 596 (9th Cir. 2017). Here, the restraint reaches a single procedural request to the tribunal, and it responds to Valve's own conduct: repeated demands, escalated to AAA executives, that the AAA close arbitrations this Court has preliminarily found Valve likely cannot divert to court. Courts may



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

"issue interim injunctive relief to preserve the status quo and the meaningfulness of the arbitration process. . . ." *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 980–81 (9th Cir. 2010). And Valve has operated under the identical restraint since August 31 without seeking reconsideration or mandamus. It identifies no statement it has been unable to make.

## IV. PLAINTIFF MAY SEEK INJUNCTIVE RELIEF ON BEHALF OF THE PUTATIVE CLASS AT THIS STAGE

A class complaint has legal effect before certification. It tolls absent members' limitations periods, *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550–52 (1974), and it gives courts authority over the parties' conduct toward putative members, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100 (1981); Fed. R. Civ. P. 23(d). Rule 65(d)(2) defines an injunction's reach by the parties bound, not the beneficiaries protected.

*Dickinson v. Trump*, 174 F.4th 634 (9th Cir. 2026), does not hold otherwise. *Dickinson*'s logic flows from *Trump v. CASA, Inc.*, in which the Supreme Court considered whether courts have the authority to "universally enjoin the enforcement of an executive or legislative policy." 606 U.S. 831, 839 (2025). *Dickinson* concerns the same issue. In both cases, putative class membership would have been nebulous. Here, by contrast, Plaintiff seeks an injunction on private conduct affecting a discrete and ascertainable class.

Further, Valve's own authority recognizes that relief may extend to an uncertified class where it is needed to preserve the court's ability to act. *Martin v. Read*, 825 F. Supp. 3d 1214, 1222-23 (D. Or. 2026) (cited at Opp. 9). Absent relief, the class's arbitral claims would be extinguished before this Court could rule on certification at all.

Nor does the class-action waiver foreclose relief. Opp. 9. The waiver appears in the arbitration provision of the Original SSA, which Valve contends no longer exists. Opp. 3. Valve cannot rely on the waiver while repudiating the agreement that contains it, and Plaintiff does not



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

contend that the Original SSA's arbitration agreement governs any claims that accrued after the SSA was revised in 2024. *See* P.'s Opp. to Valve's Mot. Dismiss, *etc.*, Dkt. No. 19 at 3.

If the Court concludes some showing under Rule 23 is required before relief can run to the class, that showing is readily made. Numerosity is undisputed (14,911 claimants). Commonality and typicality follow from a single question arising from identical conduct toward every member: whether Valve remains bound by the arbitration agreement in the original SSA. Adequacy is satisfied by common counsel with no conflict among absent members. Because Valve's refusal applies uniformly, relief preserving the abeyance is indivisible and appropriate under Rule 23(b)(2). Plaintiff therefore requests, in the alternative, that the Court provisionally certify the class for the limited purpose of this Motion, *see Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041–43 (9th Cir. 2012) (affirming preliminary injunction on behalf of provisionally certified class), or set an expedited schedule on certification rather than allow the arbitrations to close in the interim.

## V. PLAINTIFF MEETS THE STANDARD FOR A PROHIBITORY INJUNCTION

### A. This Is a Prohibitory Injunction.

Valve argues that the heightened standard applies because the proposed order required Valve to "notify the AAA in writing" that it had withdrawn its closure demands. Opp. 11. But "the label turns on what the order directs the enjoined party to do," and "[t]hat the conduct here is well under way does not convert a prohibition into a command." *Abbruzzese* Order at 15–16. The order restrains Valve from continuing to lobby the AAA for closure; the notice requirement is the ordinary mechanism for making that cessation effective as to the third party Valve has been



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

lobbying, not an independent mandate to undertake something new.[2] The status quo is the AAA's abeyance, which has existed since May 15, 2025, and the ordinary sliding-scale standard applies, as it did at the TRO stage. Tr. 26:23–25. If the Court is concerned about the proposed notification clause, Plaintiff would not object to carrying the message, as the Court ordered in granting the TRO.

