UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY SMITH, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VALVE CORPORATION,<br><br>Defendant. | CASE NO. 2:25-cv-01478-JNW<br><br>ORDER DENYING PRELIMINARY INJUNCTION AND DISSOLVING TEMPORARY RESTRAINING ORDER |

## 1. INTRODUCTION

This matter comes before the Court on Plaintiff Jeffrey Smith's motion for a preliminary injunction. Dkt. No. 40. In December 2023, Smith and 14,910 other Steam users filed arbitrations against Defendant Valve Corporation, as Valve's then-existing Steam Subscriber Agreement required. Valve later amended that agreement to send all disputes to court, told the American Arbitration Association ("AAA") that no agreement to arbitrate remained, and refused to pay the $20,875,400 case-management invoice AAA sent it. AAA held the arbitrations in abeyance for more than a year, then announced it would close them. On August 31, 2026, the Court entered a temporary restraining order that froze things in place.

Smith now asks the Court to keep things where they stand until this case is resolved.

The Court DENIES the motion. Smith has raised serious questions going to the merits, as the Court found when it entered the temporary restraining order. But a preliminary injunction also requires a showing that irreparable harm is likely, and on the full record, Smith has not made that showing. The harm he fears—that closure will end his arbitration for good—depends on a reading of the law the Court has rejected at this stage. The other harms he identifies are either foreclosed by Valve's representations to this Court or fixable with money. The temporary restraining order is therefore DISSOLVED.

## 2. BACKGROUND

### 2.1 The Court compels arbitration in *In re Valve Antitrust Litigation*, and thousands of Steam users arbitrate.

The facts of this case arise from a related class action, *In re Valve Antitrust Litigation*. There, a putative consumer class brings antitrust claims against Valve over Steam, its online platform for distributing PC games. In 2021, Valve moved to compel arbitration under its Steam Subscriber Agreement ("SSA"), which contained a mandatory arbitration provision. The Honorable John C. Coughenour, who was presiding over the case at the time, granted the motion on October 25, 2021, and stayed the consumers' claims pending arbitration. *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW, Dkt. No. 66 at 4–5; *see also* Dkt. No. 41-1 at 77.

Thousands of consumers filed arbitrations. This motion concerns 14,911 of them, filed in December 2023, which AAA grouped together under its mass-

arbitration rules. Dkt. No. 41 ¶¶ 6, 8. The Court refers to these 14,911 consumers as "Claimants" throughout this order. Claimants paid $1,518,325 in AAA filing fees. Valve paid $1,866,100 that AAA billed to it, Dkt. No. 41 ¶¶ 8–9, and later reimbursed Claimants' counsel for the initial filing fees, as the SSA required, *id.* ¶¶ 10–11; Dkt. No. 41-1 at 77 (SSA). In August 2024, at the Parties' request, AAA suspended the arbitrations so the Parties could mediate. Dkt. No. 41 ¶ 14.

### 2.2 Valve updates the SSA to preclude arbitration, and the Court rules in *Abbruzzese.*

In September 2024, one month after asking to suspend the arbitrations for mediation, Valve issued an updated SSA to all its users, including Claimants. Dkt. No. 41-1 at 106 (updated SSA). Where the original SSA required arbitration, the updated SSA provides:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

*Id.* According to Valve, the updated SSA ended every pending arbitration because there is no longer an agreement to arbitrate between it and its consumers. Many arbitrators rejected Valve's argument, and the arbitrations continued.

In October 2024, Valve sued more than 600 consumers who continued to arbitrate, seeking to enjoin their arbitrations. *Valve Corp. v. Abbruzzese*, No. 2:24-cv-01717-JNW ("*Abbruzzese*"). The Court denied Valve's motion for a preliminary injunction, finding the updated SSA's retroactive forum selection clause likely unconscionable, both procedurally and substantively, as applied to consumers

whose arbitrations were already pending. *Abbruzzese*, No. 2:24-cv-01717-JNW, 2026 WL 1481630, at *7–10, *12 (W.D. Wash. May 27, 2026). At Valve's request, the Court certified that ruling for interlocutory appeal and stayed the case, *Abbruzzese*, Dkt. No. 192, and the Ninth Circuit accepted the appeal on September 16, 2026, *Valve v. Users of Video Game Platform, Steam*, No. 26-5123 (9th Cir. Sept. 16, 2026). Because this case involves 14,911 *related arbitrations* and turns on the same question—whether the Parties still have an arbitration agreement—the Court stayed it pending that appeal. Dkt. No. 38.