**B. Plaintiff Is Likely to Succeed on the Merits.**

1. *This Is Not a Fee Dispute Committed to the AAA.*

Valve has offered one reason for refusing to pay the AAA's invoice on these claims: that no agreement to arbitrate survived its 2024 amendment. *See, e.g.,* Opp. 3; Dkt. 13 at 11; Michael McTigue Jr. April 23, 2025, Ltr. to the AAA (Mason Decl. Ex. 14). Valve does not contend that it is unable to pay. Tr. 19:4–12. Whether a later agreement superseded an earlier one is a question "a court, not an arbitrator, must decide." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024); *see also* Mason Decl. Ex. 14. Valve's nonpayment is a symptom of that threshold dispute, not a stand-alone procedural question committed to the AAA.

*Frazier* confirms this distinction rather than erasing it. District courts may address a "relatively narrow category" of disputes going to whether arbitration must occur at all, and a threshold dispute over whether any agreement survives falls squarely within it. *Frazier v. X Corp.*, 155 F.4th 87, 99 (2d Cir. 2025). Only "intra-arbitration delinquenc[ies]" are left to the administrator. *Id.* Here, the AAA chose to manage Valve's nonpayment by routing it to a court. It placed the cases in abeyance on May 15, 2025, "pending a Court's Ruling" (Mason Decl. Ex. 17);

[2] The Motion erroneously attributed the phrase "quintessential prohibitory injunction" to *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). Dkt. 40 at 8. The phrase appears in the *Abbruzzese* Order, at 15, near the Court's citation of *Marlyn*, but originated in *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022).



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

it promised to "abide by any court order as to how these cases should proceed" (*id.* Ex. 22); and its Process Arbitrator ruled on February 9, 2026, that only a court can decide which SSA governs these claimants. *Valve v. Irias*, No. 2:26-cv-00698-JNW, Dkt. 25 at 7 n.3. An administrator that repeatedly looks to a court to resolve a question is not asserting the exclusive procedural authority Valve's cases assume.

Valve's cases are distinguishable for the reasons Plaintiff gave in opposing Valve's motion to dismiss. Dkt. No. 19 at 12–14. In *Frazier*, the parties disputed how to allocate fees under an agreement that was silent on allocation and incorporated JAMS's rules. In *Wallrich*, the AAA had already terminated the arbitrations before the consumers went to court. 106 F.4th 609, 620 (7th Cir. 2024). In *Lifescan*, the agreement left apportionment to the arbitrators, who reallocated fees because one party faced financial hardship. 363 F.3d 1010, 1012-13 (9th Cir. 2004) (there is "no totally satisfactory solution" in circumstances where a party defaults on its fees "which is doubtless why the AAA rules give arbitrators the flexibility to make the best of a bad situation"). Here, by contrast, Valve does not claim hardship; it claims the contract no longer exists. That is *Coinbase* territory, not *Lifescan*'s.

*Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016), which the Court noted at the hearing (Tr. 27:10–12), points the same way. There, the AAA terminated an arbitration because a party *could not* pay the fees required to advance the arbitration; the Ninth Circuit held that arbitration had been "had" and the case could proceed in court. *Id.* at 1072–74. But the court expressly reserved the case of a party who "has the ability to pay but simply chooses not to," observing that permitting such a party to escape arbitration "may be contrary to 'the structure and purpose of the FAA.'" *Id.* at 1075 n.1. "If Tillman had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration . . . ." *Id.* at 1075.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

The line *Tillman* draws is capacity, not motive. Valve concedes capacity (Tr. 19:4–12) and calls its refusal "principled." Tr. 19:5–8. Valve has refused to pay for arbitrations it demanded despite having the capacity to do so—under *Tillman,* the Court may compel arbitration anew.

2. *Valve Is Obligated to Pay This Invoice.*

The Court asked at the TRO hearing where the Original SSA or the AAA rules require Valve to pay this invoice. Tr. 4:19–24. Valve asserts it has no such obligation under the Original SSA or, implicitly, the arbitral rules it incorporates. Opp. 16. But there are several authorities to the contrary.

First, the Original SSA provides that the arbitration "will be governed by the Consumer Arbitration Rules (the "Rules")" of the AAA. Compl. Ex. A § 11C. The Costs of Arbitration provisions of the Rules, amended and effective August 1, 2023, provides that a "case management fee of $1,400 for 1 arbitrator . . . will be assessed to the business and must be paid prior to the arbitrator appointment process." Mason Decl. Ex. 9 at 3. The $20,875,400 invoice ($1,400 × 14,911) is that fee. It is not a claimant "share" awaiting reimbursement. *Cf.* Opp. 16–17.