### 2.3 Valve repeatedly asks AAA to close Claimants' arbitrations and refuses to pay AAA case-management fees.

Beginning in February 2025, Valve repeatedly asked AAA to close Claimants' arbitrations because, according to it, the Parties no longer had an arbitration agreement due to the updated SSA. Dkt. No. 41 ¶ 17. AAA declined, lifted its stay, and on March 24, 2025, sent Valve an invoice for case-administration fees totaling $20,875,400 (or $1,400 per case). *Id.* ¶¶ 17–18; Dkt. No. 41-1 at 120–21 (AAA invoice). Valve refused to pay, standing by its position that it need not arbitrate. Dkt. No. 41 ¶ 19. Claimants told AAA they would seek judicial relief, and on May 15, 2025, AAA placed the arbitrations "in abeyance pending a Court's Ruling." Dkt. No. 41-1 at 137. Claimants' counsel then sought that relief, including by filing a motion for sanctions on behalf of consumer Ryan Lally in *In re Valve Antitrust Litigation* on June 11, 2025, and by filing this case on August 5, 2025. Dkt. No. 41 ¶ 23; Case No. 2:21-cv-00563-JNW, Dkt. No. 467.

That abeyance held for over a year. On June 24, 2026, AAA warned that it would not hold the cases in abeyance indefinitely, and on July 17, it set a closure deadline of August 17, which it later extended to August 31. Dkt. Nos. 41-1 at 139–40, 157; 53-1 at 2. AAA's July 17 letter also promised that it "will abide by any court order as to how these cases should proceed." Dkt. No. 41-1 at 157. That promise matches AAA's practice. When four other consumers represented by Claimants' counsel filed new arbitrations against Valve in April 2026, AAA noted that Valve "previously failed to comply with the AAA's policies regarding consumer claims," but explained that it was "in receipt of a court order compelling arbitration" and was "proceeding on that basis." Dkt. No. 41 ¶ 25.

**2.4 The Court enters a temporary restraining order.**

On August 10, 2026, at an emergency conference requested by Claimants' counsel, the Court agreed to rule before AAA's deadline on Claimant Ryan Lally's pending motion for sanctions in *In re Valve Antitrust Litigation*, which sought the full $20,875,400. The Court denied that motion on August 21, because Lally could not seek fees owed on behalf of 14,910 people who were not before the Court. *In re Valve Antitrust Litig.*, Dkt. No. 692 at 5–6. Five days later, Smith filed this motion. He asks the Court to keep the arbitrations in abeyance until this case is resolved and to bar Valve from urging AAA to close them. Dkt. No. 40 at 3–4, 17.

The Court heard argument on August 31, 2026, lifted the stay for the limited purpose of this motion, and granted a temporary restraining order for the reasons stated on the record. Dkt. Nos. 48, 49. The order left the arbitrations where they

had been for 15 months and barred Valve from asking AAA to close them until the Court could rule on the preliminary injunction. Dkt. No. 49 at 27. On September 2, AAA advised that the 14,892 cases for which fees remain unpaid "will remain in abeyance pending further order of the Court." Dkt. No. 53-2 at 2.

## 3. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). These four factors—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a showing on all four prongs" is required).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under this approach, a

stronger showing of one factor may offset a weaker showing of another. *All. for the Wild Rockies*, 632 F.3d at 1131–35.

Valve argues that a heightened standard applies because Smith seeks a mandatory injunction. Dkt. No. 50 at 18. "A mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citation modified). Because Smith has not established irreparable harm under the ordinary standard, the Court need not decide whether the heightened standard applies.

## 4. DISCUSSION

### 4.1 Smith has raised serious questions going to the merits.

Smith claims that Valve breached the SSA's arbitration provision, and the implied covenant of good faith and fair dealing, by refusing to arbitrate. Valve answers that there is nothing to breach, as the updated SSA ended the agreement to arbitrate. The Court has already considered that argument in *Abbruzzese* and found it unlikely to succeed, because the retroactive forum clause is likely unconscionable as applied to consumers whose arbitrations were pending when Valve issued it. 2026 WL 1481630, at *7–10. Valve tries to distinguish Claimants on the ground that, unlike the *Abbruzzese* defendants, their arbitrations are in the early stages and have not reached the merits. Dkt. No. 50 at 25–26. That distinction speaks to *substantive* unconscionability, which asks whether enforcing a contract term would be unfair, one-sided, or overly harsh. *Id.* at *9 (citing *Tadych v. Noble*

*Ridge Constr., Inc.*, 519 P.3d 199, 204 (Wash. 2022)). But it says nothing about *procedural* unconscionability, which asks about "the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print." *Id.* at *7 (quoting *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 759 (Wash. 2004) (citation modified)). As the Court explained in *Abbruzzese*, this analysis "is not just about notice—it's about whether there is a 'lack of meaningful choice.'" *Id.* (quoting *Zuver*, 103 P.3d at 759).