Second, the Original SSA separately obligates Valve to "promptly reimburse your filing fee and your share, if any, of AAA's arbitration costs, including arbitrator compensation," Compl. Ex. A § 11C, not "only filing fees and arbitrator compensation." *Cf.* Opp. 17.

Third, Valve has performed those obligations in these very arbitrations. It paid the AAA's $1,866,100 invoice for its share of the initial filing fees (Mason Decl. ¶ 10), and on October 1, 2024, after the September 26, 2024, amendment, it reimbursed the claimants' own filing fees under the Original SSA. *Id.* ¶ 11; Opp. 3 (reimbursement made "[a]fter updating the SSA"). The Case Management Fee is the next installment of the same obligation.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

And, finally, Valve previously represented to a court in this district that it is required under the Original SSA to pay all costs of arbitration as part of its argument that the court should compel consumers to arbitration. In *G.G. et al v. Valve Corp.*, Valve wrote that "Section 11 includes other consumer-friendly provisions . . . such as . . . [a]greeing Valve will pay all arbitration costs of claims under $10,000 . . . ." Valve's Mot. to Compel Arbitration, No. 2:16-cv-01941-RSL (W.D. Wash. filed Dec. 27, 2016), Dkt. No. 10, at 6. Valve should be bound to the representations it made to move a court. *See Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (the doctrine of judicial estoppel "is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process.").

Nor is Valve's refusal a dispute over one invoice. Valve told the AAA that it will pay nothing under the Original SSA because no such agreement survives. *See, e.g.,* Mason Decl. Ex. 14 at 2 (contending that "the AAA has no jurisdiction over these arbitrations" Valve "declines to pay the Case Management Fees"; "Valve previously explained that the AAA should not issue any further invoices in these arbitrations . . . ."). That is a categorical repudiation of the provision's cost terms, grounded in the same amendment this Court found likely unconscionable.

3. *Abbruzzese Confirms the Point.*

This Court found Valve's September 2024 amendment likely procedurally and substantively unconscionable as applied to claimants with pending arbitrations, because "the law does not let a party—let alone the drafter—use the amendment power to strip away rights its customers have already exercised." *Abbruzzese* Order at 12; *see id.* at 19–27. Valve tries to distinguish *Abbruzzese* because these arbitrations "have not commenced." Opp. 18. But the putative class members here filed their demands in December 2023. The AAA found the filing requirements met in all 14,911 cases on February 22, 2024; and Valve paid its share of the filing



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

fees, all before the amendment. Mason Decl. ¶¶ 8–10. These claimants had "already exercised" their rights. That no merits arbitrator has been appointed is the result of Valve's own nonpayment. At a minimum, Plaintiff "has raised serious questions going to the merits," as the Court has already found, Tr. 26:24–25, but he ultimately is likely to succeed.

**C. Plaintiff Will Suffer Irreparable Harm.**

If the AAA closes these arbitrations, the injury is immediate and, according to Valve's account of the law, irreversible. Valve's position is that nonpayment ends the arbitration and the claimants' rights with it. *See e.g. Tillman*, 825 F.3d at 1073-74 (arbitration has been "had" once AAA terminated the proceeding); *Wallrich*, 106 F.4th at 620 (same).

Valve responds that Plaintiff can simply advance his own $1,400. Opp. 18–19. But the harm is not $1,400; it is permanent loss of the contractual forum. The Court's observation that "[a] cost a party elects to incur, and that money could repay, is not the irreparable harm that warrants an extraordinary remedy," *Abbruzzese* Order at 28 (cited at Opp. 18-19), concerned Valve's own expense of arbitrating claims it had agreed to arbitrate. The cost here is not one the claimants ought to incur; it is Valve's obligation. Requiring 14,911 consumers to fund it would validate Valve's repudiation, rewarding a drafter that compels arbitration and then refuses to pay for it.