Valve's amendment process was the same for Claimants as for the *Abbruzzese* defendants, and Claimants' arbitrations were likewise pending when Valve updated the SSA. The Court's procedural unconscionability analysis thus applies with equal force here, and the Court incorporates it rather than restating it. *Id.* at *7–9.

If the arbitration agreement survives, Smith must also show that Valve likely breached it. "A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. and Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995) (citing *Larson v. Union Inv. & Loan Co.,* 10 P.2d 557 (Wash. 1932)). The SSA's arbitration provision required the parties to "RESOLVE ALL DISPUTES AND CLAIMS BETWEEN [THEM] IN INDIVIDUAL BINDING ARBITRATION," governed by AAA's Consumer Arbitration Rules. Dkt. No. 41-1 at 76–77. "The parties thus incorporated the AAA Rules into their agreement," *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004), and Valve's contractual duty is to arbitrate under those rules. It is the same provision that

Valve invoked in 2021 when it asked Judge Coughenour to send Steam users' antitrust claims to arbitration, a request he granted. *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW, Dkt. No. 66 at 4–5; *Wolfire Games, LLC v. Valve Corp.*, No. C21-0563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021).

Valve now says it has done all the provision requires—it went to arbitration, and it says that what happens when it declines to pay an invoice is a procedural question for AAA, not the Court. Dkt. No. 50 at 12–16, 20. This argument has two problems. The first is that Valve's nonpayment is not a dispute about an invoice. Valve has told AAA that it will pay nothing further in these arbitrations because, in its view, no agreement to arbitrate exists. Dkt. No. 41-1 at 112, 124. That is a position on whether arbitration must occur at all, and Valve itself has told this Court that such questions belong to a court, not an arbitrator. *See Abbruzzese*, 2026 WL 1481630, at *6 n.6 (citing *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024)). Having taken that position, Valve cannot call the same question a routine fee dispute for AAA to resolve when the bill comes due.

The second problem for Valve is Ninth Circuit precedent. In *Sink v. Aden Enterprises, Inc.*, the Ninth Circuit held that a party's "failure to pay required costs of arbitration" to the point of default under arbitral rules "was a material breach of its obligations in connection with the arbitration." 352 F.3d 1197, 1201 (9th Cir. 2003); *Tillman v. Tillman*, 825 F.3d 1069, 1075 n.1 (9th Cir. 2016). Later, in *Tillman*, the Ninth Circuit distinguished its holding in *Sink*, finding that a party who is *unable* to pay arbitration fees does not "refuse to arbitrate" such that it breaches its arbitration obligations. 825 F.3d at 1075. However, in line with *Sink*,

the court said its holding "does not mean that parties may refuse to arbitrate by *choosing* not to pay for arbitration" and that a court "probably could still . . . compel arbitration" against a party that "refuse[s] to pay for arbitration despite having the capacity to do so." *Id*. (emphasis in original). Valve does not claim inability. Dkt. No. 49 at 19. Valve says its refusal is principled rather than willful. Dkt. No. 50 at 23. That distinction does not matter under *Tillman*, which turns on whether a party is able to pay, not on why it declines to. In any event, the principle Valve stands on is its amendment to the SSA, and the Court has found that amendment likely unenforceable.

Valve is right that *Wallrich* and *Frazier* reached a different conclusion. *Wallrich* rejected any distinction between inability and refusal to pay, *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 621 (7th Cir. 2024), and *Frazier* reversed a district court that had relied on *Tillman* to order fees paid, *Frazier v. X Corp.*, 155 F.4th 87, 101 (2d Cir. 2025). But unlike this Court, those courts were not bound by *Tillman* and *Sink*. *See, e.g.*, *Inde Can LLC v. Noecker*, No. 2:25-cv-05856-SPG-MAA, 2025 WL 3190803, at *4 (C.D. Cal. Aug. 29, 2025) ("In both *Lifescan* and *Tillman*, the Ninth Circuit's decisions were expressly premised on a party's inability to pay for arbitration."); *Allemeier v. Zyppah, Inc.*, No. CV 18-7437 PA (AGRx), 2018 WL 6038340, at *3–4 (C.D. Cal. Sept. 21, 2018) (order compelling arbitration was appropriate and consistent with *Lifescan* and *Tillman* where the defendant simply refused to pay its arbitration fees because it opposed arbitrating in California); *cf. Jolly v. Intuit Inc.*, 485 F. Supp. 3d 1191, 1207 (N.D. Cal. 2020) (holding defendant "ha[d] not yet refused to arbitrate" because "[i]t ha[d] paid all arbitration fees, ha[d]