Nor can claimants simply refile. Valve has represented that it will not raise a limitations defense "based on the filing of these arbitrations and having them closed" (Tr. 21:24–22:1), yet said nothing of laches, which it presses now, or waiver. Whether refiled claims would be timely remains, as the Court has found, "contested and unsettled." *Abbruzzese* Order at 24–25. And closure would moot this Motion before this Court or the Ninth Circuit can rule. *See Toyo Tire*, 609 F.3d at 980–81.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

### D. The Balance of Equities and the Public Interest Favor Smith.

Preserving an abeyance that has existed since May 2025 while the Ninth Circuit decides *Abbruzzese* costs Valve nothing. Valve has had to pay nothing to keep the cases in abeyance, and it identifies no prejudice from waiting. When the Court asked what harm Valve would suffer from a further abeyance, Valve's counsel identified none. Tr. 22:6–22. The public interest cuts the same way. Consumers should not be compelled into arbitration only to be squeezed out of it by the drafter's refusal to fund the forum it chose; "[e]qual footing runs both ways." *Abbruzzese* Order at 30.

## VI. PLAINTIFF'S REQUEST IS NOT BARRED BY LACHES

As the Court has already indicated, (Tr. 13:3–4) Plaintiff did not delay in filing this motion. *Cf.* Opp. 19-20, 21-22 From May 15, 2025, through June 24, 2026, the AAA's own position was that the cases would remain in abeyance pending judicial relief, so there was no threatened closure for an injunction to prevent. The AAA announced its new position on July 17 (Mason Decl. Ex. 22); Plaintiff's counsel sought reconsideration on July 22, providing the AAA until July 29 to respond (*id.* Ex. 23); and Plaintiff sought an emergency conference on August 3. *Id.* Ex. 24. Nor is this "Whac-A-Mole." Opp. 22. Lally's motion failed because he lacked standing to seek relief for the other 14,910 claimants. *In re Valve*, Dkt. 692 at 5–6. Smith, who pleads a class, has the standing to seek that relief, and he did so five days after Lally's motion was denied.

Nor was Valve prejudiced. Valve identifies no harm from an abeyance that has existed for sixteen months, and under which Valve has operated since August 31 without seeking relief from the TRO.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

## VII. PLAINTIFF MEETS HIS EVIDENTIARY BURDEN

Valve's principal evidentiary complaint is that Plaintiff has not proven that he or the class cannot advance Valve's $20.8 million invoice. Opp. 22–23. That fact is immaterial. The relief Plaintiff seeks does not depend on anyone's inability to pay (Proposed Order ¶ 4), and Valve told the Court as much at the TRO hearing. Asked about claimants who cannot afford the fee, Valve's counsel said, "We don't think that's relevant." Tr. 18:13–19:3. The question is whether Valve may extinguish 14,911 arbitration rights while the Ninth Circuit decides whether they survive. Plaintiff need not prove inability to pay a debt that is not his to bear.

Valve's supplemental exhibits do not change that. Supplemental Exhibits J–K describe a funder's firm-wide assets, not any commitment to this matter. And Valve's September 4 letter (Supp. Ex. H) rested on the premise that the Court "wanted a more detailed factual record," which the Court did not say. Tr. 26:20–28:14. Discovery is not open, and Valve never sought leave. *See* Fed. R. Civ. P. 26(d)(1).

## VIII. CONCLUSION

The Court should grant the Motion and enter the Proposed Order.

DATED: September 23, 2026.

I certify that this memorandum contains 4165 words, in compliance with the Local Civil Rules.

Respectfully submitted,

By: /s/ Gary E. Mason
Gary E. Mason (admitted *pro hac vice*)
**MASON & PERRY LLP**



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290

Danielle L. Perry (admitted *pro hac vice*)
Jacob D. Eisenberg (admitted *pro hac vice*)
5335 Wisconsin Avenue NW, Suite 640
Washington, D.C. 20015
Tel: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com
jeisenberg@masonllp.com

By: /s/ Michael C. Subit
Michael C. Subit, WSBA No. 29189
**FRANK FREED SUBIT & THOMAS LLP**
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1729
Tel.: (206) 682-6711
msubit@frankfreed.com

Kent M. Williams (admitted *pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Suite 401
Minneapolis, MN 55415
Tel.: (929) 220-2759
kent.williams@sirillp.com

Theodore B. Bell (admitted *pro hac vice*)
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel.: 845-483-7100
bellt@thesultzerlawgroup.com

*Counsel for Plaintiff Jeffrey Smith and the Proposed Class*