not withdrawn from the arbitration," and had "complied with all AAA rules and orders."). Nor do *Wallrich* and *Frazier* reach the relief sought here. Each reversed an order directing a party to pay arbitral fees; this motion asks for no such order, and for no ruling on fee allocation. Dkt. No. 40 at 18.

Thus, at a minimum, Smith has raised serious questions going to the merits—the conclusion the Court reached in granting the restraining order. Dkt. No. 49 at 26–27. The Court need not decide whether he has shown more because, as explained below, the motion fails on the next *Winter* factor.

**4.2 Smith has not shown a likelihood of irreparable harm.**

A movant must show that irreparable harm is "likely," not merely possible, in the absence of an injunction. *Winter*, 555 U.S. at 22. That showing requires evidence, not assertion. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250–51 (9th Cir. 2013).

The Parties dispute whether preliminary relief could run to the putative class before certification. Dkt. No. 40 at 15–17; Dkt. No. 50 at 17–18; Dkt. No. 52 at 6–7. The Court need not resolve that dispute here. The harms Smith describes—closure of the arbitrations, loss of the arbitral forum, exposure to a limitations defense, the cost of refiling—are the same for him as for every other Claimant, and the analysis that follows applies whichever way the question is answered. Smith identifies four harms, which the Court takes in turn.

Smith's main argument is that closure would extinguish his right to arbitrate. He frames the point carefully, arguing that closure is irreversible

"according to Valve's own account of the law." Dkt. No. 40 at 12; Dkt. No. 52 at 12. On Valve's account, if AAA terminates the arbitrations for nonpayment, the parties "will have 'fully arbitrated'" under their agreement, and there will be no action left for the Court to compel. Dkt. No. 43 at 24 (quoting *Wallrich*, 106 F.4th at 620). That is so, Valve says, because its refusal "to pay arbitral fees under the AAA framework does not constitute a 'failure, neglect, or refusal' to arbitrate'" that a court may remedy. Dkt. No. 50 at 25. If both propositions hold true, then once AAA closes the file, no court could order Valve back into arbitration.

The Court has not accepted either proposition. As Section 4.1 explains, *Sink* and *Tillman* bind this Court, and under those decisions a party that can pay for arbitration but will not has refused to arbitrate, not completed it. Valve does not claim that it cannot pay; rather, it refuses to pay. If the Court finds that an arbitration agreement covers Smith's claims, *Tillman* allows the Court to remedy that refusal by ordering Valve to arbitrate.

Contrary to Smith's suggestion, that remedy does not depend on the AAA file staying open. In *Abernathy v. DoorDash, Inc.*, a case Smith relies on, AAA had already closed more than 6,000 files when DoorDash refused to pay its share of the fees. 438 F. Supp. 3d 1062, 1064–66 (N.D. Cal. 2020); *see* Dkt. No. 40 at 9, 16–17. The claimants moved to compel, and the court ordered DoorDash to begin arbitration. *Abernathy*, 438 F. Supp. 3d at 1064–66. Other courts in this Circuit have done the same. *See Allemeier v. Zyppah, Inc.*, No. CV 18-7437 PA (AGRx), 2018 WL 6038340, at *3–4 (C.D. Cal. Sept. 21, 2018) (compelling arbitration after the AAA administratively closed the file for the employer's refusal to pay its share

of the filing fee, and after the AAA announced it would not arbitrate further matters involving that employer, because the employer "has not established that the AAA will not hear the parties' dispute if it pays" the fees allocated to it); *Inde Can LLC v. Noecker*, No. 2:25-cv-05856-SPG-MAA, 2025 WL 3190803, at *4–5, 7 (C.D. Cal. Aug. 29, 2025) (compelling a party that had refused to participate in arbitration after the arbitrator dismissed its claims, and reading *Lifescan* and *Tillman* as "expressly premised on a party's inability to pay for arbitration").

The record gives no reason to think AAA would refuse to administer a court-ordered arbitration. AAA has said it "will abide by any court order as to how these cases should proceed." Dkt. No. 41-1 at 157. It has already done so once in this dispute. When four other consumers filed new arbitrations against Valve in April 2026, AAA noted Valve's past noncompliance with its policies but proceeded anyway because a court had ordered arbitration. Dkt. No. 41 ¶ 25.

If the Court does not intervene, AAA will likely close the arbitrations. Smith has shown that much. What he has not shown is that closure would cost him the forum for good. That outcome depends on Valve being right that a party's nonpayment completes the arbitration, and the Court has found Valve unlikely to be right about that. A harm that follows only from a legal position the Court has rejected at this stage is a possible harm, and *Winter* requires a likely one.

Smith next argues that if he must refile his claims, Valve may argue they are untimely. Dkt. No. 40 at 13. But the Court put that question to Valve's counsel at the hearing—whether Valve would argue "time-barred, laches, waiver, anything"—and counsel answered, "Nothing." Dkt. No. 49 at 21. Counsel went on to say that

Valve "is not going to argue that there's any sort of statute of limitations argument" based on the filing and closure of the arbitrations, while preserving any timeliness arguments that predate the arbitration demands. *Id.* at 21–22. The Court relies on that representation. Smith notes that counsel's elaboration mentioned limitations but not laches or waiver. Dkt. No. 52 at 12. True, but the question counsel answered "Nothing" to named all three. Smith is also a putative member of the consumer class in *In re Valve Antitrust Litigation*, and the filing of that class complaint tolls the limitations period for absent members, as Smith himself points out. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550–52 (1974); Dkt. No. 40 at 16. For this harm to occur, Valve would have to take a position that contradicts what it told this Court, and then win on it. That is too remote to count as likely.

Smith's counsel described the "monumental task" of refiling 14,911 arbitrations. Dkt. No. 49 at 26. The Court does not doubt that characterization, but that burden is one of time, money, and administration, and "monetary injury is not normally considered irreparable." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). If Valve has breached, the cost of restoring what its breach undid is a measure of damages, not a reason to enjoin.

Finally, Smith argues that the closure of the arbitrations would moot this action before the Court can decide it, and he cites *Toyo Tire* for the Court's authority to prevent that. Dkt. No. 40 at 13, 17; Dkt. No. 52 at 12. To be sure, the Court has that authority. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010). But authority to act is not a reason to act, and closure of the underlying arbitrations would not moot this case. The complaint seeks contract

damages and an order compelling Valve to arbitrate, as well as an order requiring Valve to pay AAA's fees. Dkt. No. 1 ¶ 89. Closure moots none of those claims for relief. A court can compel arbitration after an administrator closes a file, as *Abernathy* shows, and it can award damages regardless.

In sum, Smith has not shown that irreparable harm is likely, and the motion fails on that ground.

### 4.3 The Court does not reach the remaining factors or Valve's other arguments.

Because Smith has not shown a likelihood of irreparable harm, the Court need not weigh the balance of equities or the public interest. *Herb Reed*, 736 F.3d at 1251. Those factors may well favor Smith—Valve identified no harm to itself from a continued abeyance, Dkt. No. 49 at 22, and Claimants have paid the abeyance fee that AAA's rules assign to the business. Dkt. No. 40 at 9 & n.5. But under either the *Winter* test or the sliding scale, even a strong showing on the equities cannot substitute for a likelihood of irreparable harm. *All. for the Wild Rockies*, 632 F.3d at 1135. For the same reason, the Court does not reach Valve's arguments that the proposed injunction would improperly bind AAA, that it would impose a prior restraint on Valve's speech, that Smith cannot obtain relief for an uncertified class, that the class-action waiver forecloses class relief, or that laches bars the motion. Dkt. No. 50 at 14–18, 29–30. Smith's alternative request for provisional class certification or an expedited certification schedule, Dkt. No. 52 at 7, is denied as moot.

This order does not direct AAA to do anything. AAA said it would hold the arbitrations in abeyance "pending further order of the Court." The Court has now ruled. What AAA does next is for AAA to decide under its own rules.

## 5. CONCLUSION

Smith has raised serious questions about the merits, and the equities may favor him. But he has not shown that irreparable harm is likely, and without that showing, a preliminary injunction cannot issue. Accordingly:

1. Smith's motion for a preliminary injunction, Dkt. No. 40, is DENIED.
2. The temporary restraining order entered on August 31, 2026, Dkt. No. 48, is DISSOLVED.
3. The stay of this case, Dkt. No. 38, is REINSTATED.

Dated this 30th day of September, 2026.

Jamal N. Whitehead
United States District Judge